## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, *ex rel.*
TEITELBAUM,

                                    **Plaintiffs,**

*v.*

ALASKA AIRLINES, *et al.*,

                                    **Defendants.**

Civil Action No. 04-12450-MEL

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY ALASKA AIRLINES, INC., AMERICAN AIRLINES, INC., AIRTRAN AIRWAYS, INC., CONTINENTAL AIRLINES, INC., HAWAIIAN AIRLINES, INC., SOUTHWEST AIRLINES CO., AND JETBLUE AIRWAYS CORPORATION

Defendants Alaska Airlines, Inc., American Airlines, Inc., AirTran Airways, Inc.,

Continental Airlines, Inc., Hawaiian Airlines, Inc., Southwest Airlines Co., and JetBlue Airways

Corporation (the "Domestic Defendants")[1] submit this memorandum in support of their joint

motion to dismiss the *qui tam* complaint in this action.

### STATEMENT OF THE CASE

This motion involves a complaint filed by relator Jennifer L. Teitelbaum ("relator")

pursuant to 31 U.S.C. § 3730, the *qui tam* or "whistleblower provision" of the False Claims Act,

31 U.S.C. §§ 3729-33 ("FCA"). The original complaint was filed on November 18, 2004

(docket # 1). The United States declined intervention on September 14, 2005, and the complaint

was unsealed the following day (docket ## 12 & 13). On November 17, 2005 the relator filed

---

[1] Defendant Hawaiian Airlines, Inc. joins in this motion, but has also filed a separate supplemental motion to dismiss on other, additional grounds.

her present amended complaint (docket # 17).

This motion is filed on behalf of the Domestic Defendants. The amended complaint's allegations relate to specified fees and charges assessed by the Domestic Defendants upon their passengers as mandated by federal law. *See* amended complaint, ¶¶ 2; 5-12. One category of these fees is "Passenger Facility Charges" ("PFC's") which the airlines are required to collect under 49 U.S.C. § 40117(a)(3), (b), and (e) and related Department of Transportation ("DOT") regulations. These fees are used for eligible airport-related projects proposed by airport authorities and/or state governments.

A second category of user fees at issue are "Security Service Fees" ("SSF's") which have been mandated by the government since the September 11, 2001 tragedies. *See* 49 U.S.C. § 44940. These fees are designed to help finance the costs of enhanced airport and airline security. The amended complaint also contains allegations relating to immigration user fees, agricultural inspection fees, and some unspecified foreign charges. *See* amended complaint, ¶ 2.

Reduced to its fundamentals, the amended complaint asserts two central allegations against the Domestic Defendants. First, it alleges that they collected certain government-mandated fees in conjunction with the sale of nonrefundable tickets, but failed to make appropriate refunds of those government-mandated fees to the customers who did not utilize, and thereby forfeited, the nonrefundable tickets. As the Domestic Defendants demonstrate below, this is not a viable allegation under the FCA, because the FCA is only concerned with efforts to defraud the federal government, not claims made by private airline customers. Second, the amended complaint further alleges that the Domestic Defendants failed to pay to the federal government the appropriate amounts of these fees and charges they had collected from their customers.

For a plethora of reasons, the amended complaint should be dismissed in its entirety. First, all of the allegations asserted in the amended complaint are based upon information that has previously been identified in the public record. The False Claims Act "is not intended to create windfalls for people with secondhand knowledge of the wrongdoing." *United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003). The "public disclosures" in this case therefore foreclose the Court's jurisdiction over this matter, under 31 U.S.C. §§ 3730(e)(4)(A) & (B), unless relator can establish that she is an "original source." However, relator has failed to allege that she qualifies as an original source and her claims thus are jurisdictionally barred.

Even if this Court had jurisdiction, other defects in the amended complaint mandate its dismissal. The vague and conclusory allegations that comprise the amended complaint cannot satisfy the stringent particularity pleading requirements imposed by Federal Rule of Civil Procedure 9(b). Furthermore, the entire amended complaint must be dismissed because it alleges nothing more than a failure by the Domestic Defendants to comply with regulatory schemes established by DOT and the other federal agencies regarding the fees at issue. It is well established that such allegations alone do not constitute violations of the FCA. In addition, Counts IV through IX, predicated upon common law causes of action, must be dismissed *with prejudice* because a relator has no standing under the FCA to assert common law causes of action. Equally defective and subject to dismissal are any allegations relating to the purported failure of the Domestic Defendants to make refunds to customers or make appropriate payments to foreign governments, since the FCA is only concerned with defrauding the United States government.

Likewise, Counts I, II, III and IV should be dismissed because they fail to assert viable FCA claims under 31 U.S.C. § 3729(a)(1)-(3) and (7). The amended complaint is also defective,

at least in part, because it includes claims barred by the FCA's statute of limitations provision.

Accordingly, the Domestic Defendants respectfully request that this Court dismiss all of relator's claims *with prejudice*.

## I.   THE FCA'S PUBLIC DISCLOSURE BAR MANDATES DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

The amended complaint asserts two core allegations: (a) the Domestic Defendants refused to refund to its customers the fees and taxes they collected on unused nonrefundable tickets; and (b) the Domestic Defendants failed to fully pay the government the fees and taxes they collected from airline customers.  Because both of these core allegations were publicly disclosed years ago, this Court is deprived of jurisdiction over this action pursuant to 31 U.S.C. § 3730(e)(4)(A).[2]

As this Court has noted: "The public disclosure bar is designed, in part, to prevent parasitic lawsuits – actions in which individuals leech off publicly available information in an effort to cash in on the generous awards available under the False Claims Act." *United States ex rel. LeBlanc v. Raytheon Co.*, 874 F. Supp. 35, 41 (D. Mass), *aff'd*, 62 F.3d 1411 (1st Cir. 1995), *cert. denied*, 516 U.S. 1140 (1996); *see also United States ex rel. McKenzie v. Bell South Telecomm., Inc.*, 123 F.3d 935, 940 (6th Cir. 1997), *cert. denied*, 522 U.S. 1077 (1998).  This Court most recently addressed the elements of the § 3730(e)(4)(a) "public disclosure bar" in

---

[2]   Section 3730(e)(4)(A) reads:

"No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."

