LEXSEE 2004 U.S. DIST. LEXIS 28508

**LYNETTE BROWN, for herself and all others similarly situated, Plaintiff, v. DELTA AIR LINES, INC., a corporation, Defendant. ROBERT STEM, for himself and all others similarly situated, Plaintiff, v. NORTHWEST AIRLINES, INC., Defendant. ROBERT STEM, for himself and all others similarly situated, Plaintiff, v. CONTINENTAL AIRLINES, INC., a corporation, Defendant.**

**No. CIV-03-871-L (Canadian County Case No. CJ-2003-309), No. CIV-03-901-L (Canadian County Case No. CJ-2003-337), No. CIV-03-943-L (Canadian County Case No. CJ-2003-332)**

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

**2004 U.S. Dist. LEXIS 28508**

**October 8, 2004, Decided**

**COUNSEL:** [*1] For Lynette Brown, for herself and all other similarly situated, Plaintiff: Darrell W Downs, Mark Ramsey, Stratton Taylor, Taylor Burrage Foster Mallett Downs & Ramsey, Claremore, OK; Kandi J Pate, Mark A Wolfe, Pate & Wolfe, Oklahoma City, OK.

For Delta Air Lines Inc, Defendant: Jeff L Todd, John N Hermes, McAfee & Taft, Oklahoma City, OK.

**JUDGES:** TIM LEONARD, United States District Judge.

**OPINIONBY:** TIM LEONARD

**OPINION:**

   **ORDER**

   These related cases were filed in the District Court of Canadian County, Oklahoma in May and June of 2003. Lynette Brown filed her action on May 27, 2003 against Delta Air Lines, Inc. ("Delta"). Robert Stem filed two separate actions: on June 6, 2003 against Continental Airlines, Inc. ("Continental") and on June 11, 2003 against Northwest Airlines, Inc. ("Northwest"). The state court petitions contain virtually identical allegations. In each case, the plaintiff sought an accounting and damages for breach of contract, conversion, and unjust enrichment based on the defendant's "failure to refund monies arising from airfare tickets." Brown v. Delta Air Lines, Inc., Petition at P 18; Stem v. Northwest Airlines, Inc., Petition at P 18; Stem v. Continental [*2] Airlines, Inc., Petition at P 18. Brown alleged that she was a ticketed passenger on a Delta flight wherein she incurred and paid charges for airfare and for certain additional fees and costs. Brown was unable to use her airline ticket for the particular flight booked for which the airline ticket was issued and paid for. As a result thereof, the Defendant wrongfully failed to refund to Brown certain costs charged to her.

*Brown* Petition at P 7. Stem makes identical allegations with respect to tickets purchased from Northwest and Continental. *Northwest* Petition at P 7; *Continental* Petition at P 7.

   Although the petitions asserted only state law claims, the airline defendants separately removed the three actions to this court on the basis of federal question and federal officer jurisdiction. *See* 28 U.S.C. §§ 1441, 1442(a)(1). In support of its assertion that removal was appropriate, Delta claimed that:

> While the specific "costs" which she alleges Delta did not refund to her are not described in her Petition, Plaintiff's counsel explained to Delta contemporaneously with her service of the Complaint that "the case involves [*3] Delta's refusal to refund certain September 11th Security fees to customers. More specifically, [the plaintiffs contend that] customers who

purchase non-refundable airline tickets and ultimately fail to use said tickets are entitled to receive a refund of all associated September 11th Security Fees." (See June 2, 2003 letter from Stratton Taylor, Exhibit C).

The September 11th Security Fees referred to by counsel for Plaintiffs are federally mandated fees collected by Delta as an agent of the Under Secretary of Transportation for Security and paid to the Transportation Security Administration for the purposes of funding airport and air transportation security initiatives of the federal government. The federal statute and regulations imposing the duty to collect this fee upon air carriers make clear that the carrier is acting as an agent of the federal government in collecting the fee: "Security service fees collected by a direct air carrier . . . are held in trust by that direct carrier for the beneficial interest of the United States in paying for the costs of providing civil aviation security services described in 49 U.S.C. 44940." 49 C.F.R. § 1510.11(b) [*4] . The regulations further provide that "the direct air carrier . . . holds neither legal nor equitable interest in the security service fees . . . ." *Id.* The regulations further require that carriers "must remit all security service fees imposed each calendar month to TSA, as directed by the Under Secretary, by the last calendar day of the month following the imposition." *Id.* § 1510.13(a). Accordingly, the monies for which Plaintiff seeks a refund in this matter are not in Delta's possession, but rather are in the possession of the Transportation Security Administration.

