07/17 '04 10:24 NO.579   02/25

Date: 7-17-04
Time: ~~11:55 AM~~ 12:15 h
Initials: RS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------x
JULIE E. HAYES, on behalf of        :
herself and all others similarly    :
situated,                           :
                                    :
                    Plaintiff,      :
                                    :
        - against -                 :
                                    :
AMERICAN AIRLINES, INC.             :
                                    :
                    Defendant.      :
------------------------------------x

Index No. 15178/2004

Purchased and filed on:
July 2, 2004

Plaintiff designates
New York County as
the place for trial

The basis of venue is
place of business of
Defendant

**SUMMONS**

To the above named defendant:

        YOU ARE HEREBY SUMMONED to answer the complaint in this
action and to serve a copy of your answer, or, if the complaint is
not served with this summons, to serve a notice of appearance, on
the Plaintiff's Attorneys within 20 days after service of this
summons, exclusive of the day of service (or within 30 days after
the service is complete if this summons is not personally delivered
to you within the State of New York); and in case of your failure
to appear or answer, judgment will be taken against you by default
for the relief demanded in the complaint.

Defendant's address:

American Airlines, Inc.
4333 Amon Carter Blvd.
Ft. Worth, TX  76155

Dated: July 1, 2004

                    WECHSLER HARWOOD LLP

            By:    _Samuel K. Rosen_
                    Robert I. Harwood
                    Samuel K. Rosen
                    488 Madison Avenue
                    New York, New York 10022
                    (212) 935-7400
                    Attorneys for Plaintiff

04 JUL -2  AM 10:01
QUEENS COUNTY CLERK
RECEIVED

07/17 '04 10:25 NO.579  03/25

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
----------------------------------------x
JULIA E. HAYES, individually and on        :
behalf of all others similarly situated,   :
                              Plaintiff,   :
                                           :
            -vs-                           :
                                           :
AMERICAN AIRLINES, INC.                    :
                              Defendant.   :
                                           :
----------------------------------------x

Index No. 15178/2004

CLASS ACTION
COMPLAINT

Plaintiff, individually and on behalf of all others
similarly situated, by her undersigned attorneys, alleges upon
personal information as to herself and upon information and belief
as to all other allegations, for her Class Action Complaint against
defendant American Airlines, Inc. ("AA").

### NATURE OF THE ACTION

1.    Plaintiff brings this action on behalf of a class
(the "Class") comprised of all persons who, during the period
commencing six years prior to the date of the filing this complaint
and continuing to the present (the "Class Period"), purchased a
ticket to fly on an AA flight and paid to AA, a Passenger Facility
Charge ("PFC") and/or a Passenger Security Service Fee ("PSSF")
and, after the ticket was not used for a flight within the allotted
time period and expired, AA failed to refund the PFC and/or PSSF.

2.   PFCs and PSSFs are not part of the price of a ticket.  PFC's are funds collected by AA for payment over to the airports from which a traveler enplanes; PSSFs are collected by AA, held in trust for the Transportation Security Administration ("TSA"), and when appropriate remitted to the TSA.

3.   Defendant is required to remit to the relevant airports and the TSA the funds collected for the PFCs and PSSFs, respectively, only if the passenger in fact flies on the ticketed, or another, AA flight.  If the passenger does not fly on the ticketed or substituted AA flight, and the ticket expires, AA is required to refund the PFC and PSSC to the ticket purchaser.

4.   However, AA has failed to refund PFCs and PSSFs to plaintiff and the other Class members upon expiration of tickets.

5.   Plaintiff seeks to remedy the harm caused by defendant's wrongful conduct by obtaining in this lawsuit the refund to plaintiff and the Class of the amounts of all PFCs and PSSFs required to be returned to the Class but were instead improperly retained by defendant.  Such improper conduct constitutes breach of contract, unjust enrichment, and violation of New York General Business Law § 349 ("GBL § 349").

## THE PARTIES

6.   Plaintiff, Julia E. Hayes, is a resident of the County of New York.  She purchased a ticket for use by Lucean Straughn on a flight from Dallas-Fort Worth Airport ("DFW") to

LaGuardia Airport ("LGA") on December 23, 2002, with a return to DFW from LGA on December 25, 2002. The ticket was never used and subsequently expired.

