COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION NO. 04-_____

**04-4410**

---

ROBERT J. HARRINGTON, FAYE BYRON, CRAIG BUCK, VALERIE L. PAWSON, RAY DRASNIN, WANDA MILLS, JEFF GOLUMBUK CAROLINE MARSHALL-SMITH, ANESIA KALAITZIDIS, KENNETH IVANOVITZ, ATHANASE KARAGIORGOS, HARRIET ZALWANGO, MICHAEL BLAU, KENNETH MICCICHE and JENNIEE TSOUVRAKAS on behalf of themselves and others,

Plaintiffs

v.

DELTA AIR LINES, INC., AMERICAN AIRLINES, US AIRWAYS GROUP, INC., d/b/a US AIRWAYS, NORTHWEST AIRLINES, UNITED AIRLINES, INC. ALASKA AIRLINES, CONTINENTAL AIRLINES, AIR CANADA, CHINA EASTERN AIRLINES CORPORATION LIMITED, CHINA SOUTHERN AIRLINES COMPANY LIMITED, DEUTSCHE LUFTHANSA, A.G., d/b/a LUFTHANSA AIRLINES, SWISS INTERNATIONAL AIRLINES LTD, d/b/a SWISSAIR, BRITISH AIRWAYS, PLC, d/b/a BRITISH AIRWAYS, MIDWAY AIRLINES CORP., d/b/a MIDWAY AIRLINES; ALITALIA-LINEE AEREE ITALIANE S.p.A, d/b/a ALITALIA AIRLINES, SOUTHWEST AIRLINES, CO., d/b/a SOUTHWEST AIRLINES, OLYMPIC AIRWAYS-SERVICES, SA, d/b/a OLYMPIC AIRWAYS and AIR TRANSPORT ASSOCIATION,

Defendants

---

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE ... ESSEX

NOV 04 2004

Edward J. Sullivan
CLERK

**COMPLAINT, JURY CLAIM AND REQUEST FOR CLASS CERTIFICATION**

1836ED00011/04/04CIVIL       240.00
1836ED00011/04/04SUR CHARGE   15.00
1836ED00011/04/04SECC         20.00

## I. INTRODUCTION AND OVERVIEW OF ACTION

1.  The plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated, specifically, people who have forfeited airline tickets and/or had nonrefundable

tickets for airline travel and who paid one or more of the following fees or taxes to the defendant airlines:

a.      Passenger facility charge user fee;
b.      Zip tax user fee; and
c.      Foreign landing tax or user fee.

The defendant airlines collect these taxes and fees as a fiduciary in order to pay them to the applicable government agencies but the plaintiff class did not use the airline tickets and the defendant airlines did not pay these fees and taxes to the government agencies but, rather, they wrongfully and unjustly enriched themselves by keeping said funds. The plaintiffs claims are of the "negative value" type as the value of each Class Member's claim is minimal and equitable restitution is being sought. The defendant airlines have hidden and concealed from the plaintiff class the fact that said fees and taxes collected have not been paid to the respective governmental agencies.

## II.  PARTIES AND FACTS

2.      The plaintiff, Robert J. Harrington ("Harrington"), has a usual place of business at 7 Central Street, Framingham, Middlesex County, Massachusetts. Harrington purchased an electronic airline ticket on US Airways in September, 2002 and this was a nonrefundable ticket which he did not use.

3.      The plaintiff, Faye Bryon ("Bryon"), has a usual place of business at 7 Central Street, Framingham, Middlesex County, Massachusetts. Bryon purchased an electronic airline ticket on US Airways in September, 2002 and this was a nonrefundable ticket which she did not use.

4.      The plaintiff, Valerie L. Pawson ("Pawson"), has a usual place of business at 88 Black Falcon Avenue, Boston, Suffolk County, Massachusetts. Pawson purchased an airline ticket on Continental Airlines in November, 2002 and this was a nonrefundable ticket which she did not use.

5.      The plaintiff, Jeff Golumbuk ("Golumbuk"), resides at 7889 Clairemont Mesa Boulevard., San Diego, California 92111. Golumbuk purchased an airline ticket on China Eastern Airlines in September, 2002 on China Southern Airlines in September, 2002 and these were nonrefundable tickets which he did not use.

6.      The plaintiff, Craig Buck ("Buck'), resides at 3078 Quince Street, San Diego, State of California. Buck purchased airline tickets on Alaska Airlines in March, 2002 and on American Airlines in March, 1999 and these were nonrefundable ticket and he did not use them.

7.      The plaintiff, Wanda Mills ("Mills") resides at 4 Mises Road Lady's Island, State of Carolina. Mills purchased airline tickets on Northwest Airlines in August, 2001 and these were nonrefundable tickets which she did not use.

8.      The plaintiff, Michael L. Blau ("Blau") resides in La Jolla, State of California. Blau purchased multiple airline tickets on United Airlines in December, 1998 and these were nonrefundable tickets which he not use.

9.      The plaintiff, Ray Drasnin ("Drasnin"), resides at 4330 Witherby Street, State of California. Drasnin purchased airline tickets on Air Canada in May, 2001 and on Continental in August, 2002 and these were nonrefundable tickets which he not use.

10.     The plaintiff, Caroline Marshall-Smith ("Marshall-Smith"), resides in West Yarmouth, Barnstable County, Massachusetts. Marshall-Smith purchased five (5) airline tickets on Delta Airlines, Inc., in May, 2004 and these tickets were nonrefundable tickets which she did not use.

11.     The plaintiff, Anesia Kalaitzidis ("Kalaitzidis") resides in Boston, Suffolk County, Massachusetts. Kalaitzidis purchased an airline ticket on Alitalia Airlines January, 2004 and this ticket was a nonrefundable ticket which she did not use.

12.     The plaintiff, Athanase Karagiorgos ("Karagiorgos") resides in Newton, Middlesex County, Massachusetts. Karagiorgos purchased an airline ticket on British Airways in March, 2002 and this was a nonrefundable ticket which he did not use.

13.     The plaintiff, Harriet Zalwango ("Zalwango") resides in Boston, Suffolk County, Massachusetts. Zalwango purchased an airline ticket on Midway Airlines in March, 2002 and this ticket was a nonrefundable ticket which she did not use.

14.     The plaintiff, Kenneth Ivanovitz ("Ivanovitz") resides in Springfield, Hampden County, Massachusetts. Ivanovitz purchased an airline ticket on Swiss Air on November 12, 1998 and this was a nonrefundable ticket which he did not use.

15.     The plaintiff, Kenneth Micciche ("Micciche") resides in Natick, Middlesex County, Massachusetts. Micciche purchased an airline ticket on Southwest Airlines in March 2000 and this was a nonrefundable ticket which he did not use.

