

2 Wooster Street
New York, NY 10013 USA
Tel: 416-922-6332
Fax: 416-922-0039
E-Mail: postmaster@ustar.com

10 December 2002

Mr. J. Howard Beales III, Director
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave. N.W.
Washington, DC 20580

<u>Via Electronic Delivery
and Fax: 202-326-3799</u>

### Complaint Regarding Consumer Refunds of Air Transportation Tax and Fee Amounts Processed and Retained by the *Airlines Reporting Corporation* *and its Participating Air Carriers*

Dear Mr. Beales:

The distribution of airline tickets through 30,000 travel agency locations in the United States is largely facilitated by the Airlines Reporting Corporation (ARC) on behalf of its shareholder carriers and more than 115 other U.S. and international airlines.

ARC maintains operational control over the Area Settlement Plan (ASP), a program implemented by ARC's predecessor, the Air Traffic Conference in 1964. The ASP facilitates the weekly settlement of airline ticket sales by U.S. travel agencies, reporting and remitting nearly $70 billion in 2002 to ARC's participating air carriers.

In addition to the actual accounting of transactions, ARC also provides written instructions to travel agencies regarding proper ticketing procedures, including those procedures which travel agents are required to follow regarding the collection of a wide variety of air transportation taxes, fees, and related charges. These instructions are conveyed in the *ARC Industry Agents' Handbook* and other communications issued by ARC from time to time.

### Executive Summary of the Complaint

With the advent of non-refundable fares, consumers who purchase air transportation avail themselves of discount air fares which air carriers will not refund, and in some cases, not exchange for future air transportation. Consumers are aware that these non-refundable fares present a certain risk if the traveler is unable to meet the travel requirements as set forth by the rules which relate to their fare purchase. In many cases, consumers actually do lose the entire value of the fare they have paid for non-compliance with travel rules or alternatively consumers choose to forfeit the value of their fare paid when they voluntarily choose not to travel at all.

While consumers are prepared to trade-off the acquisition of lower fares for the risk of fare non-refundability, consumers do expect to receive a complete refund on any taxes and fees which would no longer be applicable should the air transportation never be flown.

In many cases, airlines which participate in the ASP refuse to provide refunds for these consumption-based taxes and fees, resulting in consumers being deprived of legitimate refunds and carriers being unjustly enriched by taxes and fees never paid to the taxing authorities.

On this basis, the United States Travel Agent Registry (USTAR) herewith submits its complaint to the Commission wherein USTAR seeks the Commission's intervention in assuring that consumers of air transportation are not deprived of rightful refunds on tax and fee amounts which carriers are allegedly retaining unlawfully.

USTAR wishes to stress that the present complaint does not seek to question or address the refundability of fares. The complaint focuses solely on the matter of the refundability of taxes and fees which would otherwise be collected on the basis that the air transportation would actually be flown.

### The Parties

USTAR is a not-for-profit business cooperative of travel agents throughout the United States and is chartered under Article II of the Cooperative Corporation Law of the State of New York. USTAR maintains its principal offices at 2 Wooster Street, New York, New York 10013, and additional offices in Toronto, Canada, and represents the interests of more than one thousand U.S. travel agents in a variety of domains including automation, technology, sales and marketing, and distribution.

ARC is a close corporation established in 1984 and is based in Arlington, Virginia. Only passenger carrying, scheduled airline members of the Air Transport Association of America (ATA), which are also party to ARC's Carrier Services Agreement, are eligible to be shareholders. There currently are thirteen shareholders of ARC. In 2002, ARC's Board of Directors included Air Canada, Alaska Airlines, America West Airlines, American Airlines, British Airways, Continental Airlines, Delta Airlines, Hawaiian Airlines, Lufthansa German Airlines, Northwest Airlines, Southwest Airlines, United Airlines, and U.S. Airways.

### Principal Elements of the Complaint

1. Taxes and fees applicable to transportation by air can be divided into two categories:

a) taxes and fees which are attracted by the purchase of air transportation (excise taxes)
b) taxes and fees which are attracted by the use of air transportation (consumption taxes)

2. U.S. excise tax laws currently provide for only two taxes which are applicable to the purchase of passenger air transportation:

a) a percentage tax (7.5%) and a related domestic-segment tax ($3.00)

- 2 -

b) an international air travel facilities (arrival and departure) tax ($13.20 or $6.60 Alaska/Hawaii)

3. In September 1989, the IRS issued revenue ruling 89-109, which in part, stipulated that excise taxes on air transportation are attracted by the purchase of air transportation; not the actual use of air transportation. Accordingly, refunds of these excise taxes would only be lawful to the extent that a commensurate amount of air fare was actually refunded to the purchaser. Any amount of fare not refunded would result in the applicable portion of excise tax not being refunded either.