-4-

*United States ex rel. O'Keeffe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 90-94 (D. Mass. 2001) (Saris, J.).

The *O'Keeffe* Court established a three-part test for deciding "public disclosure" challenges to *qui tam* complaints under 31 U.S.C. § 3730(e)(4)(A). *See O'Keeffe*, 131 F. Supp. 2d at 91. In applying the public disclosure bar, a court must determine whether (1) there has been a public disclosure; (2) if so, whether the lawsuit is "based upon" the public disclosure; and (3) if so, whether the relator is an "original source" of the information. *Id.* at 91. All three of these elements are satisfied in this case and therefore, dismissal is warranted pursuant to Rule 12(b)(6).

### A.   Public Disclosures Have Occurred

The first element of the *O'Keeffe* test is whether "there has been a public disclosure within the meaning of the statute, that is, 'in a criminal, civil or administrative hearing; or congressional, administrative or Government Accounting Office report, hearing, audit, or investigation or from the news media.'" *Id.* at 91. The "statute's catalogue of sources in which a public disclosure can occur is exhaustive" and includes judicial proceedings, government records and reports, press releases and news media. *Id.*; 31 U.S.C. § 3730(e)(4)(A). It is well-settled that a public disclosure can occur through state lawsuits as well as in federal litigation. *United States ex rel. Hafter v. Spectrum Emergency Care*, 190 F.3d 1156, 1161, n. 6 (10th Cir. 1999); *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243-4 (9th Cir.), *cert. denied,* 529 U.S. 1099 (2000).

Transactions are deemed publicly disclosed when they are placed in the "public domain." *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 322 (2d Cir. 1992). It is well established that any information *in the public domain* can contribute to the overall context of a

"public disclosure." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 681-82 (D.C. Cir.), *cert. denied*, 522 U.S. 865 (1997) (*various* reports and public statements constituted sufficient public disclosures); *Doe*, 960 F.2d at 322.  Therefore, it is not necessary for all allegations to appear in a single document for a public disclosure under the FCA to have occurred.  Rather, a district court can quite appropriately extract from each public disclosure facets corresponding to some (or on occasion all) elements of a *qui tam* complaint's allegations.

In other words, the allegations and transactions publicly disclosed do not have to be the "mirror image" of those asserted in the *qui tam* complaint, as long as the essential elements are disclosed and the allegations are "substantially similar." *Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654  (D.C. Cir. 1994); *see also United States ex rel. Fine v. Advanced Scis., Inc.*, 99 F.3d 1000, 1005 (10th Cir. 1996).  The "X+Y=Z" test first articulated in *Springfield*, 14 F.3d at 654, and adopted by Judge Saris in *O'Keefe* best explains this concept.  Under the test, a public disclosure has demonstrated fraud if it identified (X) "a misrepresented state of facts" and (Y) a "true state of facts" (*i.e.,* the essential elements).  If so, then "Z", or the conclusion that fraud has been committed, can be inferred.  *O'Keeffe*, 131 F. Supp. 2d at 94.

Here, the public disclosures, as demonstrated below, clearly assert the two key allegations of the amended complaint: (1) that the airlines had failed to make appropriate refunds of PFC's, SSF's and other government-imposed charges to customers who failed to utilize their nonrefundable tickets and (2) the Domestic Defendants failed to fully reimburse the government for the fees and taxes collected from airline passengers.

(i)     *Allegations Relating to Failure to Make Refunds to Passengers Were Publicly Disclosed*

Relator's first core allegation, refusal to make refunds of fees and taxes to airline customers who fail to use nonrefundable tickets, has been publicly disclosed through several

cases filed in both federal and state courts *before* the filing of the original complaint in this

action in November, 2004.[3]  For example, identical allegations to the instant complaint were

made in *Brown, et al. v. Delta Air Lines, Inc., et al.*, 2004 U.S. Dist. Lexis 28508 (W.D. Okla.

Oct. 8, 2004).[4]  In *Brown*, several class actions alleged that various airlines improperly had

declined to refund the PFC's and SSF's to passengers who failed to use their nonrefundable

tickets.  These are the same allegations as the amended complaint.  *See* amended complaint, ¶¶ 2;

5-12.

The allegations in the amended complaint were also publicly disclosed in the July 2004,

complaint served in *Hayes v. Am. Airlines, Inc.*, CV-04-3231 (CBA)(JMA) (E.D.N.Y.), prior to

its removal to federal court.  The Court may take judicial notice of this complaint, which is

attached hereto as Exhibit 2.  The *Hayes* complaint also asserts the same allegations as are found

in the present amended complaint in this action – that the defendant airline failed to refund

security fees and PFC charges to customers who failed to use nonrefundable tickets.

A third public disclosure of the present allegations occurred in this Court, in *Harrington,*

*et al. v. Delta Air Lines, Inc.*, Civil Action No. 04-12558-NMG (D. Mass.).  This complaint was

filed on November 4, 2004, and the amended complaint was electronically filed with this Court

---

[3]  As the Domestic Defendants demonstrate below at Section V, this allegation has no applicability to the FCA because it alleges a liability to a private party, and not the government. Nonetheless, we address this point out of an abundance of caution in the event it is deemed to constitute an allegation of fraud purportedly predicated upon the FCA.