Brown v. Delta Air Lines, Inc., Case No. 03-871-L, notice of removal at P 4-5 (W.D. Okla. filed June 25, 2003). Arguing that Brown's right to relief turns on substantial questions of federal law, Delta claimed that removal pursuant to 28 U.S.C. § 1441 was warranted. Delta also argued that removal was appropriate "for the alternative reason that, in collecting and remitting the September 11th Security Fees to the federal government, Delta was acting under an officer and agency of the United States, and was acting under color of such office within the meaning of 28 U.S.C. § 1442(a)(1) [*5] ." *Brown* Notice of Removal at P 8. The notices of removal filed by Northwest and Continental mirror Delta's allegations.

This matter is before the court on motions to dismiss or for judgment on the pleadings filed by the airline defendants. n1 Defendants' main argument is that plaintiffs' state law claims are preempted by federal law. Before reaching the merits of defendants' motions, however, the court must determine whether it has subject matter jurisdiction over these actions. If subject matter jurisdiction does not exist, removal of the cases was not proper and remand is warranted. n2 In making this determination, the court is mindful that federal courts are courts of limited jurisdiction and "there is a presumption against removal jurisdiction." Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir.), *cert. denied,* 516 U.S. 863, 133 L. Ed. 2d 114, 116 S. Ct. 174 (1995).

> n1 Delta and Continental filed motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Northwest filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

[*6]

> n2 Although plaintiffs did not file motions to remand, the court has an obligation to ensure that it has subject matter jurisdiction before ruling on the merits of an action. *See* Tuck v. United Services Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988), *cert. denied,* 489 U.S. 1080, 103 L. Ed. 2d 839, 109 S. Ct. 1534 (1989). To assist the court in this endeavor, the court directed the parties to file simultaneous briefs on the issue of federal officer jurisdiction. In response to this directive, defendants not only argued the applicability of federal officer jurisdiction, but also that federal question jurisdiction existed at the time of removal.

Analysis of the jurisdictional issue begins with the concept that removal was proper under § 1441 only if these actions are ones "arising under the Constitution, laws, or treaties of the United States." n3 28 U.S.C. § 1331. In deciding whether plaintiffs' claims arise under federal law, the court is guided

> by the "well-pleaded complaint" rule, under which a suit arises under federal law "only when the plaintiff's statement [*7] of his own cause of action shows that it is based" on federal law. The plaintiff's anticipation of a defense based on federal law is not enough to make the case "arise

under" federal law. Nor is a defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which a plaintiff's claim is based, a proper basis for removal even if both parties agree that the only issue for decision in a case is the validity of a federal preemption defense. The plaintiff is the "master of the claim" and may prevent removal by choosing not to plead a federal claim even if one is available. Under the "artful pleading" doctrine, however, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim. Similarly, removal is permitted when the plaintiff's right to relief requires resolution of a substantial question of federal law.

Schmeling v. Nordam, 97 F.3d 1336, 1339 (10th Cir. 1996) (citations omitted).

> n3 Defendants do not contend that diversity jurisdiction exists; nor could they, as the jurisdictional amount cannot be met. Plaintiffs all allege that the damages sustained by each member of the purported class is not likely to exceed $ 100.00.

 [*8]

Defendants argue that removal is appropriate under the substantial federal question doctrine. This doctrine requires that the court analyze plaintiffs' claims against the backdrop of the federal statutes at issue. Because plaintiffs assert only state law claims, n4 removal is proper only if the court finds that resolution of plaintiffs' claims turns on substantial questions of federal law and the applicable federal statutes give rise to a private cause of action. *See* Rice v. Office of Servicemembers' Group Life Ins., 260 F.3d 1240, 1245 (10th Cir. 2001). "In considering whether a substantial federal question exists, we must exercise 'prudence and restraint.'" Nicodemus, 318 F.3d at 1236 (*quoting* Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 813, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986)).