7. Defendant AA is a Delaware corporation with its corporate headquarters located in Fort Worth, Texas. According to its public filings, AA is the largest scheduled passenger airline in the world. AA operates hundreds of flights daily in and out of the airports in this County.

## CLASS ACTION ALLEGATIONS

8. Plaintiff brings this action as a class action, pursuant to Article 9 of the CPLR, on behalf of plaintiff and all other Class members. The Class is comprised of all persons who, during the period commencing six years prior to the filing of this complaint and continuing to the present, purchased a ticket to fly on an AA flight and paid to AA a PFC and/or a PSSF and, after the ticket was not used for a flight within the allocated time period and expired, AA failed to refund the PFC and/or PSSF.

9. The Class satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of CPLR § 901.

10. The Class members are so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated that the

3

Class consists of thousands of members who are geographically dispersed throughout the country.

11. Because plaintiff purchased a ticket from AA that expired without being used and failed to receive from AA reimbursement for the PFC or PSSF, she is a member of the Class. Plaintiff's claims are typical of the claims of the other Class members. The harm suffered by plaintiff and all other Class members was and is caused by the same conduct by defendant, viz., defendant's wrongful and inequitable conduct in pocketing the PFC and PSSF owed by defendant to the Class.

12. Plaintiff will fairly and adequately represent and protect the interests of the Class in that plaintiff has no interests antagonistic to, or in conflict with, the Class. Plaintiff has retained competent counsel, experienced in consumer and commercial class action litigation, who will prosecute this action vigorously.

13. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are small, the expense and burden of individual litigation make it virtually impossible for individual Class members to seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, defendant would likely continue its wrongful conduct, and unfairly retain

4

millions of dollars in unreimbursed PFCs and PSSFs, or otherwise escape liability for its wrongdoing as alleged in this Complaint.

14. Common questions of law and fact exist as to all Class members which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

a. whether AA violated GBL § 349 by retaining the amounts of the PFCs and PSSFs owed to the Class;

b. whether AA has been unjustly enriched by such practices;

c. whether AA breached its contracts with the Class; and

d. the appropriate measure of damages, restitution and/or other relief.

15. The Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a Class action.

# BACKGROUND FACTS

## THE PFC PROGRAM

16.  Under the PFC program, the Federal Aviation Administration ("FAA") may authorize a public agency to impose a PFC of $1, $2, $3, $4 or $4.50 on passengers enplaned at a commercial service airport controlled by the public agency.  See 14 C.F.R. §158.5.  The PFC regulations define a "passenger enplaned" as a "domestic, territorial or international revenue passenger enplaned in the States in scheduled or nonscheduled service on aircraft in intrastate, interstate, or foreign commerce." 49 C.F.R. §158.3.

17.  The PFC regulations require passenger refunds when a passenger with a  ticket neither enplanes on the ticketed nor a substituted flight before the ticket expires.  According to FAA regulations:

> Issuing carriers and their agents shall collect the PFC's based upon the itinerary at the time of issuance. Any changes to the itinerary that are initiated by a passenger that require an adjustment to the amount paid by the passenger are subject to collection or refund of the PFC as appropriate.

14 C.F.R. §158.45(a)(3).  (Emphasis added.)

18.  A PFC Order issued by the FAA contains the following specific guidance regarding the issuance of PFC refunds to passengers:

> Section 3. COLLECTION OF TICKETS ISSUED IN THE UNITED STATES

6-12   **INFORMATION REQUIRED ON TICKETS.** Issuing
carriers and their agents shall note as a separate
item on each air travel coupon, or equivalent
record for which a PFC is collected, the total
amount of PFC's paid by the passenger and the
airports for which the PFC's are collected.

6-13 **ADJUSTMENTS.** Air carriers must collect PFC's
from, or refund PFC's to, passengers for itinerary
changes initiated by the passenger, as appropriate,
for the new itinerary if the changes require an
adjustment to the total amount paid by the
passenger.