16.     The plaintiff, Jenniee Tsouvrakas ("Tsouvrakas"), resides in Boston, Suffolk County, Massachusetts. Tsouvrakas purchased an airline ticket on Olympic Airways in March, 2000 and this was a nonrefundable ticket which she did not use.

17.     The defendant, Delta Air Lines, Inc. ("Delta"), is a Delaware corporation with its executive offices located at 1030 Delta Boulevard, Atlanta, State of Georgia. Delta does business and has qualified to do business in the Commonwealth of Massachusetts.

18.     The defendant, American Airlines, Inc. ("American"), is a Delaware corporation with its executive offices at 4333 Amon Carter Boulevard, Fort Worth, State of Texas, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

19.     The defendant, US Airways Group, Inc., d/b/a US Airways ("US Airways"), is a Delaware corporation with its executive offices located at 2345 Capital Drive, Arlington, State of Virginia, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

20.     The defendant, Continental Airlines, Inc. ("Continental"), is a Delaware corporation with its executive offices located at 1600 Smith Street, Houston, State of Texas, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

21.     The defendant, Northwest Airlines, Inc. ("Northwest"), is a Minnesota corporation with its executive offices located at 2700 Lone Oak Parkway, Eagan, State of Minnesota, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

22.     The defendant, United Airlines, Inc. ("United"), is a Delaware corporation with its executive offices located at 1200 E. Algonquin Road, Elk Grove Township, State of 2700 Lone Oak Parkway, Eagan, State of Minnesota, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

23.     The defendant, Air Canada ("Air Canada") is a Canadian corporation with its executive offices located in Montreal, Province of Quebec, Dominion of Canada, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

24.     The defendant, China Eastern Airlines Corporation Limited ("China Eastern") is a corporation organized in China with its executive offices located at 2550 Hoqqiao Road, Shanghai, China and it does business and has qualified to do business in the Commonwealth of Massachusetts.

25.     The defendant, China Southern Airlines Corporation Limited ("China Southern") is a corporation organized in China with its executive offices located at Baiyon International Airport, Guang Zhuu, Guangdong 510405, China and it does business and has qualified to do business in the Commonwealth of Massachusetts.

26.     The defendant, Deutsche Lufthansa, A.G., d/b/a Lufthansa Airlines (Lufthansa Airlines) is a corporation organized in Germany, with its executive offices located at Cologne, Germany and it does business and has qualified to do business in the Commonwealth of Massachusetts.

27.     The defendant, Swiss International Airlines Ltd, d/b/a Swissair ("Swiss air") is a corporation organized in Switzerland with executive offices in Basel, Switzerland, and it does business and has qualified to do business in the Commonwealth of Massachusetts.

28.     The defendant, British Airways, PLC d/b/a British Airways ("British Airways"), is a corporation organized in Great Briton with executive in Harmondsworth, Great Britain and it does business and has qualified to do business in the Commonwealth of Massachusetts,

29.  The defendant, Midway Airlines Corp., d/b/a Midway Airlines ("Midway Airlines") is a corporation with executive offices at Durham, North Carolina and it does business and has qualified to do business in the Commonwealth of Massachusetts.

30.  The defendant, Alitalia-Linee Aeree Italiane S.p.A, d/b/a Alitalia Airlines ("Alitalia Airlines'), is an Italian corporation with executive offices in Rome, Italy and it does business and has qualified to do business in the Commonwealth of Massachusetts.

31.  The defendant Southwest Airlines Co., d/b/a Southwest Airlines ("Southwest Airlines") is a Texas corporation with executive offices in Dallas, Texas and it does business and has qualified to do business in the Commonwealth of Massachusetts.

32.  The defendant, Olympic Airways-Services, SA, d/b/a Olympic Airways, is a Greek corporation with executive offices in Athens, Greece and it does business and has qualified to do business in the Commonwealth of Massachusetts.

33.  The defendant, Air Transport Association ("ATA"), is a corporation with its executive offices at 1301 Pennsylvania Avenue, N.W., Washington, D.C.  ATA is the primary trade group for airlines and it assists airlines in looking for ways to reduce costs, maximize efficiency and increase profitability of its member airlines, which is most of the passenger airlines that fly in or to the USA.  ATA provides expertise, guidance and assistance to its member airlines and Bruce Bishins, CTC, on behalf of travel agents and passengers, on several occasions, requested that ATA rectify and clarify the matter of airlines' refusal to return unused foreign taxes and user fees on nonrefundable or forfeited tickets but to no avail.  ATA saw this as a matter which could have potentially serious implications and refused to take any position or responsibility for this "unjust enrichment' except to advise its members that there would be no policy covering these matter.  As a result of ATA's position (or lack thereof), even though its officers knew that its members were violating the law, it has steadfastly refused to advise its members as to what should be done or to establish any policies.  ATA was advised by Mr. Bishins that it was aiding and abetting unfair trade practices.

## III. CLASS ACTION ALLEGATIONS

34.  Plaintiffs file this action as a Class Action pursuant to M.R.C.P. 23 on their own behalf and on behalf of all other purchasers of airline tickets that were not used and/or non refundable.

35.  It is estimated that there are tens of thousands of people and entities who purchased airline tickets that they did not use them and/or purchased nonrefundable tickets.  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class Members can be determined only by appropriate discovery, the plaintiffs believe that such Class Members number in excess of tens of thousands of separate people or entities.

36.  There are three (3) categories of Class Members, people or entities who, during the Class Period, November 1, 1998 to date, forfeited and/or purchased nonrefundable airline tickets and paid one or more of the following taxes:

    a.    Passenger facility charge user fee;

    b.    Zip tax user fee; and

    c.    Foreign landing tax or user fee.

37.    The plaintiffs' claims are typical of the claims of the Members of the Class. The plaintiffs and all members of the Class sustained damages as a result of the defendants' wrongful conduct, as described in this complaint.

38.    The plaintiffs will fairly and adequately protect the interests of the Members of the Class, and they have retained counsel competent and experienced in class action litigation.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The losses suffered by all of the Class Members are relatively small, albeit significant, and of so-called negative value variety where it would not make sense to file a complaint individually.  Thus, the expense and burden of individual litigation makes it impractical for most Class Members, individually, to seek redress for the wrongful conduct alleged in this action.

40.    Common questions of law and fact exist as to all Members of the Class and predominate over any questions solely affecting individual Members of the Class.  Among the questions of law and fact common to the Class are:

    a.    Did the defendant airlines wrongfully retain for their own use the collected passenger facilities charge user fees instead of paying said funds to the appropriate governmental agencies and/or refunding said funds to the Class Members?

    b.    Did he defendant airlines wrongfully retain for their own use the collected zip tax user fees instead of paying said funds to the appropriate governmental agencies and/or refunding said funds to the Class Members?

    c.    Did he defendant airlines wrongfully retain for their own use the collected foreign landing tax or user fees instead of paying said funds to the appropriate governmental agencies and/or refunding said funds to the Class Members?