4. All other taxes and fees are imposed and collected based on the actual usage of air transportation. These include, but are not limited to, U.S. Customs Fee, U.S Immigration Fee, U.S. APHIS Fee, U.S. Passenger Facility Fee, U.S. Security Service Fee, and literally hundreds of Canadian, Mexican, and other international taxes and fees levied on the emplanement of airline passengers or their usage of air transportation.

The list of taxes and fees is so extensive that the International Air Transport Association (IATA) maintains a listing service which details more than 1500 variations of 650 taxes and fees which are collectable on air transportation.

5. In some cases, airlines impose separately detailed fees and charges which are actually cost recoveries of their passenger operations. Examples of these include fuel surcharges, insurance surcharges, and navigation fees, to name a few. Unlike taxes and fees imposed by third parties, these surcharges are imposed by the air carriers themselves as line item cost recoveries.

One notable exception is the Canadian Airport Improvement Fee (AIF). While this fee is portrayed as if it were a government-mandated tax, the AIF is actually a fee which is collected on tickets sold in the USA where the airports and airlines in Canada have jointly agreed to charge passengers for using airport facilities in Canada. Unlike the U.S. Passenger Facility Charge, the Canadian AIF is not government imposed.

6. When a passenger is in possession of a ticket wherein the fare is not refundable, and where that passenger elects not to travel, thus forfeiting his fare, USTAR believes that the passenger is entitled to a refund of any non-excise taxes and all other fees and charges which were collected predicated on the basis that the passenger would actually fly on the transportation purchased.

7. Air carriers are routinely refusing to provide refunds for these refundable taxes and fees despite the fact that they were collected on the basis that air transportation would actually be flown.

8. The refusal by air carriers to provide refunds for these refundable taxes and fees is even more odious in that the taxing authority, airport, or foreign government has not been paid their respective levies, as no passenger was ever emplaned on air services for which the carrier would actually pay out the amount collected.

9. The result of the carriers' refusal to provide refunds for these refundable taxes and fees is that airline passengers have been deprived of their consumer right to an appropriate refund and that carriers have unjustly enriched themselves through deceptive monetary collection and retention policies.

10. While ARC, on behalf of its 128 participating airlines, is quick to communicate to and enforce the requirement by travel agents to properly collect these taxes and fees at the time of ticket issuance, it has not responded adequately to the vast array of conflicting refund policies communicated directly to travel agents by its participating airlines. USTAR has attempted several times to compel ARC to assure that tax refund policy was properly clarified, consistently applied, and erring carriers corrected.

ARC has refused all such efforts by USTAR. ARC continually states that each airline is responsible to communicate its own policy and that ARC will not intercede when these policies are different from carrier to carrier.

11. USTAR finds it highly disingenuous, if not completely curious, that ARC is front and center in the communication of the proper collection of taxes and fees, but conveniently refrains from taking a position when it comes to tax and fee refunds.

Similar attempts by USTAR to raise this issue with the Air Transport Association of America also proved unsuccessful. It has become patently clear that the airlines are sitting on millions of dollars of taxes and fees unjustly withheld from consumers.

12. The following provides some sizing of the approximate amounts of various refundable-type U.S. taxes and fees collected annually by U.S. carriers as of September 2002:

| | |
|---|---|
| - U.S. Customs Fee | $238 million |
| - U.S. Immigration Fee | $438 million |
| - U.S. APHIS Fee | $139 million |
| - U.S. Passenger Facility Charges | $1.6 billion |
| - U.S. Security Service Fee | $1.7 billion |

Add to the above amounts the multitude of non-U.S. airlines collecting these same fees, and the millions, if not billions of dollars collected for foreign entities, and the enormity of the collections becomes obvious and clear.

### Remedies Sought in the Complaint

13. USTAR asks the Commission to protect the rights of air travel consumers to the refund of any and all taxes, fees, and charges which were collected by airlines based on the actual consumption of air transportation or emplanement therein and where such transportation will not be flown or is forfeited by the traveler.

14. USTAR asks the Commission to compel ARC and its participating airlines to communicate and facilitate clear and consistent procedures regarding the proper handling and processing of any and all refunds of taxes, fees and charges which were collected by airlines based on the actual consumption of air transportation or emplanement therein and where such transportation will not be flown or is forfeited by the traveler; this to specifically include procedures for both paper tickets and electronic tickets.

15. USTAR asks the Commission to compel ARC and its participating airlines to amend and visibly publish and distribute refund rules so that consumers are properly and efficiently informed as to their rights to a refund as described above.

16. USTAR asks the Commission, to the extent possible, to compel airlines to honor requests for refunds as described above for a period retroactive to 01 January 2000.

USTAR thanks the Commission for its attention to this matter.

Respectfully submitted,

*Bruce Bishins*

Bruce Bishins, CTC
President and
Chief Executive Officer