[4]  The Court may take judicial notice of this decision which is attached to this brief as Exhibit 1.  In passing upon a motion to dismiss on "public disclosure" grounds, a district court can take judicial notice of documents outside the record, including judicial proceedings, government documents and newspaper accounts. *See* Fed. R. Ev. 201; *United States ex rel. Dingle v. Bioport Corp.*, 270 F. Supp. 2d 968, 971-3 (W.D. Mich. 2003), *aff'd*, 388 F.3d 209 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1708 (2005); *see also Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *Locicero v. Leslie*, 948 F. Supp. 10, 12 (D. Mass. 1996).

on May 31, 2005, by relator's present counsel.  In addition to alleging that airlines refused to

refund PFC's and SSF's, the District of Massachusetts complaint also contains similar

allegations respecting U.S. Customs user fees; "immigration user fees"; and agricultural

quarantine and inspection fees.  For the Courts convenience, a copy of both the original and

amended complaints are attached to this brief as Exhibit 3.  These are the identical allegations

contained in the present amended complaint.  *See* original *Harrington* complaint at ¶¶ 36-40;

amended complaint at ¶¶ 5-12.

A further public disclosure occurred in December, 2002, when USTAR, an association of

travel agents, filed a complaint with the Federal Trade Commission, which is attached hereto as

Exhibit 4.  In its FTC complaint, USTAR alleges that the air carriers refused to refund a variety

of fees and taxes to passengers who declined to use nonrefundable tickets, including "U.S.

Custom Fee, U.S. Immigration Fee, US APHIS Fee [i.e., Department of Agriculture inspection

fee], U.S. Passenger Facility Fee, U.S. Security Service Fee."  *Id.* at ¶¶ 4, 6, 7 and 12.  Once

again, these allegations are identical to those asserted in the amended complaint.

Therefore, the allegations related to failure to reimburse passengers for certain fees were

publicly disclosed prior to the filing of the original relator complaint in several federal court and

state court actions, and in one FTC public proceeding.  As Judge Saris recognized, the term

"hearing," as it is used in § 3730(e)(4)(A), has been interpreted to encompass federal, state, and

local administrative proceedings, including judicial proceedings, that are open and available to

the public.  *See O'Keeffe*, 131 F. Supp. 2d at 91.  Therefore, *all* of these statements qualify as

public disclosures under the bar.

(ii)    *Allegations that Defendants Did Not Pay the Government Were Publicly
        Disclosed*

The second allegation of relator's complaint has also been in the public record for a

-8-

period of years.  For example, as early as July 1995, an article in *Airports* (attached hereto as

Exhibit 5)[5] reported threats by DOT and the Federal Aviation Administration ("FAA") to airlines

regarding failure to remit to the designated airports all collected PFC's.  The article references a

July 10, 1995, notice to U.S. and foreign carriers regarding this problem.  Resort to possible

criminal and civil sanctions is also mentioned.  Eventually, in July 1999, the FAA issued

guidance to attack this problem in a document entitled "Passenger Facility Charge Audit Guide

for Air Carriers" (copy attached hereto as Exhibit 6).  Section II E of the Guide deals with the

stringent procedures put in place to govern collection and remittance of PFC's by the airlines.

*See id.* at 11-12.  In August 2001, the FAA issued Order 5500.1 mandating further procedures

controlling the collection and remitting of PFC's (a portion of which is attached hereto as Exhibit

7).  These allegations also appear in the USTAR Complaint.  *See* Ex. 4 at ¶ 8.[6]

Government reports and news media both can be judicially noticed and qualify as public

disclosures.  *See* Fed. R. Ev. 201; *O'Keeffe*, 131 F. Supp. 2d at 91.  The release by *Airports* and

the FAA therefore qualify as public disclosures under the FCA.  Thus the first prong of *O'Keeffe*

has been satisfied.

**B.**     **The Qui Tam Complaint Is Based Upon Previous Public Disclosures**

Once it is determined that "allegations or transactions" have been publicly disclosed,

---

[5]  *Airports* is a weekly newsletter published by *Aviation Week*, a division of The McGraw-Hill Companies.  It qualifies as "news media" under § 3730(e)(4)(A).  *See United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y. 2002).

[6]  In fact, the PFC fees that are allegedly owed to the government are not even owed to the federal government, but state airport authorities.  There is a real question as to whether even failure to make payments to a non-federal state or airport authority could serve as the basis for a FCA cause of action.  *See, e.g., United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004), *cert. denied,* __ U.S. __, 125 S. Ct. 2257 (2005).

*O'Keeffe* next requires that the district court determine whether the complaint is "based upon" that publicly-disclosed information.  Although a minority of courts require that the relator "actually derive" her information from the public disclosure, a dominant majority of courts – that include this Court in *O'Keeffe* – require only a simple finding that "the supporting allegations are similar to or 'the *same as* those that have been publicly disclosed . . . *regardless of where the relator obtained his information.*'"  (*quoting Doe v. John Doe Corp., 960* F.2d 318, 324 (2d Cir. 1992)) (emphasis added by Judge Saris).  *Id.* at 92.  Therefore the "based upon" standard is satisfied if the complaint's allegations are "supported by" or consistent with the public disclosures, but not necessarily derived from those disclosures.  *Id.* at 92-3; *see also Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1044-45 (8th Cir.), *cert. denied*, 537 U.S. 944 (2002)("whenever the allegations in the suit and in the disclosure are the same, 'regardless of where the relator obtained his information'," the *qui tam* as a matter of law is "based upon" a public disclosure).

Relator's complaint therefore must be dismissed if the allegations are substantially similar to information that has already been disclosed.  *See id.*  As described above, relator's allegations that PFC's, SSF's, customs' fees, immigration fees, agricultural fees and other government-imposed charges have not been returned to airline customers or appropriately remitted to the government have been publicly disclosed in prior lawsuits, government reports and news media.  Because the allegations are substantially similar to the publicly disclosed information, the second prong of the *O'Keefe* test is satisfied.