> n4 In their jurisdictional brief, defendants assert that "although Plaintiffs' original petitions purported to allege state law causes of action, their briefing in response to Defendants' motions to dismiss and for judgment on the pleadings makes clear beyond dispute that they are in fact seeking relief on causes of action they claim arise under federal law." Defendants' Joint Jurisdictional Brief at 2. Whether federal question jurisdiction existed at the time of removal, however, is governed by whether a question of federal law appeared on the face of plaintiffs' well-pleaded complaints. *See* Nicodemus v. Union Pacific Corp., 318 F.3d 1231, 1235 (10th Cir. 2003). Arguments of counsel cannot be used to alter or supplement the allegations contained in a party's initial pleading. Defendants' citation of Akin v. Ashland Chem. Co., 156 F.3d 1030, 1037 (10th Cir. 1998), *cert. denied,* 526 U.S. 1112, 143 L. Ed. 2d 788, 119 S. Ct. 1756 (1999), is inapposite. When their motion to remand was denied, the plaintiffs in Akin amended their complaint. The Court of Appeals held that plaintiffs' voluntary amendment of their complaint invoked the court's jurisdiction and "amounted to a waiver of alleged defective removal." Id. at 1036. At no time did plaintiffs in these cases seek to amend their complaints to assert any federal claims.

 [*9]

The record before the court clarifies that plaintiffs are challenging the airline defendants' failure to refund Passenger Facility Charges ("PFC") and September 11th Security Fees to passengers who were not able to use non-refundable tickets. PFCs are fees that are imposed on each paying passenger who boards an aircraft at a commercial airport controlled by a public agency. The fees are then used by the airport to fund projects approved by the Federal Aviation Administration. Authority for the imposition of such fees is found in 49 U.S.C. § 40117. The statute provides in part that:

> Passenger facility revenues that are held by an air carrier or an agent of the carrier after collection of a passenger facility fee constitute a trust fund that is held by the air carrier or agent for the beneficial interest of the eligible agency imposing the fee. Such carrier or agent holds neither legal nor equitable interest in the passenger facility revenues except for any handling fee or retention of interest collected on unremitted proceeds as may be allowed by the Secretary.

49 U.S.C. § 40117(g)(4). The September 11th Security Fee [*10] was implemented after the horrific events of September 11, 2001 to help defray the costs of providing civil aviation security services. 49 U.S.C. § 44940. The

Case 1:04-cv-12450-MEL   Document 76-2   Filed 02/13/06   Page 4 of 5

Page 4
2004 U.S. Dist. LEXIS 28508, *

statute and regulations require imposition of a $ 2.50 fee per flight segment on paying and frequent-flier passengers who board planes that originate at airports located in the United States. Id.; 49 C.F.R. § 1510.5. The fees are collected by the air carriers and paid to the Under Secretary of Transportation for Security on the last day of the month following the month of collection. 49 U.S.C. § 44940(e). The regulations provide that:

> Security service fees collected by a direct air carrier or foreign air carrier are held in trust by that direct carrier for the beneficial interest of the United States in paying for the costs of providing civil aviation security services described in 49 U.S.C. 44940. The direct air carrier or foreign air carrier holds neither legal nor equitable interest in the security service fees except for the right to retain any accrued interest on the principal amounts collected pursuant to § 1510.13(b). [*11]

49 C.F.R. § 1510.11(b).

The court assumes without deciding that analysis of plaintiffs' claims would require interpretation of these statutes and that this would present a substantial question of federal law. n5 Thus, the court assumes that the first prong of the substantial federal question jurisdiction test can be met. The issue is whether the governing federal law provides for a private right of action. As neither statute contains an express private right of action for passengers aggrieved by actions taken under their authority, the court must examine whether an implied private right of action exists.

> N5 The court is mindful that construction of a federal statute, without more, does not confer federal question jurisdiction. *See* Rice, 260 F.3d at 1245.

In determining whether an implied private right of action exists the court focuses on Congressional intent.

> Like substantive federal law itself, private rights of action to enforce federal law must [*12] be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

Alexander v. Sandoval, 532 U.S. 275, 286-87, 149 L. Ed. 2d 517, 121 S. Ct. 1511 (2001). The court must examine the statutes at issue for language that "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff." Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979). There is no such language in either statute. Rather than creating rights for any group of people, the statutes at issue are a specific grant of authority to the executive branch to impose fees on airline passengers to fund improvements at airports and to increase security. Although passengers are the ultimate beneficiaries [*13] of the improved security and airport facilities, this is not sufficient to infer a right of action. As the Seventh Circuit found in Statland v. American Airlines, Inc., 998 F.2d 539, 540 (7th Cir.), *cert. denied,* 510 U.S. 1012, 126 L. Ed. 2d 568, 114 S. Ct. 603 (1993), "if this were enough to infer Congress' intent to give those consumers a private cause of action, then every law regulating a business would give its customers an implied private right to sue. This is not the law." Furthermore, to infer a private right of action on passengers' behalf for the *return* of such fees is nonsensical given the purpose of the statutes. Moreover, although the PFC statute specifies the conditions under which and from whom PFCs may be collected, authority to audit and to ensure compliance with the statute is bestowed on the Secretary of Transportation, not individuals. *See* 49 U.S.C. § 40117(h)-(i). Likewise, nothing in the September 11th Security Fee statute evidences Congressional intent to provide a federal judicial forum for passengers seeking refunds; rather, the statute specifically provides that "the Under Secretary may refund any fee paid by mistake or any [*14] amount paid in excess of that required." 49 U.S.C. § 44940(g).