See Passenger Facility Charge, Order 5500.1, U.S. Dept. of
Transportation, Aug. 9, 2001, at 90 (annexed hereto as "Exhibit A).

**THE PSSF PROGRAM**

19. Effective February 1, 2002, the TSA imposed a $2.50
security service fee per enplanement on passengers of domestic and
foreign air carriers in air transportation, foreign air
transportation, and intrastate air transportation originating at
airports in the United States. See 49 C.F.R. §1510.5. The
regulations define "passenger enplanement" as a "person boarding in
the United States in scheduled or nonscheduled service on aircraft
in intrastate, interstate or foreign air transportation." 49 C.F.R.
§1510.3.

20. The regulations mandate that refunds (or additional
collections) are required when a passenger changes his itinerary,
and the associated number of enplanements:

Any changes by the passenger to the itinerary that
alter the number of enplanements are subject to
additional collection or refund of the security

7

service fee by the direct air carrier or foreign
air carrier as appropriate.

See 49 C.F.R. §1510.9(b).  (Emphasis added.)

21.  The refundability to passengers of security service
fees collected by air carriers was the subject of an exchange of
letters between TSA and the Air Transport Association ("ATA") in
late 2002.   The ATA noted that some of its member carriers
"received inquiries regarding the refundability of various
governmentally imposed fees paid by passengers who do not travel on
their scheduled flights (not including changes due to weather,
mechanical problems, etc.)." Letter of James A. Hultquist to
Randall Fiertz, Oct. 9, 2002, at 1 (annexed hereto as "Exhibit B").
The ATA posed the following specific questions:

> If a passenger's ticket expires, and the passenger
> is not entitled to a refund of the fare from the
> airline, is the previously collected Passenger
> Security Service Fee applicable to the unused
> travel refundable to the passenger? If so, from
> whom does the passenger request the refund, since
> in many cases the airline has already remitted the
> funds collected, and it would not otherwise be
> issuing a refund to the passenger?

Id. at 2.

22.  The TSA responded that air carriers are required to
refund security fees to passengers:

> While Part 1510 does not address in detail how
> refunds are to be handled, it clearly indicates
> that air carriers and foreign air carriers are
> responsible for refunding September 11 Security
> Fees to ticket purchasers. Specifically, it
> provides that "[a]ny changes by the passenger to
> the itinerary that alter the number of enplanements

8

are subject to additional collection or refund of
the security service fee by the direct air carrier
or foreign air carrier as appropriate." (emphasis
added).

Letter of Randall Fiertz to James A. Hultquist, Nov. 21, 2002, at
1-2 (annexed hereto as "Exhibit C").

23.   Thus, when a ticket purchased by a Class member is
not used for air travel and the ticket expires, AA is required to
refund the PSSF to the purchaser of the ticket.

24.   AA never refunded to plaintiff the PFC or PSSF paid
by her in connection with the expired ticket.   Similarly, AA has
never refunded the PFC or PSSF paid by other Class members when
their tickets expired.

## FIRST CAUSE OF ACTION

## (Violation of GBL § 349)

25.   Plaintiff repeats and realleges the allegations set
forth in the preceding paragraphs of this Complaint as if set forth
fully herein.

26.   Defendant's conduct in refusing to refund the PFCs
and PSSFs owed to plaintiff and the other Class members constitutes
materially deceptive acts or practices in the conduct of business,
trade or commerce or in the furnishing of services that affect the
public interest under GBL § 349.

27.   Plaintiff and the Class have been injured by
defendant's conduct.

9

28.  Defendants are liable for damages sustained by plaintiff and the Class, as allowable under GBL ¶ 349.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment)

29.  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

30.  Defendant has been unjustly enriched at the expense and to the detriment of plaintiff and the Class by wrongfully retaining PFC's and PSSFs of Class members under the facts and circumstances alleged herein.  As a result of its actions, defendant improperly retained funds due and owing to the Class. Defendant's retention of the monies wrongfully collected from plaintiff and the Class violates fundamental principals of justice, equity and good conscience.