41.    The plaintiffs know of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

42.    Certifying this as a class action would resolve these issues for all potential plaintiffs without the necessity of litigating individual lawsuits.  Additionally, class certification in this matter would not impose any undue burden upon the court and will foster judicial economy. In this case, the certification of the class is appropriate as it would not complicate or delay disposition of the case, the defendants would suffer no prejudice as a result of certification and where certification would assure the Class Members that the defendant airlines would not evade their responsibilities in implementing any court orders.

43.     The names and addresses of all Class Members are available from the defendant airlines and notice will be provided to Class Members via first-class mail using techniques and a notice approved by this court.

## IV.  CAUSES OF ACTION

### COUNT I

### (Declaratory Judgment, G.L. Chapter 231A, Section 2)

The plaintiffs incorporate by reference and reallege paragraphs 1 through 43, inclusive, as if fully set forth herein.

44.     As defined by G.L. Chapter 231A, Section 2, an actual dispute and controversy exists as to whether the defendant airlines owe the plaintiffs' and the Class Members' refunds and equitable restitution for the following taxes and/or fees paid to the airlines but not paid by the airlines to the appropriate governmental agency.  These fees and taxes include:

 a.  Passenger facility charge user fees;
 b.  Zip tax user fees; and
 c.  Foreign landing tax or user fees.

### COUNT II

### (Civil Conspiracy and Unjust Enrichment)

The plaintiffs incorporate by reference and reallege paragraphs 1 through 44, inclusive, as if fully set forth herein.

45.     The defendant airlines and ATA have joined together and committed a civil conspiracy to unjustly enrich themselves with a manifest common plan of not informing the plaintiffs and the Class Members of their rights to refunds and the airline defendants were willing participants of the common plan and its execution to wrongfully retain said funds and each took affirmative steps required in order to achieve this desired result.  On several occasions, ATA has been contacted as to the claims made herein of the airlines' refusal to return unused foreign taxes and user fees on nonrefundable or forfeited ticket but to no avail.

46.     As a result of the defendants' conduct, the plaintiffs and the Class Members have suffered monetary losses and the defendants are, or should be, jointly and severally liable to the plaintiffs and the Class Members for making restitution as prayed for herein.

## COUNT III

### (Breach of Fiduciary Duty)

The plaintiffs incorporate by reference and reallege paragraphs 1 through 46, inclusive, as if fully set forth herein.

47.   Each of the defendant airlines' actions, voluntarily undertaken, induced a fiduciary relationship with the plaintiffs and the Class Members.

48.   Each of the defendants knew, or should have known, that the plaintiffs and the Class Members did not understand that they were entitled to a refund.

49.   With regard to the plaintiffs and the Class Members purchasing airline tickets, each of the defendants dominated them, causing special circumstances which created or contributed to a fiduciary relationship.

50.   Each of the defendant airlines owed a fiduciary duty to the plaintiffs and the Class Members whereby they were obligated to:

    a.   Disclose information they would otherwise have no duty to disclose.
    b.   Refrain from self-dealing.
    c.   Do nothing which could hurt the interests of the plaintiffs and the Class Members.
    d.   Generally owe a duty of utmost good faith and loyalty.

51.   By the above-stated conduct, each of the defendant airlines breached these duties owed to the plaintiffs and the Class Members who incurred damages as a result thereof.

## COUNT IV

### (Breach of Contract)

The plaintiffs incorporate by reference and reallege paragraphs 1 through 51, inclusive, as if fully set forth herein.

52.   By the above stated actions, each of the defendant airlines have breached their agreement with the plaintiffs and the Class Members who, as a direct result, have incurred monetary damages plus interest, costs and attorneys' fees.

## COUNT V

### (Breach of Good Faith and Fair Dealing)

The plaintiffs incorporate by reference and reallege paragraphs 1 through 52, inclusive, as if fully set forth herein.

53.    Each of the defendant airlines owed to the plaintiffs and the Class Members a covenant of good faith and fair dealing and the defendants breached said covenant as more fully described above.

54.    As a result of each of the defendant airlines' breach of the covenant of good faith and fair dealing, the plaintiffs and the Class Members have incurred monetary damages plus interest, costs and attorneys' fees.

## VI.  PRAYERS FOR RELIEF

Wherefore, plaintiffs, on their own behalf and on behalf of others similarly situated (Class Members), pray for judgement as follows:

1.    Declare this action to be a Class Action;

2.    Enter a declaratory judgment determining that the defendant airlines have wrongfully retained taxes and fees from the plaintiffs and the Class Members.

3.    Award to the plaintiffs and to all Class Members restitution of all monies paid and wrongfully retained by the defendant airlines.

4.    Treble the restitutionary amounts awarded;

5.    Issue a permanent injunction to prevent the defendant airlines from retaining said fees and taxes in the future.

6.    Appoint an independent authority to review and assess the restitutionary claims of all Class Members.

7.    Award plaintiffs their costs and expenses incurred in this action, including reasonable attorney, accountant and expert fees.

8.    Award to plaintiffs and to all Class Members such other and further relief as this court may deem meet, just and proper.

## VI.  CLASS ACTION STATUS

The plaintiffs and Class Members request that this matter be certified as a class action pursuant to Mass. R. Civ. P. 23.

## VIII.  JURY CLAIM

The plaintiffs and the Class Members demand a trial by jury on all issues so triable.