### C.      <u>The Relator Is Not an Original Source</u>

Because it has been established that the amended complaint is "based upon" public disclosures, as defined in 31 U.S.C. § 3730(e)(4)(A), the Court must next determine whether,

despite this disablement, relator is an "original source" of the public disclosures and thus not thereby deprived of her jurisdictional standing. 31 U.S.C. § 3730(e)(4)(B); *O'Keeffe*, 131 F. Supp. 2d at 93-94.[7]

In order to qualify as an original source under the statute, a relator must demonstrate direct and independent knowledge of the publicly disclosed information upon which the allegations are based. *Id.* at 95-6. As a result, a relator cannot base her allegations on second-hand information or information learned from other sources. *Id.* at 96. Here, the relator wholly fails to even allege that she is an original source of the information upon which the allegations are based. Nor does relator allege that she "voluntarily provided the information to the government before filing an action under [the FCA] which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

Relator's failure to allege she is an "original source" is fatal to her FCA claims. As one Circuit has recognized: *"The False Claims Act* is intended to encourage individuals who are either close observers or involved in the fraudulent activity to come forward, and is not intended to create windfalls for people with secondhand knowledge of the wrongdoing." *Kinney*, 327 F.3d at 674. Or, as the Ninth Circuit tersely stated it, "A whistleblower sounds the alarm; he does not echo it." *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1475 (9th Cir), *cert. denied*, 519 U.S. 865 (1996).

Relator therefore is not an original source. Because the relator's complaint is "based upon" information that already was publicly disclosed, and relator is not an original source, the

---

[7] This section reads: "For purposes of this paragraph, 'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."

*O'Keeffe* three-part test is satisfied and the amended complaint should be dismissed *with prejudice* on the basis of the "public disclosure bar."

## II.   ALL COUNTS OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THEY LACK THE SPECIFICITY REQUIRED BY RULE 9(b).

This Court should dismiss all counts of the amended complaint because they fail to comply with Fed. R.Civ. P. 9(b).[8]

### A.   Rule 9(b)'s Legal Standard.

Because the amended complaint asserts allegations predicated upon the FCA, it must comply with Rule 9(b).[9]  The purposes behind Rule 9(b) are "to discourage nuisance suits, to prevent a plaintiff from sullying the reputation of a defendant with baseless allegations, and to put a defendant on notice of the actions he must investigate and defend." *United States ex rel. Grynberg v. Alaska Pipeline Co.*, No. Civ. 95-725, 1997 WL 33763820, at *3 (D.D.C. Mar. 27, 1997).

In order to satisfy Rule 9(b)'s mandate, a *qui tam* complaint must "specify the time, place, and content of the alleged false or fraudulent representations." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir.), *cert. denied*, __ U.S. __, 125 S. Ct. 59 (2004).  "Blanket statements" of generalized, but unspecific, allegations are entirely

---

[8]  Rule 9(b) reads: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally."

[9]  Clearly, on their face, Counts I-IV and VII are within the parameters of Rule 9(b).  The Domestic Defendants respectfully submit that the remaining Counts are embraced within Rule 9(b) as well.  This is because all of the allegations contained in ¶¶ 1-50 are "averments of fraud." These same paragraphs are re-pleaded in the subsequent Counts and, therefore, serve as the foundation for those Counts.  If ¶¶ 1-50 violate Rule 9(b), as the Domestic Defendants assert, then Counts V-VI and VIII-IX are defectively pled as well and must be dismissed.

incompatible with Rule 9(b).  *United States ex rel. Totten v. Bombardier Corp.*, 139 F. Supp. 2d 50, 52 (D.D.C. 2001), *rev'd on other grounds*, 286 F.3d 542 (D.C. Cir. 2002).  A *qui tam* relator thus must identify "the time, dates, places, and identities" of the individuals involved in the fraud or "the specifics in the documents prepared and submitted by the defendant to obtain the funding, at the time the complaint is filed and prior to any additional discovery."  *Karvelas*, 360 F.3d at 230; *PPM Am., Inc. v. Marriott Corp.*, 820 F. Supp. 970, 973 (D. Md. 1993) (specific documents should be identified which contain allegedly false statements).  This obligation to plead allegations of fraud with specificity cannot be discharged by later discovery.  *Id.* at 231.  In short, plaintiffs are required to "describe the fraudulent conduct rather than merely make conclusory allegations of fraud."  *United States ex rel. Long v. SCS Bus. & Technical Inst.*, 999 F. Supp. 78, 89 (D.D.C. 1998), *rev'd on other grounds*, 173 F.3d 870 (D.C. Cir. 1999).

## B.  Rule 9(b) is Applicable to FCA Complaints.

"Rule 9(b) applies to all allegations of fraud, including actions brought pursuant to the False Claims Act."  *United States ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1049 (S.D.N.Y. 1996).  "The legislative history of the 1986 FCA Amendments and the Supreme Court's interpretations of the statute further support the conclusion that FCA claims involve 'averments of fraud' that must be pled with particularity under Rule 9(b)."  *Karvelas*, 360 F.3d at 227.

## C.  The Complaint Fails to Satisfy Rule 9(b).

The amended complaint fails in every way to satisfy the Rule 9(b) standard.  For example, it is entirely silent as to what forms or records it alleges the Domestic Defendants were required to submit to the government.  Moreover, it fails to identify *even one* purported false claim or false document submitted to the government.  Rather, paragraph 41 simply asserts that

the Domestic Defendants submitted "false or fraudulent statements and records," while

paragraph 42 concludes that the Domestic Defendants "made or used false records or

statements." These general, conclusory allegations are not supplemented with any specificity.