Based on its analysis of the statutes, the court finds that no private cause of action exists. This finding is in accord with rulings that Congress did not intend to provide for private rights of action under other statutes governing the airline industry. *See, e.g.,* Statland, 998 F.2d 539 (Federal Aviation Act); Wayne v. DHL Worldwide Express, 294 F.3d 1179 (9th Cir. 2002) (Airline Deregulation Act of 1978); Boswell v. Skywest Airlines, Inc., 361 F.3d 1263 (10th Cir. 2004) (Air Carrier Access Act). As there is no private right of action, the substantial fed-

eral question doctrine does not support removal of these cases.

This decision does not complete the court's analysis because defendants also claim that removal was proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). This statute permits removal of any civil or criminal action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under [*15] color of such office . . . ." Id. Section 1442 not only confers a right of removal, it also constitutes an independent grant of subject matter jurisdiction. Falls Riverway Realty, Inc. v. City of Niagra Falls, 754 F.2d 49, 55 (2d Cir. 1985). *See also* Isaacson v. Dow Chemical Co., 304 F. Supp. 2d 442, 446 (E.D.N.Y 2004). In order to justify removal under § 1442(a)(1), defendants n6 must show that they were acting under the direction of a federal officer or agency, they have a "colorable federal defense" to plaintiffs' actions, and there is causal connection between plaintiffs' claims and the actions defendants took under color of federal authority. Mesa v. California, 489 U.S. 121, 124-5, 129-31, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989).

> n6 Plaintiffs argue that defendants are not "persons" within the meaning of the removal statute because they are corporations. The court rejects this argument as it is contrary to Congressional intent. The federal statutes begin with the instruction that "in determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, . . . as well as individuals." 1 U.S.C. § 1. There is nothing in the statutes at issue that indicates a Congressional intent to exclude corporations from the definition of persons.

[*16]

The court finds that defendants cannot demonstrate that they were acting under the direction of a federal officer or agency when they collected and refused to refund the fees at issue. This element requires defendants to show that their actions

> were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal office or officer" or that "a corporation participates in a regulated industry." The official must have *direct and detailed control* over the defendant.

Freiberg v. Swinerton & Walberg Prop. Servs., Inc., 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) (citations omitted) (emphasis added). Defendants' actions were not subject to the type of direct and detailed control that courts have found justified federal officer removal jurisdiction. *See, e.g.,* Isaacson, 304 F. Supp. 2d 442, 449 (government strictly and precisely regulated formula for Agent Orange and prohibited placement of warnings); Reed v. Fina Oil & Chem. Co., 995 F. Supp. 705, 711-12 (E.D. Texas 1998) ("almost every [*17] aspect of the actual operation of [defendant's] plant was supervised or dictated by the federal government"). Nor is this a case where defendants were deputized by a federal agency to perform official acts, such as in Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1428 (11th Cir. 1996). Furthermore, notwithstanding defendants' argument, they cannot be considered federal intermediaries, as they do not "perform the day to day work of administering an ongoing federal program under strict official oversight." Ryan v. Dow Chem. Co., 781 F. Supp. 934, 949 (E.D.N.Y. 1992) (collecting cases). Rather, defendants merely collected fees that were then transmitted to the federal government for disbursement. If the court were to accept defendants' argument, every corporation that collects a tax or a fee pursuant to a federal statute would be entitled to assert federal officer removal. Much more than this is required.

In sum, the court finds that it does not have subject matter jurisdiction over these actions. Neither the substantial federal question doctrine, nor the federal officer removal statute support removal of these actions to federal court. The [*18] court therefore REMANDS these actions to the District Court of Canadian County, Oklahoma. In light of this ruling, the court expresses no opinion regarding defendants' contention that plaintiffs' claims are preempted by the Airline Deregulation Act. The Clerk of the Court is directed to mail three certified copies of this Order to the Clerk of the District Court of Canadian County, Oklahoma.

It is so ordered this 8th day of October, 2004.

TIM LEONARD

United States District Judge