31.  Plaintiff and the Class are entitled to recover from defendant as unjust enrichment all amounts that have been wrongfully and improperly collected and retained by defendant, and defendant should be required to disgorge the monies which it has unjustly retained.

10

### THIRD CAUSE OF ACTION

#### (Breach of Contract)

32.  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

33.  AA's airline tickets constitute a contract between AA and the purchasers of such tickets.

34.  Part of the contract between the purchasers of a ticket and AA is AA's agreement to comply with all laws, rules, and regulations to which that ticket is subject, including remittance to airports and the TSA of the PFC and PSSF, respectively or, if no one uses that ticket, to refund the PFC and PSSF to the purchaser.

35.  AA breached its contract with plaintiff and the Class members by not refunding to them PFCs and PSSFs when the subject tickets were not used for a flight and subsequently expired.

36.  As a result of defendant's breach of contract, plaintiff and the Class have been damaged in an amount to be determinated at trial.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of herself and the Class, prays for relief and an order and judgment against defendant as follows:

11

A.   Certifying this case as a class action pursuant to the provisions of Article 9 of the CPLR, with plaintiff certified as Class representative;

B.   Awarding compensatory and/or actual damages, and/or disgorgement and/or restitution in favor of plaintiff and the Class, in an amount to be determined at trial;

C.   Declaring that defendant's actions in retaining PFCs and PSSFs of Class members violate GBL § 349, constitute unjust enrichment, and are breaches of contract;

D.   Enjoining defendant from continuing to improperly retain plaintiff's and the Class member's PFCc and PSSFs;

E.   Awarding the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees and experts' fees and expenses;

F.   Awarding pre- and post-judgment interest; and

G.   Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff and the class demand a trial by jury of all issues.

Dated: July 1, 2004

WECHSLER HARWOOD LLP

By:   _____
Robert I. Harwood
Samuel K. Rosen
488 Madison Avenue
New York, NY 10022
Tel.: (212) 935-7400

Attorneys for Plaintiff

12

07/17 '04 10:29 NO.579  15/25

# EXHIBIT A

07/17 '04 10:29 NO.579  16/25

# ORDER

5500.1

## PASSENGER FACILITY CHARGE



August 8, 2001

**DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

Distribution: ZRP-510; A-FAS-1 (Ltd)          Initiated By: APP-530

5500.1

## SECTION 3. COLLECTION ON TICKETS ISSUED IN THE UNITED STATES

**6-11. COLLECTION OF PFC'S.**

a. Air carriers issuing tickets within the United States must follow procedures specified in Part 158.45. Carriers are responsible for all PFC funds from the time of collection from the passenger to the time of remittance to the public agency. Carriers are responsible for their agents' compliance with PFC collection requirements.

b. Air travel tickets are defined in §158.3 as "...all documents pertaining to a passenger's complete travel itinerary necessary to transport a passenger by air, including passenger manifests."

c. The appropriate charge is the PFC in effect at the airport at the time the ticket is issued, irrespective of when the travel takes place.

d. Issuing carriers, and their agents, shall collect the PFC's based upon the itinerary at the time of ticket issuance:

(1) For each one-way trip shown on the complete itinerary of an air travel ticket, issuing air carriers and their agents shall collect a PFC from an enplaned revenue passenger only for the first two airports where PFC's are imposed. For example, a passenger plans a one-way itinerary from Baltimore to Los Angeles. In order to get the lowest one-way fare, the passenger's itinerary is: Baltimore-Chicago (Midway)-Saint Louis-Phoenix-Los Angeles. Assuming that each stop entailed a new ticket coupon (or equivalent) and all the airports collect PFC's, the passenger would pay a PFC for Baltimore and Chicago (Midway) only.

(2) For each round trip, a PFC shall be collected only for enplanements at the first two enplaning airports (on the outbound leg) and the last two enplaning airports (on the return leg) where PFC's are imposed. For example, a passenger plans a round-trip itinerary from Baltimore to Tucson. In order to meet scheduling requirements, the passenger's itinerary is: Baltimore-Chicago (O'Hare)-Phoenix-Tucson outbound and Tucson-Denver-Chicago (O'Hare)-Baltimore inbound. Assuming that the passenger changed planes for each segment, requiring a new ticket coupon or equivalent record, and each airport collects PFC's, the passenger would pay a PFC for Baltimore and Chicago (O'Hare) outbound, and Denver and Chicago (O'Hare) inbound.