> Robert J. Harrington, Faye Byron, Craig Buck, Valerie L.
> Pawson, Jeff Golumbuk, Ray Drasnin, Wanda Mills,
> Caroline Marshall-Smith, Anesia Kalaitzidis, Kenneth
> Ivanovitz, Athanase Karagiorgos, Harriet Zalwango,
> Michael Blau and Kenneth Micciche, individually and on
> behalf of themselves and Class Members,
> Plaintiffs
> By their Attorney,
>
>
> Evans J. Carter (BBQ #076560)
> HARGRAVES, KARB, WILCOX & GALVANI, LLP
> 550 Cochituate Road - P.O. Box 966
> Framingham, MA  01701-0966
> (508) 620-0140

Dated: November 4, 2004

# United States District Court
## District of Massachusetts

Civil Action No. 04–12558–NMG

CRAIG BUCK, KENNETH MICCICHE, VALERIE L.
PAWSON, CAROLINE MARSHALL-SMITH,
WANDA MILLS; JEFF GOLUMBUK, ANESIA
KALAITZIDIS, ATHANASE KARAGIORGOS; AND
JENNIFER TSOUVRAKAS, on behalf of
themselves and others,

     *Plaintiffs,*

    *v.*

ALASKA AIRLINES, AMERICAN AIRLINES,
CONTINENTAL AIRLINES, DELTA AIR LINES,
INC., NORTHWEST AIRLINES, SOUTHWEST
AIRLINES CO., d/b/a SOUTHWEST AIRLINES,
CHINA EASTERN AIRLINES CORP. LTD., CHINA
SOUTHERN AIRLINES CO. LTD., AER LINGUS
LIMITED, ALITALIA-LINEE AEREE ITALIANE
S.P.A, d/b/a ALITALIA AIRLINES, BRITISH
AIRWAYS, PLC, d/b/a BRITISH AIRWAYS,
DEUTSCHE LUFTHANSA, A.G., d/b/a
LUFTHANSA AIRLINES, OLYMPIC AIRWAYS-
SERVICES, SA, d/b/a OLYMPIC AIRWAYS, AIR
TRANSPORT ASSOCIATION OF AMERICA, INC.,
AIRLINES REPORTING CORP., and the FEDERAL
AVIATION ADMINISTRATION,

    *Defendants.*

**AMENDED COMPLAINT, JURY CLAIM,
AND REQUEST FOR CLASS
CERTIFICATION**

## I. INTRODUCTION AND OVERVIEW OF ACTION

1.    The plaintiffs (collectively "Air Passengers" or "Passengers") bring this action on

behalf of themselves and all others similarly situated, specifically persons—

    a.    who purchased nonrefundable airline tickets that included domestic or foreign taxes, fees, and charges.

    b.    who forfeited, cancelled, failed to use, made changes to, or did not complete travel using the airline tickets; and

    c.    who did not receive a refund of the taxes, fees, or charges paid, even when those taxes, fees, or charges—

    (1)    were not owed by the Air Passenger to the levying authority and not paid to the levying authority by the Airline Industry; or

    (2)    were overpaid, when they were paid by the Airline Industry to the levying authority, but were not owed by the Air Passenger.

2.    The airline industry defendants (collectively the "Airline Industry" or the "Industry") collect these taxes, fees, and charges as a fiduciary in order to pay them to the applicable levying authorities.

3.    When Air Passengers do not use airline tickets, the Airline Industry, as a matter of business practice, often fails to remit the collected funds to the levying authorities, instead wrongfully and unjustly enriching itself by keeping the money, in a manner that is contrary to law or against public policy, or both.

4.    The Airline Industry failed to disclose, in a way meaningful to Air Passengers—

    (a)    whether the prepaid funds the Industry collected were due to the levying authorities, even though the travel may not have been completed;

(b)     that any collected funds that were not due to the levying authorities were therefore due as refunds to the Passengers who paid those funds; or

(c)     that the collected funds that were not due to the levying authorities but that were nevertheless withheld by the Industry were treated by the Industry as an undisclosed penalty on Passengers.

### Definitions of Terms Used in this Action

5.     In this action:

(a)     The term "taxes, fees, and charges" refers generally to PFCs, Federal user fees, and foreign taxes, fees, and charges.

(b)     The term "Passenger Facility Charge" (or "PFC") refers to a charge under 14 C.F.R. part 158 and 49 U.S.C. § 40117. On ARC-compliant travel documents, this charge is designated "XF". (The charge is a $1, $2, $3, $4, or $4.50 charge assessed by an regional or local public agency for approved airport improvements. These fees are authorized by the Federal Aviation Administration to be imposed by the public agency under Federal law.)

(c)     The term "Federal user fees" refers collectively to the following federally imposed fees:

(1)     A U.S. customs user fee under 19 C.F.R. part 24 (particularly § 24.22(g)(1)). On ARC-compliant travel documents, this charge is designated "YC". (The fee is $5 on tickets originating outside the U.S., Canada, Mexico, and the Caribbean area.)

(2)     An immigration user fee under 8 C.F.R. part 286. On ARC-compliant travel documents, this charge is usually designated "XY" if it is designated. (The fee is $7 on international tickets into the U.S., Puerto Rico, Guam, St. Croix, St. John, or St. Thomas.)

(3)     An agricultural quarantine and inspection (AQI) user fee (also known as an APHIS fee) under 7 C.F.R. § 354(f). On ARC-compliant travel documents, this charge is usually designated "XA" if it is designated. (The fee is $3.10, indexed after Oct. 1, 2001, for international travel into the U.S. or Puerto Rico, other than from Canada.)

(4)     A U.S. security service fee (also called the "September 11th Security Fee") under 49 C.F.R. part 1510. On ARC-compliant travel documents, this charge is usually designated "AY" if it is designated. (The fee is $2.50 per enplanement at a U.S. airport, up to 2 per one-way trip or 4 per round trip.)

(d)     The term "foreign charges" refers to foreign charges, in the form of taxes and fees, as required by pan-national authorities, national, regional, and local governments, or other levying authorities outside the United States, including territories or possessions of the United States not subject to U.S. excise taxes (under § 4261 *et seq.* of the Internal Revenue Code of 1986 (26 U.S.C. § 4261 *et seq.*)) on domestic tickets.

### Description of Taxes, Fees, and Charges

6.     Several types of taxes and fees are collected from Air Passengers by the Airline Industry on behalf of the United States Government agencies, State, local, and regional authorities, and foreign governments. These include PFCs, Federal user fees, and foreign charges.

7.    Air carriers are required to collect PFCs and Federal user fees, which must be held in "trust" by the collecting air carrier.

8.    The air carrier collecting the funds must also periodically remit the fees to the appropriate fee-levying authorities, maintain accounting systems and methods and submit to external audits, and submit regular reports or statements about their fee-collecting and remitting activities.

### User fees due when 'service' is 'used'

9.    The nature of user fees is to become due (that is, the fee is required to be paid to the fee-levying authority) only if or when the passenger actually 'uses' the 'service.' PFCs and Federal user fees are due as follows:

(a)    PFCs and U.S. security services fees (September 11th Security Fees) are due upon passenger "enplanement."

(b)    Agricultural inspection user fees are due "upon arrival" of the passenger from abroad.

(c)    Immigration user fees are due for passengers "arriving" from abroad.

(d)    U.S. Customs user fees are paid for "services provided in connection with arrival of each passenger" from outside the Customs territory of the United States.

10.    What constitutes 'use' varies slightly from fee to fee, but all amount to the same thing: If a passenger doesn't use the fee, the fee does not have to be paid to the fee-levying authority.