As one district court has noted: "[w]ithout citing a single false claim arising from an allegedly

false invoice, [plaintiff] has not met even a bare bones Rule 9(b) test." *United States ex rel.*

*Obert-Hong v. Advocate Health Care,* 2001 WL 303692, at *2 (N.D. Ill. Mar. 28, 2001); *see also*

*United States ex rel. Walsh v. Eastman Kodak Co.,* 98 F. Supp. 2d 141, 147-148 (D. Mass. 2000)

(same). As the First Circuit has explained, "liability under the False Claims Act requires a false

claim." *Karvelas,* 360 F.3d at 232. *See also, United States ex rel. Clausen v. Lab. Corp.,* 290

F.3d 1301, 1311 (11th Cir. 2002), *cert. denied,* 537 U.S. 1105 (2003) (evidence of an actual false

claim is "the *sine qua non* of a False Claims Act violation").

In short, the amended complaint is completely devoid of even the most minimal

specificity required by Rule 9(b). "To pass muster under Rule 9(b), the complaint must allege

the time, place, speaker, and sometimes even the content of the alleged misrepresentation."

*Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir. 1990). "Underlying schemes and other

wrongful activities that result in the submission of fraudulent claims are included in the

'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to

Rule 9(b)." *Karvelas,* 360 F.3d at 232.[10] Pertinent individuals, dates, and facts regarding how

---

[10] As the First Circuit noted in this Medicare fraud case, "[h]owever, the complaint never specifies the dates or content of any particular false or fraudulent claim allegedly submitted for reimbursement.... It provides no identification numbers or amounts charged in individual claims... It does not identify or describe the individuals involved in the improper billing or allege with particularity any certification of compliance with federal regulations in order to obtain payments." *Karvelas,* 360 F.3d at 233. In addition, that court noted that the complaint failed to identify one "piece of paper that was sent to the Government to obtain funding." *Id.* The same (continued on next page)

-14-

the fraud was effected must be pled in a *qui tam* complaint in order to satisfy Rule 9(b). *United States ex rel. King v. Alcon Labs., Inc.*, 2005 WL 20372, at *2-*3 (N.D. Tex. Jan. 4, 2005).[11]

The Domestic Defendants can not even speculate as to how relator assumes they will be able to prepare answers to the amended complaint's allegations without knowing what claims and documents are at issue and why the amended complaint asserts these claims. Strict application of Rule 9(b) is thus necessary to provide the Domestic Defendants with fair notice of the allegations so that they may prepare an adequate defense. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Since this basic standard has not been satisfied to even the most minimal extent, the amended complaint should be dismissed *with prejudice* pursuant to Rule 9(b) and 12(b)(6).[12]  *See United States ex rel. Thompson* v. *Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) (failure to satisfy Rule 9(b) warrants dismissal under Rule 12(b)(6)); *Alcon*, 2005 WL 20372, at *3.

## III. COUNTS V – IX MUST BE DISMISSED WITH PREJUDICE BECAUSE RELATOR HAS NO STANDING TO ASSERT ANY COMMON LAW CAUSES OF ACTION.

Under 31 U.S.C. § 3730(b), relator's statutory standing is limited to litigating fraudulent

---

is true of the present amended complaint.

[11] Of course, allegations predicated upon the reverse false claims act provision (31 U.S.C. § 3729(a)(7)) likewise are averments of fraud and must satisfy the dictates of Rule 9(b). *See, e.g., United States ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 336 (W.D.N.Y. 1998). *See* Sections VI – VII.

[12] In the alternative, although the Domestic Defendants believe there are numerous other grounds warranting a complete dismissal with prejudice of the amended complaint, should the Court not agree, then movants request that this Court consider this motion as a Fed. R. Civ. P. 12(e) Motion for a More Definite Statement, because relator's pleading is so vague and conclusory that the Domestic Defendants cannot reasonably be required to frame a responsive pleading.

claims on behalf of the United States under the FCA.  "A person may bring a civil action *for a violation of section 3729* for the person and for the United States Government."  *Id.* (emphasis added).  The FCA does not give relators the right to assert common law claims on behalf of the United States.  *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003) (and the authorities cited therein); *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001).  *Accord, Eastman Kodak,* 98 F. Supp. at 140.  The relator in this case only asserts standing based upon her status as a *qui tam* relator.  Counts V through IX, which are predicated on just such common law theories, thus should be dismissed.

Counts V through IX are based on common law theories, including "unjust enrichment," which is common law and quasi-contractual in derivation, as well as common law recoupment, common law fraud, disgorgement, imposition of constructive trust, and civil conspiracy.  *See also* amended complaint, ¶ 1.  Relator has no jurisdictional standing to assert any of these common law theories.  The statutory standing extended to relators does not embrace non-FCA causes of actions: "[w]hile the FCA effects a partial assignment of the government's damages to relators, thus conferring standing upon them, it effects no such assignment of non-FCA causes of action."  *United States ex rel. Barrett v. Columbia/HCA Health Care Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C. 2003) (*citing Eastman Kodak*).  The amended complaint's invocation in ¶ 3 of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is to no avail because there is no jurisdictional predicate upon which to base supplemental jurisdiction.  Therefore, Counts V through IX should be dismissed, *with prejudice.*

Nor can relator establish ordinary standing independent of the FCA.  In order to bring an unjust enrichment claim, relator must demonstrate that: (1) she conferred a benefit upon the

defendant; (2) the defendant knew it was receiving this benefit; and (3) it would be inequitable for the defendant to retain the benefit. *United States v. Bouchey*, 860 F. Supp. 890, 894 (D.D.C. 1994). Nowhere in her amended complaint does relator allege any of these three elements – her sole jurisdictional foundation that is asserted is her status as a *qui tam* relator. Similarly, relator has failed to plead any independent jurisdictional basis supporting her common law fraud, disgorgement, common law recoupment or civil conspiracy allegations. All claims must therefore be dismissed *with prejudice*.