**6-12. INFORMATION REQUIRED ON TICKETS.** Issuing carriers and their agents shall note as a separate item on each air travel coupon, or equivalent record for which a PFC is collected, the total amount of PFC's paid by the passenger and the airports for which the PFC's are collected.

**6-13. ADJUSTMENTS.** Air carriers must collect PFC's from, or refund PFC's to, passengers for itinerary changes initiated by the passenger, as appropriate, for the new itinerary if the changes require an adjustment to the total amount paid by the passenger.

Page 90

Par 6-11
Chap 6

5500.1

An example would be a passenger who pays for a ticket from New York City (Kennedy) to Los Angeles and return, via a connection in Denver in both directions. All three of these airports collect a $3 PFC. The carrier would collect a total of $12 in PFC's for two points out and two points in return. Subsequently, the passenger, at his or her own request, rebooks on a non-stop flight from New York (Kennedy) to Los Angeles with a return trip the same way for a slight increase in airfare. The passenger would now be required to pay $6 (for New York outbound and Los Angeles on return) and would be entitled to receive a refund of $6 for two of the previously paid PFC's.

PFC's are remitted to public agencies according to the original itinerary for itinerary changes initiated by the air carrier. For example, if the same itineraries in the above example were applied to a case where an air carrier, due to a flight cancellation, overbooking, or other situation, initiates itinerary changes, a refund would not be issued to the passenger and the carrier would remit the PFC's as originally ticketed.

**6-14. ESSENTIAL AIR SERVICE (EAS).** Issuing carriers and their agents shall not collect PFC's from a passenger on any flight to an eligible point on an air carrier receiving EAS compensation on that route under 49 U.S.C. 41731-41742. The "eligible point" is defined as the airport that is guaranteed air service on an EAS designated route. PFC's are collected from passengers traveling on air carriers not receiving essential air service compensation on that route. The list of approved EAS points is maintained in the DOT, EAS and Domestic Analysis Division, X-53 and is available on its internet website and can also be accessed through the PFC internet website.

The limitation to the collection of PFC's on EAS compensated travel does not effect the ability of public agencies that control EAS-designated airports to collect PFC's. These public agencies are eligible to apply for a PFC and can collect from passengers enplaning at the airport, regardless of an EAS designation or subsidy.

**6-15. FREQUENT FLYER AWARDS.** Section 204 of the Federal Aviation Administration Authorization Act of 1994, Public Law No. 103-305, enacted on August 23, 1994, [codified at 49 U.S.C. 40117(e)(2)(C)], precludes collection of a PFC from a passenger enplaning at an airport if the passenger did not pay for the air transportation which resulted in such enplanement, including any case in which the passenger obtained the ticket for the air transportation with a frequent flyer award coupon without monetary payment.

The FAA interprets this provision to prohibit the collection of PFC's from passengers considered to be nonrevenue passengers under existing DOT Regulations and from passengers who obtained their ticket with an award coupon issued under a frequent flyer or similar bonus award program ("frequent flyer award coupon"). For purposes of this provision, the FAA considers a "frequent flyer award coupon" to be a zero-fare award of air transportation that an air carrier or foreign air carrier provides to a passenger in exchange for accumulated travel mileage or trip credits in a customer loyalty program. The definition of "frequent flyer award" does not extend to redemption of accumulated credits for awards of additional or upgraded service on trips for which

Par 6-13                                                                                          Page 91
Chap 6

# EXHIBIT B

10/10/02  13:40 FAX 202 626 4894      ATA O.C.C.      @003/003

196465

DEPT. OF TRANSPORTATION
DOCKETS

02 OCT 10 PM 3: 2



AIR TRANSPORT ASSOCIATION

JAMES A. HULTQUIST
Managing Director, Taxes

October 9, 2002

Randall Fiertz
Acting Director of Revenue
Transportation Security Administration
Department of Transportation
400 Seventh St. SW.
Washington, DC 20590          TSA - 2001 - 11120 - 57

Re: Application of Passenger Civil Aviation Security Service Fees

Dear Mr. Fiertz:

This letter is on behalf of the member airlines of the Air Transport Association of America
(ATA). The ATA is the United States' oldest and largest airline trade association. Our members
include 22 U.S. and five associate (non-U.S.) airlines.[1] U.S. members account for more than 95
percent of the passenger and cargo traffic carried by scheduled U.S. airlines.