11.    Consequently, in the context of the refund and trust regulatory language discussed above, if the fee never becomes due to the levying authority, it should be returned to the person who paid the fee.

12.    This is especially true where the collecting carrier 'holds neither legal nor equitable interest' in the fees. (*See* 14 C.F.R. § 158.5 (PFCs); 49 C.F.R. § 1510.9(a) (U.S. security service fees); 7 C.F.R. § 354.3(f)(1) (agricultural inspection user fees); 8 C.F.R. § 286.2(a) (immigration user fees); 19 C.F.R. § 24.22(g)(1)(i)–(ii) (U.S. Customs user fees).)

## II. PARTIES AND FACTS

### Plaintiffs

13.    Plaintiff Craig **Buck** resides in **San Diego, California**.

14.    Plaintiff Kenneth Micciche resides in Natick, Massachusetts.

15.    Plaintiff Valerie Pawson resides in and does business from Boston, Massachusetts.

16.    Plaintiff Caroline Marshall-Smith resides in West Yarmouth, Massachusetts.

17.    Plaintiff Wanda Mills resides in Lady's Island, South Carolina.

18.    Plaintiff Jeff Golumbuk resides in San Diego, California.

19.    Plaintiff Anesia Kalaitzidis resides in Boston, Massachusetts.

20.    Plaintiff Athanase Karagiorgos resides in Newton, Massachusetts.

21.    Plaintiff Jennifer Tsouvrakas resident in Boston, Massachusetts.

### Defendants

### Domestic Airlines

22.    Defendant **Alaska Airlines, Inc.** ("Alaska Airlines")—

(a)    is an Alaska corporation;

    (b)     has its principal offices in Seattle, Washington; and

    (c)     has been registered with the Secretary of the Commonwealth of Massachusetts as a foreign corporation since January 25, 2002.

23.     Defendant **American Airlines, Inc.** ("American Airlines")—

    (a)     is a Delaware corporation;

    (b)     has its principal offices in Forth Worth, **Texas**;

    (c)     has been registered with the Secretary of the Commonwealth of Massachusetts as a foreign corporation since May 22, 1934;

    (d)     is registered with the states of California and South Carolina at all times material hereto.

24.     Defendant **Continental Airlines, Inc.** ("Continental Airlines")—

    (a)     is a Delaware corporation;

    (b)     has its principal offices in Houston, Texas; and

    (c)     has been registered with the Secretary of the Commonwealth of Massachusetts as a foreign corporation since January 19, 1988.

25.     Defendant **Delta Air Lines, Inc.** ("Delta Air Lines")—

    (a)     a Delaware corporation;

    (b)     has its principal offices in Atlanta, Georgia; and

    (c)     has been registered with the Secretary of the Commonwealth of Massachusetts as a foreign corporation since March 21, 1972.

26.     Defendant **Northwest Airlines, Inc.** ("Northwest Airlines")—

(a)     is a Minnesota corporation;

(b)     has its principal offices in Magan, Minnesota; and

(c)     has been registered with the Secretary of the Commonwealth of Massachusetts as a foreign corporation since May 21, 1992.

27.     Defendant **Southwest Airlines Co., d/b/a Southwest Airlines ("Southwest Airlines")**—

(a)     is a Texas corporation;

(b)     has its principal offices in Dallas, Texas; and

(c)     on information and belief, is not registered with the Secretary of the Commonwealth of Massachusetts.

28.     Each of the defendant domestic airlines operates at least one Internet Web site through which the general public (including residents of Massachusetts, California, and South Carolina) may purchase air tickets on the airline. The Internet Web sites are as follows:

(a)     Alaska Airlines operates http://www.alaskaair.com/.

(b)     American Airlines operates http://www.aa.com/.

(c)     Continental Airlines operates http://www.continental.com/.

(d)     Delta Air Lines operates http://www.delta.com/.

(e)     Northwest Airlines operates http://www.nwa.com/.

(f)     Southwest Airlines operates http://www.southwest.com/.

(g)    United Air Lines operates http://www.united.com/.

**Foreign Airlines**

29.    Defendant **Aer Lingus Limited Airlines—**

(a)    is a foreign corporation organized in Ireland;

(b)    has its principal offices in Dublin, Ireland;

(c)    has been registered with the Secretary of the Commonwealth of Massachusetts

as a foreign corporation since October 4, 2004.

30    Defendant **Alitalia-Linee Aeree Italiane S.p.A, d/b/a Alitalia Airlines—**

(a)    is a foreign corporation organized in Italy;

(b)    has its principal offices in Rome, Italy; and

(c)    on information and belief, is not registered with the Secretary of the

Commonwealth of Massachusetts.

31.    Defendant **British Airways, PLC, d/b/a British Airways—**

(a)    is a foreign corporation organized in the United Kingdom;

(b)    on information and belief, has its principal headquarters in London, England,

and has its principal U.S. offices in Jackson, New York; and

(c)    has been registered with the Secretary of the Commonwealth of

Massachusetts as a foreign corporation since October 5, 2000.

32.    Defendant **China Eastern Airlines Corp. Ltd.—**

(a)     is a foreign corporation organized in the People's Republic of China ("China");

(b)     has its principal offices in Shanghai, China; and

(c)     on information and belief, is not registered with the Secretary of the Commonwealth of Massachusetts.

33.     Defendant **China Southern Airlines Corp. Ltd.**—

(a)     is a foreign corporation organized in China;

(b)     has its principal offices in Guangzhou, Guangdong, China; and

(c)     on information and belief, is not registered with the Secretary of the Commonwealth of Massachusetts.

34.     Defendant **Deutsche Lufthansa, A.G., d/b/a Lufthansa [German] Airlines**—

(a)     is a foreign corporation organized in Germany;

(b)     on information and belief, has its principal offices in Cologne, Germany; and

(c)     on information and belief, is not registered with the Secretary of the Commonwealth of Massachusetts.

35.     Defendant **Olympic Airways-Services, SA, d/b/a Olympic Airways**—

(a)     is a foreign corporation organized in Greece;

(b)     has its principal offices in Athens, Greece; and

(c)     on information and belief, is not registered with the Secretary of the Commonwealth of Massachusetts.

36.    Each of the defendant foreign airlines operates at least one Internet Web site through which the general public (including residents of Massachusetts, California, and South Carolina) may purchase air tickets for travel on the airline. The Internet Web sites are as follows:

(a)    Aer Lingus Limited operates http://www.aerlingus.com/

(b)    Alitalia Airlines operates http://www.alitaliausa.com/.

(c)    British Airways operates http//www.britishairways.com/travel/home/ public/en_us.

(d)    China Eastern Airlines operates http://www.ce-air.com/cea/en_US/homepage.