## IV.   FAILURE TO COMPLY WITH ADMINISTRATIVE REGULATIONS, STANDING ALONE, CANNOT CONSTITUTE A VALID CAUSE OF ACTION UNDER THE FALSE CLAIMS ACT

Reduced to its fundamentals, the amended complaint alleges (¶¶ 2; 5-12) nothing more than a purported violation of the FCA by the Domestic Defendants for failing to comply with various regulations or statutes promulgated by several government agencies. This is particularly evident in paragraph 11 which speaks in terms of "regulatory language." Such allegations standing alone do not assert a viable claim under the FCA.

It is well established that the mere failure to comply with administrative regulations or statutes does not constitute a violation of the FCA. *Karvelas*, 360 F.3d at 234 ("[A]lleged violations of federal regulations are insufficient to support a claim under the FCA."); *see also United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266-67 (9th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997) ("Violations of laws, rules, or regulations alone do not create a cause of action under the FCA"). If this distinction had not been made by the courts, every breach of a federal contract or regulation would be transformed into a FCA violation. The amended complaint's allegations to the contrary have been directly repudiated in numerous FCA actions.

For example, in *United States ex rel. Swafford v. Borgess Med. Ctr.*, 98 F. Supp. 2d 822

-17-

(W.D. Mich. 2000), *aff'd*, 24 Fed. Appx. 491 (6th Cir. Dec. 12, 2001), *cert. denied,* 535 U.S. 1096 (2002), the relator alleged that the defendant failed to comply with certain Health Care Financing Administration regulations pertaining to reimbursement of venous ultrasound procedures, and that this failure constituted the submission of a false claim.  The District Court rejected this argument, holding that "the FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.  Mere violations of administrative regulations are not actionable under the FCA 'unless the violator knowingly lies to the government about them.'"  *Id.* at 828 (citations omitted).  "Indeed, the FCA is not a regulatory vehicle, and its scope should not be broadened to include every instance where a claimant fails to comply with all applicable regulations."  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 200 F. Supp. 2d 673, 679 (S.D. Tex. 2002), *rev'd on other grounds*, 355 F.3d 370 (5th Cir. 2004).

*Only* under a "false certification theory" of liability, which is "predicated upon a false representation of compliance with a federal statute or regulation or a prescribed contractual term," could a FCA claim be based on breach of federal regulations.  *United States ex rel. Mikes v. Straus,* 274 F.3d 687, 696 (2d Cir. 2001).  But nowhere in the amended complaint does relator allege the so-called "false certification theory" or that the Domestic Defendants had certified compliance with pertinent regulations or statutes as a prerequisite to obtaining payment.  *Thompson*, 125 F.3d at 902.  Without such allegations, Counts I – III are rendered legal nullities.  *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732-34 (7th Cir.), *cert. denied*, 525 U.S. 1038 (1999).  Counts I – III of the amended complaint thus merit dismissal, *with prejudice*, pursuant to Rule 12(b)(6).

**V.    PARAGRAPHS 5-12 SHOULD ALSO BE DISMISSED BECAUSE THEY
       EXCLUSIVELY INVOLVE ALLEGATIONS OF FAILURE TO MAKE
       REFUNDS TO NON-GOVERNMENTAL PARTIES.**

Paragraphs 2 and 5-12 also are defectively pled, and should be dismissed, because they

assert that the Domestic Defendants failed to make refunds to airline customers, who in this case

are, of course, private parties and not the government.  Moreover, the amended complaint also

asserts that false statements, fraudulent inducements, and false claims were made "to people who

have forfeited airline tickets and/or had nonrefundable tickets."  Amended complaint, ¶ 2.  All of

these allegations in ¶¶ 2 and 5-12 are meaningless under the FCA, because the Act only focuses

upon purportedly false statements and claims submitted to the United States government, which

result in the government being defrauded, not failure to make refunds to private parties.  Every

provision of 31 U.S.C. § 3729(a) speaks only in terms of false statements or claims submitted to

the government; *see* amended complaint, ¶¶ 37 - 38.  For the same reason, the allegation

contained in the amended complaint, at ¶¶ 40 - 41, relating to "ticket purchasers" should also be

dismissed.  Therefore, any such private claims not relating to the government should be

dismissed *with prejudice* because they cannot serve as any basis for establishing liability under

the FCA.[13]  Similarly any allegations relating to "foreign charges" imposed by authorities

"outside the United States" (*see* ¶ 5(d)) must also be dismissed since they do not relate to the

United States government.

**VI.   COUNT III FAILS TO ASSERT A VIABLE SECTION (A)(7)
       ALLEGATION AGAINST DOMESTIC DEFENDANTS.**

Count III of the amended complaint, found at ¶¶ 47-48, is predicated upon 31 U.S.C.

---

[13]  ¶¶ 41 & 42 are the *only* paragraphs, with the exceptions of Counts I-IV, to allege a
failure to pay the United States amounts to which it was entitled.

§ 3729(a)(7) of the FCA, the so-called "reverse false claims" provision.[14]  Count III, however,

fails to state a claim under the FCA, so it must be dismissed under Rule 12(b)(6) for failure to

state a claim.

Section (a)(7) was added in the 1986 amendments to the Act.  It seeks to penalize those

who have control of money or property belonging to the United States, and submit false

statements in order to decrease or avoid an obligation to pay or transmit money or property to the

government.  That is, an (a)(7) violation is a "reverse" false claim because it does not allege

efforts to fraudulently secure money or property from the government, but rather to avoid or

decrease an obligation to pay money or transmit property to the government.

A claim under § 3729(a)(7) must be based upon a specific "obligation" that was due and

owing to the government as of the time the alleged false claim or document was submitted to the

government.  A complaint therefore must allege that "a specific, fixed debt" is due to the United

States.  *See United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 509 (S.D.

Tex. 2003) (to sustain (a)(7) cause of action, the complaint must allege that defendant owed "a

specific amount of money" to the government); *see also United States ex rel. Coppock v.