Recently, several ATA members received inquiries regarding the refundability of various
governmentally imposed fees paid by passengers who do not travel on their scheduled flights (not
including changes due to weather, mechanical problems, etc.). Under the rules applicable to
certain tickets, if a passenger does not travel as scheduled, the tickets for the unused travel will
expire and the amount paid for the unused travel will not be refunded and will have no value
toward future travel. Depending upon the ticket, the timing of this expiration may be as early as
the originally scheduled date of transportation or as much as 12 months after that date.

The airlines are seeking guidance as to the proper treatment of the Passenger Security Service
Fee administered by the TSA when tickets expire.[2]  Airlines are required to collect this fee from

_____
[1] The members are Airborne Express, Alaska Airlines, Aloha Airlines, America West Airlines, American Airlines,
American Trans Air, Atlas Air, Continental Airlines, Delta Air Lines, DHL Airways, Emery Worldwide Airlines,
Evergreen International Airlines, FedEx, Hawaiian Airlines, JetBlue Airways, Midwest Express Airlines, Northwest
Airlines, Polar Air Cargo, Southwest Airlines, United Airlines, UPS Airlines, and US Airways.  Associate members
are Aeromexico, Air Canada, Air Jamaica, KLM Royal Dutch Airlines, and Mexicana.

[2] Similar guidance is also being requested from the Agriculture Department, Immigration and Naturalization Service,
Customs Service and Department of Transportation, all of which either impose or administer fees on certain
passengers.

■

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.
1301 PENNSYLVANIA AVENUE, NW  SUITE 1100  WASHINGTON, DC 20004-1707
202.626.4000  www.airlines.org

TO/10/02  13:40 FAX 202.828 4894        ATA O.G.C.                    ☑003/003

Randall Fiertz
October 9, 2002
Page 2

certain passengers at the time a ticket is sold and they remit the fees within a prescribed time period to the agency. If a passenger's ticket expires, and the passenger is not entitled to a refund of the fare from the airline, is the previously collected the Passenger Security Service Fee applicable to the unused travel refundable to the passenger? If so, from whom does the passenger request the refund, since in many cases the airline has already remitted the funds collected, and it would not otherwise be issuing a refund to the passenger?

The Internal Revenue Service previously considered an analogous situation. In Revenue Ruling 89-109, the IRS held that "to the extent the airline does not refund to the passenger the amount paid for the air transportation, the collected transportation tax attributable to such nonrefunded amount is to be remitted to the Government"

Because of multiple inquiries to ATA members concerning such fees, we would appreciate receiving the requested guidance as soon as possible. If you have any questions or need additional information, I can be reached at 202-626-4213.

Sincerely,

James A. Hultquist
Managing Director, Taxes

CC: Steven Cohen, Transportation Security Administration

07/17 '04 10:31 NO.579  22/25

# EXHIBIT C



**United States Department of Transportation**
TRANSPORTATION SECURITY ADMINISTRATION

400 Seventh Street, S.W.
Washington D.C. 20590

NOV 21 2002

Mr. James A Hultquist
Managing Director, Taxes
Air Transport Association
1301 Pennsylvania Ave., N.W., Suite 1100
Washington, DC 20004-1707

Docket No. 11120

TSA·02·1120-59

Dear Mr. Hultquist:

Thank you for your letter of October 9, 2002, on behalf of the members of the Air Transport Association (ATA) requesting guidance on the refundability of the Transportation Security Administration's (TSA) September 11th Security Fee to ticket purchasers who do not travel on their scheduled flights, particularly where the tickets are nonrefundable and have no value toward future travel. In addition, you inquire as to whether carriers or TSA should provide refunds of September 11th Security Fees to ticket purchasers, as it is common for carriers to have already remitted to TSA the actual fees collected from ticket purchasers. You note that ATA is also seeking guidance from the U.S. Department of Agriculture, the Immigration and Naturalization Service, and the Customs Service on their passenger fee refund requirements. Finally, you refer to Revenue Ruling 89-109, in which the Internal Revenue Service held that, to the extent that airlines do not refund the cost of airline tickets to passengers, the attributable taxes are due to be remitted to the Government.