(e)    China Southern Airlines operates http://www.cs-air.com/en/.

(f)    Lufthansa German Airlines operates http://cms.lufthansa.com/fly/us/en/index.

(g)    Olympic Airways operates http://www.olympicairlines.com/.

### Air Transport Association of America

37.    Defendant Air Transport Association of America, Inc. ("ATA")—

(a)    is a District of Columbia corporation; and

(b)    has its principal offices in the City of Washington, in the District of Columbia.

38.    ATA is the primary trade group for airlines and it assists airlines in looking for ways to reduce costs, maximize efficiency, and increase profitability of its member airlines, which include most of the passenger airlines that fly in or to the United States.

39.     ATA provides expertise, guidance, and assistance to its member airlines and Bruce Bishins, CTC, on behalf of travel agents and passengers, on several occasions, requested that ATA rectify and clarify the matter of airlines' refusal to return unused foreign taxes and user fees on nonrefundable or forfeited tickets but to no avail.

40.     ATA saw this as a matter which could have potentially serious implications and refused to take any position or responsibility for this "unjust enrichment," except to advise its members that there would be no policy covering these matters.

41.     As a result of ATA's position (or lack thereof), even though its officers knew that its members were violating the law, it has steadfastly refused to advise its members as to what should be done or to establish any policies.

42.     ATA was aware that it was aiding and abetting unfair trade practices.

43.     ATA operates at least one Internet Web site available to the general public (including residents of Massachusetts, California, and South Carolina). ATA operates http://www.airlines.org/.

**Airlines Reporting Corp.**

44.     Defendant Airlines Reporting Corp. ("ARC")—

(a)     is a close corporation owned by scheduled airline members of ATA that sign ARC's Carrier Services Agreement;

(b)     on information and belief, is a corporation established under the laws of Delaware.

(c)     on information and belief, has its principal offices in Arlington, Virginia;

(d)    on information and belief, is not registered with the Secretaries of the Commonwealth of Massachusetts, California or South Carolina.

45.    ARC is an airline-owned company offering travel products and services, ticket distribution, and settlement through a variety of channels in the United States, Puerto Rico, and the U.S. Virgin Islands.

46.    ARC provides ticket distribution, reporting, and settlement services for over 130 air carriers and over 30,000 ARC-accredited travel agency locations and corporate travel departments.

47.    ARC describes itself as "the information hub of the $85 billion Travel industry."

48.    Each    of    the    airline    defendants    is    a    member    of    ARC.    (*See* http://www.arccorp.com/participants/part_carriers.html.)

49.    ARC operates at least one Internet Web site available to the general public (including residents of Massachusetts, California, and South Carolina). ARC operates http://www.arccorp.com/.

50.    In 1997, ARC launched its Interactive Agent Reporting (IAR) system, which is an all-electronic sales reporting system for travel agents.

51.    In 2001, the use of IAR electronic sales reporting surpassed 90 percent and in 2002, its use surpassed 99 percent and with ARC-related travel agents, it is 100 percent usage.

52.    As the primary entity providing ticket distribution, reporting, and settlement services for the Airline Industry, and as the originator of the IAR system, ARC has the unique ability to facilitate or hinder the proper calculation, collection, payment or remittance, and refund of taxes, fees, and charges due from, paid by, or owing to Air Passengers.

53.    ARC's member airlines have signed ARC's Carrier Services Agreement.

**Federal Aviation Administration**

54.     The defendant, the **Federal Aviation Administration ("F.A.A.")**, is an agency within the U.S. Department of Transportation and has significant regulatory authority over the Airline Industry.

55.     The defendant, the **Federal Aviation Administration ("F.A.A.")**, in changing the "collection compensation" rule with respect to PFCs to provide for compensation to the Airline Industry, in the form of a percentage of each PFC *collected* by the Airline Industry (rather than each PFC *remitted* to the PFC-levying authority)—

(a)     exceeded the authority granted to the Secretary of Transportation or the Administrator of the F.A.A. by the Congress by levying PFCs (or the portion thereof consisting of the "collection compensation" paid to the Airline Industry) directly on Air Passengers, even when such PFCs would otherwise be uncollectible by the actual PFC-levying authority due to a change of an Air Passenger's itinerary (including cancellation, no-show, or missed travel);

(b)     conspired with the Airline Industry to levy directly on Air Passengers (though purportedly on behalf of the actual PFC-levying authorities) charges not due to such levying authorities, which charges would not otherwise be subject to collection compensation by the Airline Industry;

(c)     may reduce the total amount of PFCs collected by the levying authority and therefore reduce the amount of such funds available for F.A.A.-authorized improvements;

(d)     will reduce (or has reduced) the amount of each PFC collected on behalf of the levying authority by the amount of the "collection compensation", thereby enriching the

Airline Industry at the expense of PFC-levying authorities and Air Passengers, thereby making the levying authority affirmatively pay for the collection of the PFCs;

(e)     will reduce (or has reduced) the quality or amount of facilities and services for Air Passengers who use the affected airports.

### III. JURISDICTION

56.     Jurisdiction in the Federal courts is proper under the following provisions:

(a)     28 U.S.C. § 1331 (Federal question), as the plaintiffs' claims arise under the laws of the United States, including the following:

(1)     7 C.F.R. § 354(f) (relating to agricultural inspection user fees).

(2)     8 C.F.R. part 286 (relating to immigration user fees).

(3)     14 C.F.R. part 158 and 49 U.S.C. § 40117 (relating to Passenger Facility Charges).

(4)     19 C.F.R. part 24 (particularly § 24.22(g)(1)) (relating to U.S. Customs user fees).

(5)     49 C.F.R. part 1510 (relating to U.S. security service fees, also called the "September 11th Security Fee").

(c)     28 U.S.C. § 1332(a) (diversity of citizenship and amount in controversy), as "the matter in controversy exceeds [or is expected to exceed] the sum or value of $75,000 ... and is between ... citizens of different States and in which citizens or subjects of a foreign state are additional parties."

(d)    28 U.S.C. § 1340 (cases involving customs duties), as 19 C.F.R. § 24.22(j)(2) specifies the U.S. Customs fee imposed under 19 C.F.R. § 24.22(g) (which forms part of the plaintiffs' claims) is treated for jurisdictional purposes as a Customs duty.

(e)    28 U.S.C. § 1367 (supplemental jurisdiction), with respect to the plaintiffs' related claims under State law.

## IV. VENUE

57.    Venue is proper in the District of Massachusetts under U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because at least one of the defendants transacts business in this District.

## V. ADDITIONAL FACTS

### Retention of Prepaid Taxes, Fees, and Charges

58.    Each defendant airline sold one or more tickets for air travel to one or more of the individual plaintiffs (for the use of the plaintiff or another person) for domestic or international travel.