Northrup Grumman Corp.*, 2003 WL 21730668, at *14 (N.D. Tex. July 22, 2003).  Such a debt

could arise, for example, from a contract's liquidated damages provision, a judgment, or a

statutory directive to pay a fixed amount.  *See, e.g., United States v. PEMCO Aeroplex, Inc.*, 195

F.3d 1234, 1237 (11th Cir. 1999) (obligation to transmit government property arose from

_____

[14]  Section (a)(7) allows recovery from any person who "knowingly makes, uses, or
causes to be made or used, a false record or statement to conceal, avoid, or decrease an
obligation to pay or transit money or property to the Government."  The legislative history of the
provision is found at S.Rep. No. 99-345, *reprinted in* 1986 U.S. Code Cong. and Admin. News
5266, 5283.

contract); *see also United States ex rel. Prawer v. Verrill & Dana*, 946 F. Supp. 87, 95 (D. Me. 1996) ("Money is not 'owed' without a specific contract remedy, a judgment or an acknowledgment of indebtedness").[15]

Moreover, the "obligation" owing to the government must be predicated upon some legal basis *other than* the FCA claims asserted in the complaint. *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 772-3 (8th Cir. 1997). The complaint thus must plead some fixed sum that was due and owing to the government *prior to* the defendant's alleged submission of a purported false claim or false statement. *American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 734-6 (6th Cir. 1999), *cert. denied*, 529 U.S. 1054 (2000); *see also United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 997-98 (E.D. Wisc. 1998), *aff'd*, 168 F.3d 1013 (7th Cir. 1999) (defendant must have "an immediate, recognizable obligation" to pay the government). In other words, the obligation to the government must arise from existing legal duties and not represent merely a potential liability. *United States ex rel. Drake v. Norden Sys., Inc.*, 2000 WL 1336497 at *11-12 & n. 8 (D. Conn. Aug. 24, 2000); *Graves*, 284 F. Supp. 2d at 508.

The amended complaint's (a)(7) allegations, therefore, are defective as a matter of law. The amended complaint fails to allege that the Domestic Defendants owe any "obligation" or specific debt that was due and owing to the government at the time the alleged "false or fraudulent statements and records" were submitted. Rather, it asserts a speculative theory for possible future recovery, but does not establish that a debt in a specific amount was due and

---

[15] The *Prawer* court noted: "In fact, the legislative history twice refers to 'money owed.'"*Id.* at 95; *See also, United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 332 n. 108 (S.D.N.Y. 2004).

owing to the United States at the time of any alleged submissions.  Count III thus fails and

should be dismissed.  *See United States ex rel. Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.*,

1997 WL 33421319, at *5 (S.D. Ohio, Nov. 13, 2997), *aff'd* 190 F.3d 729 (6th Cir. 1999), *cert.*

*denied*, 529 U.S. 1054 (2000).

Allegations pursuant to section (a)(7) also are inappropriate here because the airlines are

merely the collection agents on behalf of the government.  The Domestic Defendants'

relationship with the government is thus "purely regulatory," not economic, and cannot support

an (a)(7) cause of action.  *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 657

(5th Cir. 2004); *United States ex rel Bahrani v. Conagra, Inc.*, 338 F. Supp.2d 1201, 1207 (D.

Colo. 2004).  The Domestic Defendants did not receive any money or property from the

government that gives rise to an obligation to repay or return it to the government.  *See, e.g.,*

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017 (S.D.

Texas 1998) (interim Medicare reimbursements only become final when the annual cost report is

filed and adjusted; any overpayments must be returned to the government).  Because there is no

specific obligation alleged, or existent, Count III must be dismissed pursuant to Rule 12(b)(6).

## VII.   COUNTS I AND II SHOULD BE DISMISSED BECAUSE THEY FAIL TO ALLEGE VIOLATIONS OF 31 U.S.C. § 3729(a)(1) & (2).

Counts I and II of the amended complaint should be dismissed because they fail to allege

viable causes of action under the FCA.  Relator has confounded sections 3729(a)(1) and (2) with

section (a)(7), the so-called "reverse" false claims provision, discussed above.  Sections (a)(1)

and (2), which have a long history in the Act, deal with false claims or false statements submitted

to the government in order to secure payment from the government.  "The difference between

§ 3729(a)(1) and § 3729(a)(2) is that the former imposes liability for presenting a false claim,

while the latter imposes liability for using a false record or statement to get a false claim paid."

*Jana, Inc. v. United States*, 34 Fed. Cl. 447, 449 (1995).

Even a cursory review of Count I (purportedly predicated on section (a)(1)) and Count II (purportedly based on section (a)(2)) indicates that they allege violations of section (a)(7), not sections (a)(1) and (2).  Paragraph 42 substantiates this conclusion, since it speaks in terms of "false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government," in language drawn directly from section (a)(7).  The language of Counts I and II further substantiates that the amended complaint is only alleging an (a)(7) violation.  For example, ¶¶ 43 and 45 assert: "All defendants, and each of them falsely and fraudulently as well as knowingly used false records or statements which **concealed and avoided paying debts and transmitted funds owed to the United States.**"  (emphasis added)  This is exactly the same allegation asserted in Count III of the amended complaint (¶ 47) which ostensibly pleads a violation of section (a)(7).  Therefore, Counts I and II should be dismissed pursuant to Rule 12(b)(6) because they fail to allege violations of sections (a)(1) and (a)(2), and because they fail to allege a violation of section (a)(7) for the same reasons as detailed above for Count III.

## VIII.  COUNT IV SHOULD BE DISMISSED BECAUSE IT FAILS TO PROPERLY ALLEGE A CONSPIRACY CAUSE OF ACTION UNDER THE FCA.

Count IV purports to allege a conspiracy count in violation of 31 U.S.C. § 3729(a)(3).  A properly framed allegation under § 3729(a)(3) must assert: "(1) that the defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim."  *Bouchey*, 860 F. Supp. at 893.  *See generally, United States v. President & Fellows of Harvard College*, 323 F. Supp. 2d 151, 196

(D. Mass. 2004).