On October 10, TSA placed a copy of your letter in the Department of Transportation's Docket Management System (DMS) for public review. The DMS is accessible online at http://dms.dot.gov and your letter is identified as item 57 in Docket No. TSA-2001-11120. TSA also placed a copy of this response in that docket.

Under 49 CFR Part 1510, air carriers and foreign air carriers are required to collect September 11th Security Fees, hold them in trust for TSA, and remit them to TSA by the end of the month following the calendar month in which the transportation was sold. These carriers are responsible for the safekeeping and accounting of these fees. While Part 1510 does not address in detail how refunds are to be handled, it clearly indicates that air carriers and foreign air carriers are responsible for refunding September 11th Security Fees to ticket purchasers. Specifically, it provides that "[a]ny changes by the passenger to the itinerary that alter the number of enplanements <u>are subject to additional collection or refund of the security fee by the direct air carrier or foreign air carrier as appropriate.</u>" 49 CFR § 1510.9(b) (emphasis added). When a ticket purchaser does not use a ticket for air transportation and the ticket then expires or loses its value, the September 11th Security Fee involved is subject to a refund by the collecting carrier to the ticket purchaser. If such a ticket purchaser requests a refund of the September 11th Security Fee collected, the carrier must provide the requester with a full refund of the fee.

TSA is considering promulgating further details concerning refunding September 11th Security Fees, as will be reflected in the Final Rule for 49 CFR Part 1510. In any case where an air carrier does not refund September 11th Security Fees to the ticket purchaser, the fees must be remitted to or remain with TSA.

Where a carrier remits a September 11th Security Fee to TSA and then refunds the fee to a ticket purchaser, the carrier may offset the refund by deducting it from the September 11th Security Fees remitted to TSA for the month in which the refund is provided. In such circumstances, the carrier must keep auditable records of the refund, as required by 49 CFR 1510.15. The carrier must also accurately denote the refund in its quarterly report of September 11th Security Fees imposed, collected, refunded and remitted, as required by 49 CFR 1510.17, as amended.

If you need further assistance, please contact me at (202) 385-1209. You may also contact Steven Cohen in the Office of the Chief Counsel at (202) 493-1216.

Sincerely,

Randall Fiertz
Acting Director of Revenue

2

07/17 '04 10:32 NO.579  25/25

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

JULIA E. HAYES, on behalf of herself )
and all others similarly situated, )
                        )
              Plaintiff, )
                        )
    -against- )
                        )
AMERICAN AIRLINES, INC., )
                        )
              Defendant. )

Index No.

**15178/2004**

SUMMONS AND CLASS ACTION COMPLAINT

*Attorneys for*     **WECHSLER HARWOOD LLP**
                       **Plaintiff**
                       **488 MADISON AVENUE**
                       **NEW YORK, N.Y. 10022**
                       **(212) 935-7400**

To:

                                    Service of a copy of the within
                                      is hereby admitted.

                                      Dated _____

Attorney(s) for

PLEASE TAKE NOTICE:
☐ NOTICE OF ENTRY
that the within is a (certified) true copy of an
duly entered in the office of the clerk of the within named court on
☐ NOTICE OF SETTLEMENT
that an                                           , of which the within is a true copy, will
be presented for settlement to the Hon.
one of the Judges of the within named Court, at
                                on                            , at
Dated:

                                           Yours, etc.

                           *Attorneys for*    **WECHSLER HARWOOD LLP**
To:                                            **488 MADISON AVENUE**
*Attorneys for*                                     **NEW YORK, N.Y. 10022**