59.    The plaintiffs each purchased (and may purchase in the future) nonrefundable airfare from one or more defendant airlines for domestic or foreign travel, which provided (or may provide) the basis for the plaintiffs' advance payment (or prepayment) of anticipated domestic or foreign taxes, fees, or charges.

60.    The plaintiffs each paid (or prepaid) one or more of domestic or foreign taxes, fees, or charges.

61.    The plaintiffs each did not use the purchased airfare and therefore the advance payment (or prepayment) of certain taxes, fees, or charges became an overpayment of such taxes, fees, or charges.

62.    The airlines kept, for their own benefit, the plaintiffs' overpayments of prepaid anticipated taxes, fees, or charges.

### Undisclosed Contract Provisions

63.    The Airline Industry violated 14 C.F.R. part 253 and 49 U.S.C. § 41707 by, among other things, seeking to impose on Air Passengers certain contract terms, incorporated by reference into the contract of carriage, without providing Passengers conspicuous written notice of the salient features of those terms on or with the ticket, including—

    (a)    terms restricting refunds of the ticket price;

    (b)    terms imposing monetary penalties on Passengers; and

    (c)    terms permitting the carrier to raise the price.

### VI. CLASS ACTION REQUEST

64.    Plaintiffs file this action as a Class Action pursuant to Fed. R. Civ. P. 23 on their own behalf and on behalf of all other similarly situated Air Passengers.

65.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members can be determined only by appropriate discovery, the plaintiffs believe that such Class Members number in excess of tens of thousands of separate persons.

66. The taxes, fees, and charges—separate from the nonrefundable airfare purchased by the plaintiffs—for which the plaintiffs seek compensation, are the following:

(a) Unrefunded prepaid domestic fees or charges, including PFCs and Federal user fees.

(b) Unrefunded prepaid foreign taxes, fees, or charges.

(c) Interest (on the principal amount of the fees collected) wrongfully retained as a result of the Airline Industry's failure to return unearned taxes, fees, and charges to Air Passengers.

67. The Class Period is November 1, 1998, to the present.

68. The plaintiffs' claims are typical of the claims of the Members of the Class. The plaintiffs and all Members of the Class sustained damages as a result of the defendants' conduct, as described in this action.

69. The representative plaintiffs each sustained damages as a result of the wrongful conduct of the Airline Industry and the claims of individual named plaintiffs are representative of the claims of other members of the class of such plaintiffs.

70. The representative plaintiffs will fairly and adequately protect the interests of the Class Members and they are represented by counsel competent and experienced in class action litigation.

71. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The loss suffered by each individual class member is relatively small, albeit significant, so it would be neither economical nor efficient for each to file a complaint

individually. Thus, the expense and burden of individual litigation makes it impractical for most putative Class Members individually to seek redress for the wrongful conduct alleged in this action.

72.    Common questions of law and fact exist as to all putative Class Members, and these common questions predominate over any questions solely affecting individual Class Members. Among the questions of law and fact common to the putative class are the following:

(a)    Did the Airline Industry wrongfully retain prepaid governmental fees and charges that never became due to the levying authority because the Air Passengers (the plaintiffs) never used the underlying airfare on which those prepayments had been based?

(b)    Was the Airline Industry obligated to pay, and did it pay, to the levying authorities the domestic and foreign taxes, fees, and charges collected from the plaintiffs, notwithstanding the fact that such fees were not due under the applicable provisions of law governing such fees and charges?

(c)    Are any overpayments of domestic and foreign taxes, fees, and charges refundable to the Airline Industry or to the Air Passengers from whom the overpayments were collected?

(d)    Is the Airline Industry liable to Air Passengers for overpayment to governmental authorities with respect to domestic and foreign taxes, fees, and charges paid by passengers but not actually due to such authorities (because of nonuse of the airfare that formed the only basis for collection of such taxes, fees, and charges)?

(e)    When airfare (on the one part) and governmentally imposed (or authorized) taxes, fees, and charges (on the other part) are separately allocated on a ticket for air travel,

what effect does that separation have on the nonrefundability of the airfare, or of the taxes, fees, and charges?

(f)     To what extent is Airline Industry retention of prepaid domestic and foreign taxes, fees, and charges unlawful when an Air Passenger has not used the nonrefundable airfare which was the only basis for collection of such prepaid taxes, fees, and charges?

(g)     When did the obligation to hold the collected funds in trust for the fee levying authority cease?

(h)     Did the Airline Industry give Air Passengers adequate notice of all the salient terms of their contracts of carriage, including the extent of nonrefundability, the additional penalty imposed due to the nonrefund of prepaid taxes, charges, and fees that were based on, but not a part of, the nonrefundable airfare?

73.     The plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

74.     Certifying this action as a class action would resolve these issues for all potential plaintiffs and defendants without the necessity of litigating individual lawsuits. Additionally, class certification of this matter would not impose any undue burden upon the court and will foster judicial economy.

75.     Certification of the class is appropriate, since it would not complicate or delay disposition of the case, the defendants would suffer no prejudice as a result of certification, and it would assure the putative Class Members that the Airline Industry would not evade its responsibilities in implementing any court orders.

F:\CARTER\HARRINGTON\Amended Complaint.doc

76.     The names and addresses of all Class Members are available from the Airline Industry and notice can be provided to putative Class Members via first class mail using techniques and a notice approved by the Court.

## IV. CAUSES OF ACTION

### Count I

#### (Declaratory Judgment)

77.     The plaintiffs seek a declaratory judgment, under 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57, to "declare the rights and other legal relations" of the parties with respect to the questions of law described in paragraph 72.

### Count II

#### (Rescission of Contract)

78.     By the actions described above, the defendant airlines violated 14 C.F.R. part 253 (notice of terms of contract of carriage) and are therefore entitled to rescission of the portions of the contract that are in such violation.

79.     The defendants failed to give sufficient notice of the incorporation of contract terms as required by 14 C.F.R. § 253.5 (general notice of incorporated terms) and § 253.7 (direct notice for certain terms, including terms "restricting refunds" and "imposing monetary penalties"), and therefore such terms are in violation of those federally imposed contract requirements.

80.     The effect of retaining fees to which the Airline Industry was not entitled was to impose a 'monetary penalty' in the amount of the unrefunded taxes, charges, and fees that were not

due the levying authorities when Air Passengers' nonrefundable tickets went unused or were forfeited.

81.     Even though a ticket purchased by an Air Passenger might have stated that it was "nonrefundable" or had a "change fee" (which amounts to a 'penalty'), Air Passengers were not informed of the *additional* penalty that would be imposed on them if they failed to use their nonrefundable tickets.