None of these essential components of a viable (a)(3) allegation is asserted in Count IV. In fact, the word "conspiracy" does not even appear in the allegations. This paucity of allegations cannot satisfy § 3729(a)(3). "The essence of conspiracy under the Act is an agreement between two or more persons to commit a fraud." *United States ex rel. Stinson v. Provident Life & Accident Ins. Co.*, 721 F. Supp. 1247, 1259 (S.D. Fla. 1989). Any conspiracy claim under this section "must be supported by an allegation of an agreement among the parties allegedly involved in the conspiracy. Absent such an allegation, a claim under 3729(a)(3) is due to be dismissed for failure to state a claim." *United States ex rel. Sanders v. East Ala. Healthcare Auth.*, 953 F. Supp. 1404, 1410 (M.D. Ala. 1996); *Stinson*, 721 F. Supp. at 1259; *United States ex rel. Durcholz v. FKW Inc.*, 997 F. Supp. 1159, 1173 (S.D. Ind. 1998). Such an agreement must be pled because the burden of proof is on plaintiff to establish "[e]vidence of the alleged agreement to defraud... " *Id.*

Therefore, to properly allege a cause of action under Section 3729(a)(3), the amended complaint must allege "facts showing the existence of an agreement between two or more of the defendants to defraud the government." *Wilkins ex rel. United States v. Ohio*, 885 F. Supp. 1055, 1063 (S.D. Ohio 1995). The instant amended complaint, however, alleges no such agreement. Therefore, due to relator's complete failure to properly state an allegation of conspiracy under the FCA, Count IV must be dismissed pursuant to Rule 12(b)(6). *United States ex rel. El Amin v. George Washington Univ.,* 26 F. Supp. 2d 162, 165 (D.D.C. 1998).

## IX.    RELATOR IS FORECLOSED FROM PURSUING ANY CLAIMS FILED PRIOR TO NOVEMBER 18, 1998.

Relator filed his original complaint on November 18, 2004. Because relator is alleging violations of the FCA, the statute of limitations provision contained within the FCA controls.

*See* 31 U.S.C. § 3731(b).  Under § 3731(b)(1), a six-year statute of limitations provision applies to FCA actions.[16]  Therefore, under that provision, any allegations relating to the Domestic Defendants' claims or documents filed with the government prior to November 18, 1998 are statutorily time-barred.  *See United States v. Entin*, 750 F. Supp. 512, 517-18 (S.D. Fla. 1990) (FCA statute of limitations begins to run once a claim for payment is submitted to the United States).

In 1986, the FCA was amended to include a second statute of limitations provision, § 3731(b)(2).[17]  By its very language ("by an official of the United States"), however, it is evident that this provision is not meant to be applicable in *qui tam* cases where the government has declined to intervene.  *See, e.g., United States ex rel. Capella v. Norden Sys., Inc.*, 2000 WL 1336487, at * 12 (D. Conn. Aug. 24, 2000); *George Washington Univ.*, 26 F. Supp. 2d at 172. Since the government declined intervention in this action, this provision does not allow relator in the present case to extend the six-year period specified by § 3730(b)(1).  Therefore, the alternative statute of limitations contained in section (b)(2) does not apply and, contrary to the allegation contained in paragraph 39 of the amended complaint, any claims arising before the November 18, 1998 date must be dismissed *with prejudice.*

---

[16]  Sec. 3731(b)(1) reads: "A civil action under section 3730 may not be brought: (1) more than 6 years after the date on which the violation of section 3729 is committed...." (Supp. 2002).

[17]  A civil action under section 3730 may not be brought:

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

## CONCLUSION

For the reasons stated above, the Domestic Defendants respectfully request that the Court dismiss the amended complaint in its entirety *with prejudice* and award their reasonable attorneys fees and costs as incurred herein, and such other and further relief as the Court deems appropriate.

Respectfully submitted,

*Matthew Porter*

Ronald H. Clark, D.C. Bar No. 283614 (*pro hac vice*)
Randall A. Brater, D.C. Bar No. 475419 (*pro hac vice*)
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
Telephone: (202) 857-8911

DECHERT LLP
Matthew A. Porter, BBO #630625
Michael S., Shin, BBO # 658134
200 Clarendon Street, 27th Floor
Boston, MA 02116

*Attorneys for Alaska Airlines, Inc., American Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., Hawaiian Airlines, AirTran Airways, Inc., and JetBlue Airways Corp.*

Dated: February 13, 2006

## CERTIFICATION OF SERVICE

I certify that on this 13th day of February, 2006, I caused to be placed in the United

States mail (first-class mail, postage prepaid), copies of MOTION TO DISMISS AND

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS by the Domestic Defendants as

follows:

> Anita Johnson
> Jennifer C. Boal
> Assistant U.S. Attorneys
> John Joseph Moakley Federal Courthouse
> 1 Courthouse Way
> Suite 9200
> Boston, MA 02210
>
> Evans J. Carter, Esq.
> Hargraves, Karb, Wilcox & Galvani
> 2nd Floor, West Wing
> 550 Cochituate Road
> P.O. Box 966
> Framingham, MA 01701
>
> Kathleen M. Guilfoyle
> Richard P. Campbell
> Campbell, Campbell, Edwards & Conroy, PC
> One Constitution Plaza
> Boston, MA 02129
>
> Daniel M. Esrick
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02115
>
> Ethan G. Shenkman
> David Ogden
> Adam Raviv
> William, Cutler, Pickering, Hale & Dorr LLP
> 2445 M Street, N.W.
> Washington, DC 20037

Curtis C. Pfunder
92 State Street
Boston, MA 02109


_____/s/_____
Ronald H. Clark