82.     The Air Passengers incurred monetary damages as a direct result of the defendant airlines' unlawful conduct.

## Count III

### (Breach of Contract)

83.     By the actions described above, each of the defendant airlines has breached its agreement with the Air Passengers who purchased tickets for travel via the airline.

84.     The Air Passengers incurred monetary damages as a direct result of such breaches of contract.

## Count IV

### (Unjust Enrichment)

85.     By the actions described above, each of the defendant airlines has been unjustly enriched by its unlawful conduct, at the expense of Air Passengers who purchased tickets for travel via the airline.

86.     Certain charges or fees are refunded to the Airline Industry for fees *collected in conjunction with unused tickets* or travel documents.

87.     The Airline Industry wrongfully retains (or withholds from Air Passengers) prepaid taxes, charges, and fees (and the interest thereon) even when—

(a)     the collected fees are not due to the levying authority;

(b)     the collected funds are not paid by the Airline Industry to the levying authority; and

(c)     the collected funds are refunded to the Airline Industry by the levying authority.

88.     The Air Passengers have incurred monetary damages as a direct result of such unjust enrichment.

## Count V

### (Breach of the Covenant of Good Faith and Fair Dealing)

89.     Each of the defendant airlines owed to the Air Passengers a covenant of good faith and fair dealing in the execution of the contracts between them.

90.     By the actions described above, each of the defendant airlines breached that covenant of good faith and fair dealing.

91.     As a result of each of the defendant airlines' breach of the covenant of good faith and fair dealing, the plaintiffs and the Class Members have incurred monetary damages plus interest, costs and attorneys' fees.

## **Count VI**

### **(Breach of Fiduciary Duty)**

92.     of the defendant airlines was legally required to hold certain of the domestic and (on information and belief) foreign taxes, fees, and charges in trust for the benefit of the authority levying the taxes, fees, or charges.

93.     the Air Passengers failed to use their tickets or complete their travel, thus (potentially) removing any basis for the Airline Industry to hold the prepaid funds in trust for the levying authority, the obligation to hold the collected funds in trust shifted, or should have shifted, from an obligation to hold the funds in trust for the levying authority to an obligation to hold the funds for the Air Passengers who paid the unearned taxes, fees, or charges.

94.     Each of the defendant airlines owed a fiduciary duty to the plaintiffs and the Class Members whereby they were obligated to:

   (a)     Disclose information they would otherwise have no duty to disclose.

   (b)     Refrain from self-dealing.

   (c)     Do nothing which could hurt the interests of the plaintiffs and the Class Members.

   (d)     Generally owe a duty of utmost good faith and loyalty.

95.     By the above-stated conduct, each of the defendant airlines breached their fiduciary duty to the Air Passengers.

96.     The Air Passengers have incurred monetary damages as a direct result of these defendants' breach of their fiduciary duty to the Air Passengers with respect to unearned taxes, fees, and charges prepaid by Passengers (and any interest thereon).

## Count VII

### (Civil Conspiracy)

97.     By the actions described above and herein, the defendant members of the Airline Industry (including the airline defendants, ATA, and ARC) have joined together and committed a civil conspiracy to unjustly enrich the Airline Industry with a manifest common plan of not informing (or misinforming) Air Passengers of their rights to refunds.

98.     These defendants were willing participants in the common plan and in its execution to wrongfully retain such funds, and each took affirmative steps required in order to achieve this desired result.

99.     Defendant ATA describes itself, at least in part, as "serv[ng] its member airlines … by developing and coordinating industry actions…." and "serv[ing] as a focal point for industry efforts to standardize practices … of the air transport system." These statements may describe a sinister purpose with respect to ATA's role in guiding or setting Airline Industry policy, especially if the "industry actions" it coordinates or the "standardize[d] practices" it seeks to establish are unlawful, as alleged in this action.

100.    Defendant ARC similarly coordinates and standardizes policy, procedures, systems, and other aspects of the Airline Industry.

101.    Air Passengers *must* pay user fees, and ostensibly they make payment of those fees to the Airline Industry to hold in trust pending payment to the authorities levying the fees.

102.    These user fees are paid *in addition to the airfare* charged by the airlines and are separately enumerated on receipts passengers receive. Yet Airline Industry policy appears to be uniform in the failure or refusal to refund those fees to Air Passengers who have purchased and not used (or have forfeited) nonrefundable tickets.

103.    The plaintiffs assert that this practice is unlawful, and facts tending to show that the Airline Industry has acted in concert to prevent such passengers from receiving refunds support the plaintiffs' civil conspiracy and breach of fiduciary duty claims.

104.    The Air Passengers have incurred monetary damages as a result of these defendants' unlawful conduct, and these defendants are, or should be, jointly and severally liable to the Air Passengers for making restitution.

## V. PRAYERS FOR RELIEF

*Wherefore*, plaintiffs, on their own behalf and on behalf of others similarly situated (Class Members), pray for judgment as follows:

1.    Declare this action to be a class action.

2.    Enter a declaratory judgment determining that the Airline Industry has wrongfully retained taxes, fees, and charges from Air Passengers.

3.    Enter a declaratory judgment determining that the Airline Industry violated 14 C.F.R. part 253 and 49 U.S.C. § 41707 by giving improper notice of certain contract provisions and that "an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term" in such violation. (*See* 14 C.F.R. § 253.4(a).)

F:\CARTER\HARRINGTON\Amended Complaint.doc

26

4.      Award to the Air Passengers Air Passengers restitution of all amounts paid and wrongfully retained by the Airline Industry and treble the restitutionary amounts awarded.

5.      Issue a permanent injunction to prevent the Airline Industry from retaining taxes, fees, and charges in the future.

6.      Declare the Federal Aviation Administration's "collection compensation" rule change to be unlawful and issue an injunction preventing its enforcement.

7.      Appoint an independent authority to review and assess the restitutionary claims of all Class Members.

8.      Award the Air Passengers their costs and expenses incurred in this action, including reasonable attorney, accountant, and expert fees.

9.      Award to the Air Passengers such other and further relief as this Court may deem meet, just, and proper.

## IV. REQUEST FOR CLASS CERTIFICATION

The plaintiffs and Class Members request that this matter be certified as a class action pursuant to Fed. R. Civ. P. 23.

## VII.  Jury Claim

The plaintiffs and the Class Members demand a trial by jury on all issues so triable.

Plaintiffs,

By their Attorney,


/s/ Evans J. Carter
Evans J. Carter (BBO #076560)
HARGRAVES, KARB, WILCOX & GALVANI, LLP
550 Cochituate Road - P.O. Box 966
Framingham, MA 01701-0966
(508) 620-0140

Dated: May 31, 2005