UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **TEITELBAUM,** ) ) ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| ) | |
| *v.* ) | **Civil Action** |
| ) | **No. 04-12450-MEL** |
| **ALASKA AIRLINES,** *et. al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR
ENTRY OF SEPARATE AND FINAL JUDGMENT BY AIR JAMAICA**

The Defendant, Air Jamaica, submits this memorandum in support of its Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), and for entry of Separate and Final Judgment in favor of Air Jamaica, pursuant to Fed. R. Civ. P. 54 (b). As grounds for this motion, Air Jamaica states that: (1) the Amended Complaint fails to state a claim against Air Jamaica upon which relief can be granted, either pursuant to the False Claim Act, 31 U.S.C. §§3729, 3730, or at common law; (2) the Court lacks subject matter jurisdiction over this matter due to the False Claims Act's "public disclosure" bar, 31 U.S.C. §§3730(e)(4)(a); (3) the Amended Complaint fails to comply with the pleading requirements of Fed. R. Civ. P. 9(b); and (4) the Plaintiff-Relator lacks standing to bring the common law claims asserted in Counts V through IX. As allowance of the Motion to Dismiss will resolve all claims against Air Jamaica in this action, there is no just reason to delay the entry of separate and final Judgment in favor of Air Jamaica, pursuant to Fed. R. Civ. P. 54 (b).

## STATEMENT OF THE CASE

The Plaintiff-Relator, Jennifer Teitelbaum,[1] (hereinafter "Relator"), has asserted a *qui tam* action against various domestic and foreign airline carriers pursuant to the False Claim Act, 31 U.S.C. §§3729-3730 ("FCA"), which authorizes private individuals, under specific and limited circumstances, to litigate claims on behalf of the United States for violations of the FCA. The Relator has asserted that the various airline Defendants have acted unlawfully and in violation of the FCA in their handling of various taxes, fees, and related government charges included in the cost of non-refundable airline tickets. More specifically, the Amended Complaint alleges that, as part of the sale of non-refundable tickets to passengers, the Defendants collected specific government-mandated charges and fees associated therewith, and that the Defendants failed to refund/reimburse these charges and fees to the passengers/customers who, ultimately, did not use the non-refundable tickets.[2] The Realtor further alleges that after the passengers/customers had forfeited their non-refundable tickets, the Defendants failed to forward payment to the government for those charges and fees. Ms. Teitelbaum contends that such conduct constitutes four separate violations of the FCA, Counts I-IV, and five separate violations of common law, Counts V-IX. However, the Relator concedes that those charges and fees would have only become payable to the government if the passengers/customers had actually used the non-refundable tickets. As the tickets were never used, the charges never became due or payable.

---

[1] The Amended Complaint states that Ms. Teitelbaum is a resident of Massachusetts, but provides no specific information as to the basis of her knowledge sufficient to establish her capacity to bring this action under the FCA.

[2] Counsel for the Plaintiff had filed a corresponding action against some, but not all, of the Defendants in the present action, claiming that the charges and fees should have been reimbursed to the passengers/customers. That action, *Harrington, et. al. v. Delta Air Lines, Inc.,* Civil Action No. 04-12558-NMG (D. Mass.), was dismissed on February 21, 2006.

**ARGUMENT**

**I.     The Claims Against Air Jamaica Should Be Dismissed, Pursuant To Fed. R. Civ. P. 12(b)(6), For Failure To State a Claim Upon Which Relief May Be Granted.**

A Complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted only if no liability could arise under any set of facts consistent with the Plaintiff's allegations. *Gorski v. New Hampshire Dep't of Corrections,* 290 F.3d 466, 473 (1st Cir. 2002).  In ruling upon a motion to dismiss, the Court must accept as true the factual allegations of the Complaint, and all reasonable inferences must be drawn in favor of the plaintiff. *Moss v. Camp Pemigewassett, Inc.,* 312 F.3d 503, 506 (1st Cir. 2003).  Air Jamaica recognizes the difficult burden upon a moving party under Rule 12(b)(6).  However, based upon the facts alleged in the Amended Complaint, Air Jamaica can meet that burden. For the following reasons, all claims against Air Jamaica in the Amended Complaint must be dismissed, because it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations".  *Gorski, supra,* at 473.

The FCA imposes liability upon persons who 1) present or cause to be presented to the United States government, a claim for approval or payment, where 2) that claim is false or fraudulent, and 3) the action was undertaken knowingly.  31 U.S.C. §3729(a)(1) (b).  However, the FCA does not give rise to potential liability for all alleged fraudulent conduct.  Rather, it only applies to circumstances arising from the actual presentment of false or fraudulent claims to the government.  As the Amended Complaint does not allege that Air Jamaica ever made any such claims upon the United States government, (nor that it made any false or fraudulent presentment to avoid payments owed to the government), no liability can exist under the FCA. *United States v. Rivera,* 55 F.3d 703, 709 (1st Cir. 1995).

In Counts I, II and IV of the Amended Complaint, the Relator asserts *qui tam* claims under which liability could only exist if false or fraudulent attempts had actually been made by the Defendant, Air Jamaica, knowingly, to obtain payment from the United States.  Not only does the Amended Complaint fail to allege that Air Jamaica ever presented or caused to be presented any false or fraudulent claim for approval or payment by the United States government, the facts alleged by the Relator actually establish affirmatively that no such claims were ever made by Air Jamaica in the context of the charges and fees at issue in this matter.

In Count III, the Relator asserts a "reverse false claim" under which liability could only exist if fraudulent attempts had actually been made by Air Jamaica to avoid making payments it actually owed to the United States.  However, as the Relator has conceded, specifically in paragraphs 9 through 12 of the Amended Complaint, the charges and fees ***never*** became due or payable to the United States, nor to any other governmental entity, department or agency, because the tickets in question were never used.

The Relator alleges that the Defendant airline carriers were mandated by the government to collect certain fees/charges and that such monies were required to be held in trust by the "collecting air carrier" for the "appropriate fee-levying authorities".  Amended Complaint at paragraphs 2, 5-12.  However, the Relator admits, unequivocally, that: "…the fee is required to be paid to the fee-levying authority ***only if or when*** the passenger actually 'uses' the 'service'…" and that "(i)f a passenger doesn't use the fee, (sic), the fee ***does not have to be paid*** to the fee-levying authority."  Amended Complaint at paragraphs 9 and 10.  (Emphasis supplied).

The Relator's resulting contention is that the fees that were retained by the Defendant airline carriers should have been refunded to the passenger/customers who failed to use their non-fundable tickets and thereby forfeited the amounts paid for those tickets.  Amended

Complaint at paragraphs 11, 40 and 52. The Relator does not present a single allegation that Air Jamaica ever made any claim for payment to the United States, nor that it was ever required by law to pay to the United States any monies collected as fees/charges/taxes upon the forfeiture of these non-refundable tickets. The FCA only relates to false statements and/or claims made to the United States government; it does ***not*** provide a mechanism for ***reimbursement to private parties***. The Amended Complaint not only fails to present sufficient facts upon which relief may be granted, the specific facts actually presented by the Plaintiff clearly establish that no liability can exist as to Air Jamaica. Consequently, all claims against Air Jamaica must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Dismissal Is Also Mandated Pursuant To The FCA's Public Disclosure Bar For Lack Of Subject Matter Jurisdiction.

The Relator's claims against Air Jamaica are also subject to dismissal pursuant to Fed. R. Civ. P 12(b)(1), because the Court lacks proper subject matter jurisdiction over the alleged FCA violations. 31 U.S.C. §3730(e)(4)(A) provides that:

> No court shall have jurisdiction over an action under this section based upon the ***public disclosure*** of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or Government accounting report, hearing, audit or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is ***an original source*** of the information.

(Emphasis supplied). The FCA provisions granting authority to individuals to litigate on behalf of the government were intended to encourage the filing of private *qui tam* actions, based upon information that could not otherwise be know or acquired by the government. However, the law includes provisions designed to prevent "parasitic" lawsuits, in which "relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous

disclosures of fraud [against the government]." *See United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1347 (4th Cir. 1994).* In applying this "public disclosure bar", the Court must determine whether: (1) there has been a public disclosure; (2) whether the FCA allegations are based on this public disclosure; and if so, (3) whether the Relator is an "original source" of the information, entitling him or her to maintain the action despite the public disclosure. *United States ex rel O'Keefe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 91 (D. Mass. 2001).

Pursuant to §3730(e)(4)(A), public disclosure can be arise in multiple contexts. Specifically, public disclosure can occur by way of litigation pending in the state or federal courts. *See United States ex. Rel. Hafter v. Spectrum Emergency Care,* 190 F.3d 1156, 1161 (10th Cir. 1999). In this case, the factual allegations made by Relator in the Amended Complaint have existed in the public domain and have been subject to public and judicial discourse for many years. The Relator's basic allegations in the present matter, (that the Defendants collected government-mandated charges and fees and failed to refund these charges and fees to customers when the non-refundable tickets were not used), are virtually identical to the allegations presented in *Harrington v. Delta Air Lines, Inc.,* Civil Action No. 04-12558-NMG (D. Mass.). Plaintiff's counsel in the present action filed the *Harrington* action in the Middlesex Superior Court, in Massachusetts, on November 4, 2004.[3] The case was removed to this Court on December 6, 2004. It was dismissed by Judge Gorton of this Court on February 21, 2006.

*__After__* the November 4, 2004, filing of the *Harrington* action, and the resulting public presentation of the allegations in that action, Relator's counsel filed the original Complaint in the present action on November 18, 2004, in camera and under seal for the United States to

---

[3] A copy of the first page of the Middlesex Superior Court docket sheet in *Harrington* is attached hereto as Exhibit "A"

investigate its allegations pursuant to the FCA.  The United States filed a Notice of Election to

Decline Intervention on September 14, 2005.  By Order dated September 15, 2005, this Court

ordered the original Complaint to be unsealed and served upon Defendant airline carriers.

Consequently, based upon the filing of the *Harrington* action, the allegations and information

forming the basis of the present action had been in the public domain at least since November 4,

2004.

Moreover, information concerning the fact that the Defendant airline carriers did not

either pay the charges and fees in question to the United States or refund them to customers, had

been in the public realm for almost a decade when Relator filed the original Complaint in

November, 2004.  *Airports*, a newsletter published by *Aviation Week*, made reference to this

matter in July, 1995, when it reported efforts by the Department of Transportation ("DOT") and

Federal Aviation Administration ("FAA") to collect such fees from airline carriers.    *See*

*Airports*, at 281 (vol. 12, Issue 29, July 18, 1995) (Copy attached as Exhibit "B").  In July 1999,

the FAA also addressed the issue in a public document entitled "Passenger Facility Charge Audit

Guide for Air Carriers" (Copy attached as Exhibit. "C").

The discussion of these issues in the public forum, in *Airports* and in the FAA

publication, as well as the presentation of the allegations in the *Harrigton* action, clearly

constitutes prior "public disclosure", satifying the first consideration in applying the "public

disclosure bar" under *O'Keefe*.  As to the second consideration under the *O'Keefe* analytical

framework, the Court must determine whether the Relator's allegations are based upon the

previous public disclosure of the information.  In view of the fact that Plaintiff's counsel in the

present action also represented the Plaintiffs in *Harrigton,* as well as the fact that the issues

addressed in the *Airports* and FAA publications are virtually identical to the allegations in

Relator's Original Complaint and her Amended Complaint, there can be no doubt that these alleged FCA violations are "based upon" these previous public disclosures, thereby satisfying this second consideration under *O'Keefe*.

The Relator cannot meet the third criteria under *O'Keefe* unless she can demonstrate that she is an "original source" of the information presented in the public disclosures.  If she is not an original source, the action must be dismissed for lack of subject matter jurisdiction under §3730(e)(4)(A).  Significantly, the Amended Complaint provides absolutely no information concerning the basis or source of Ms. Teitelbaum's knowledge.  To qualify as an "original source," under §3730(e)(4)(A), a *qui tam* Plaintiff must be one "…who has ***direct and independent knowledge*** of the information on which the allegations are based."  *O'Keeffe*, at 93-94.  As the Relaltor presents no information as to the source of her knowledge, and makes no claim that she is actually the "original source" of these alleged violations of the FCA, the Amended Complaint fails to establish any basis upon which Ms. Teitelbaum could be found to be an original source.  Consequently, her claims must be dismissed for lack of subject matter jurisdiction, pursuant to the "public disclosure bar" set forth in §3730(e)(4)(A).

### III.     Dismissal Is Also Mandated Due To The Plaintiff's Failure To Plead Claims With Appropriate Specificity As Required By Rule 9(b).

Under Fed. R. Civ. P. 8(a), a Complaint need only state "a short and plain statement of the claim showing that the plaintiff is entitled to relief".  However, there are recognized exceptions to Rule 8(a)'s simplified pleading standard.  Specifically, claims of fraud are subject to the heightened pleading requirements of Rule 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind may be averred generally."  At a

minimum, the Complaint must provide the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Gublo v. Novacare, Inc.,* 62 F. Supp. 2d 347, 354 (D. Mass. 1999), (quoting *United States ex rel. Thompson v. Columbia / HCA Healthcare Corp.,* 125 F.3d 899, 903 (5th Cir. 1997). The purposes of the Rule 9(b) particularity requirement are: (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit; and (3) to safeguard defendants from frivolous charges which might damage their reputation. *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 289 (1st Cir. 1987). In the assertion of violations of the FCA, a *qui tam* Relator's allegations of fraud must specify the time, place and content of the alleged false or fraudulent representations. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2003).

The Amended Complaint in the present action fails entirely to fulfill the pleading mandates of Rule 9(b), with respect to the claims presented against Air Jamaica. The Relator does not present a single allegation that Air Jamaica made any false claims or fraudulent representations to the United States government. *United States v. Rivera,* 55 F.3d 703, 709 (1st Cir. 1995). Evidence of an actual false claim is "the sine qua non of a *False Claims Act* violation." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir. 2002), cert. denied, 537 U.S. 1105, 154 L. Ed. 2d 774, 123 S. Ct. 870 (2003). The Relator has simply presented broad generalized allegations that the Defendant airline carriers collected fees or charges and that those fees or charges were not refunded to customers when the non-refundable tickets were not used. There are no allegations stated with any particularity as to when, where or under what circumstances Air Jamaica is alleged to have actually engaged in such conduct. The general accusations of the Amended Complaint are not supplemented with

any further detailed factual information relating specifically to alleged conduct by Air Jamaica, as required by Rule 9(b).  Moreover, as discussed previously, the Amended Complaint does not allege that Air Jamaica is responsible for any payments actually owed to the United States government.  It only alleges that the customers should have been entitled to reimbursement for the charges and fees. Consequently, the Relator's blanket allegations fail to satisfy the pleading requirements of Rule 9(b), and the generalized claims against air Jamaica, as pled in the Amended Complaint, must be dismissed.  *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2003).

### IV.    Plaintiffs Common Law Causes of Action Must Also Be Dismissed For Lack Of Standing.

In Counts V through IX, the Realtor asserts various common law causes of action, including unjust enrichment, recoupment, fraud, disgorgement, imposition of a constructive trust, and civil conspiracy.  These common law claims must be dismissed pursuant to Fed. R. Civ. P. 12 (b) (1), as the Relator has no standing to assert such claims on behalf of the United States. Ms. Teitelbaum brought this action only on behalf of the United States; she has not asserted any claims in an individual capacity, or in any capacity other than as a Relator under the FCA. Moreover, based upon the facts alleged in the Amended Complaint, Ms. Teitelbaum would not have any basis for presenting individual causes of action against Air Jamaica, as she, herself, apparently never purchased any non-refundable tickets from Air Jamaica.[4]  The FCA does not assign to a Relator any right to assert common law claims on behalf of the United States, beyond those claims specifically established under the provisions of 31 U.S.C. §§3729-3730.  *See United*

---

[4] Ms. Teitelbaum was not a named Plaintiff in the corresponding *Harrington* action and Air Jamaica was not named as a Defendant in that action.  There are no allegations in either the *Harrington* action or the present action suggesting that Ms. Teitelbaum, or any of the named Plaintiffs in *Harrington*, ever purchased any tickets, non-refundable or otherwise, from Air Jamaica.

*States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 149 (D. Mass 2000).  As a

Relator in a *qui tam* action, Ms. Teitelbaum simply has no standing to bring any of the common

law claims asserted in Counts V through IX of the Amended Complaint.  Consequently, those

claims must be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12 (b) (1).


## CONCLUSION

For the reasons stated above, the Defendant, Air Jamaica, respectfully requests that this

Court dismiss all claims asserted against Air Jamaica in this action, with prejudice and with

costs, and that it order the entry of Separate and Final Judgment in favor of Air Jamaica,

pursuant to Fed. R. Civ. P. 54 (b).


Respectfully submitted,
**AIR JAMAICA**
By its attorneys,


**/s/ Joseph L. Doherty, Jr.**
Joseph L. Doherty, Jr., BB0# 127280
Charles H. Riley III, BBO #630715
Doherty & Quill
225 Franklin Street, 26th Floor
Boston, Massachusetts, 02110
Date:  March 2, 2006                    (617) 217-2837

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I hereby certify that counsel for Air Jamaica conferred with counsel for the plaintiff in a good faith effort to resolve or narrow the issues in dispute but was unable to do so.

**/s/ Joseph L. Doherty, Jr.**

Joseph L. Doherty, Jr., BB0# 127280

## CERTIFICATE OF SERVICE

I, Joseph L. Doherty, Jr., hereby certify that on March 2, 2006, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to any counsel of record indicated as being non-registered participants.

Dated:  March 2, 2006

**/s/ Joseph L. Doherty, Jr.**

Joseph L. Doherty, Jr.

Exhibit "A"

## Commonwealth of Massachusetts
## MIDDLESEX SUPERIOR COURT
## Case Summary
## Civil Docket

# Harrington et al v Delta Air Lines, Inc. et al

Details for Docket: MICV2004-04410

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2004-04410 | **Caption:** | Harrington et al v Delta Air Lines, Inc. et al |
| **Filing Date:** | 11/04/2004 | **Case Status:** | Disposed: transfered to other court |
| **Status Date:** | 12/20/2004 | **Session:** | Cv E (7B Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Complex |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 08/31/2005 |
| **Service Date:** | 02/02/2005 | **Disposition:** | 12/29/2005 |
| **Rule 15:** | 04/03/2005 | **Rule 12/19/20:** | 04/03/2005 |
| **Final PTC:** | 10/30/2005 | **Rule 56:** | 09/30/2005 |
| **Answer Date:** | 04/03/2005 | **Jury Trial:** | YES |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | MICV2004-04410 | **Caption:** | Harrington et al v Delta Air Lines, Inc. et al |
| **Filing Date:** | 11/04/2004 | **Case Status:** | Disposed: transfered to other court |
| **Status Date:** | 12/20/2004 | **Session:** | Cv E (7B Cambridge) |
| **Lead Case:** | NA | **Case Type:** | Misc equitable remedy |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 08/31/2005 |
| **Service Date:** | 02/02/2005 | **Disposition:** | 12/29/2005 |
| **Rule 15:** | 04/03/2005 | **Rule 12/19/20:** | 04/03/2005 |
| **Final PTC:** | 10/30/2005 | **Rule 56:** | 09/30/2005 |
| **Answer Date:** | 04/03/2005 | **Jury Trial:** | YES |



### The Weekly for Airport Managers, Users and Suppliers

From the Publisher of Aviation Daily

| Vol. 12  No. 29 | July 18, 1995 | Page 281 |
|---|---|---|

## INTELLIGENCE

**Greece's Ministry of Public Works** expected to sign a formal agreement this month with a consortium led by German firm Hochtief to build a new international airport at Spata to serve Athens. The Hochtief consortium was originally selected for the project in 1993, but a change in government led to a review and a reselection earlier this year under substantially new terms.

**Malaysia** expects by yearend to award all construction packages for the $3.6 billion (U.S.) new Kuala Lumpur International Airport, now being built at Sepang. Kuala Lumpur International Airport Berhad has awarded contracts for 62 projects. The airport is scheduled to be complete by September 1997 and operational by early 1998.

**John Wayne Airport** Director Janice Mittermeier has been named interim chief executive for Orange County, Calif., replacing William Popejoy, effective Aug. 1. Assistant Airport Director O.B. Schooley will assume Mittermeier's position until a new chief executive can be found. During his term, Popejoy urged the county board of supervisors to issue a request for proposals for the possible sale of the airport (*AIRPORTS*, April 11).

## DOT/FAA Lay Out Compliance Policy On Airlines' PFC Remittance

DOT and FAA last week warned airlines that failure to remit to airports passenger facility charges they have collected may be viewed as an unfair and deceptive practice and, in certain circumstances, could lead to criminal prosecution. In a July 10 notice to U.S. and foreign carriers, officials from the FAA chief counsel and DOT general counsel offices said that some airlines may be collecting PFCs but failing to remit them to airports as required by regulation. PFCs must be collected, held in trust, reported, separately accounted for and remitted monthly to the appropriate airports, DOT and FAA said. An FAA official said that the notice stemmed from informal complaints by airports but that currently there are no enforcement actions under way.

Conversion of trust proceeds to unauthorized purposes may result in criminal prosecution, the agencies said, adding that they had recently referred to the DOT Inspector General for appropriate action two airlines that had failed to comply with the PFC regulations. "We note further that not only may individual officers and employees be prosecuted, but they may also bear personal liability for breach of fiduciary duties."

In addition, withholding PFCs could subject airlines to civil penalties of as much as $1,000 per violation and $1,000 per day for each continuing violation. "We believe that any air carrier that is collecting money from passengers ostensibly for PFCs, but is not remitting that money to airports as required by law, is involved in an unfair and deceptive practice and unfair method of competition in violation of 49 U.S.C. 41712." DOT and FAA also said that failure to properly collect, account for and remit PFCs "reflects negatively upon an air carrier's fitness to operate, raising serious questions regarding its financial viability, managerial expertise, and compliance disposition." The agencies further noted that FAA has authority to enforce PFC requirements by issuing orders of compliance and cease and desist orders and by seeking injunctions.

## Denver Files Letter Of Credit For Disputed Amount In TWA Rates And Charges Complaint

City and County of Denver last week filed a letter of credit for $102,420 — the amount in dispute in TWA's rates and charges complaint with DOT (*AIRPORTS*, June 27). Earlier last week, DOT denied Denver's request for a waiver from filing a letter of credit. The City had argued that the amount in dispute was "minuscule." (Continued)

AIRPORTS 1200 G Street, N.W., Suite 200, Washington, D.C. 20005-3802  EDITORIAL TELEPHONE 202-383-2367  FAX 202-383-2438 SALES 1-800-636-3438  **Avery Vise/**
Editor, **Holly Arthur**/Assistant Editor, **James Baumgarner**/Senior Editor, **Martin Sibley**/Copy Editor, **Ingrid Lee**/Production, **Dave Bond**/Editorial Director, **Edmund Pinto**/Publisher.
Published weekly by the Aviation Week Group, a unit of the McGraw-Hill Companies, Inc., 1221 Avenue of the Americas, New York, N.Y. 10020. (ISSN
No. 1050-5245). Kenneth E. Gazzola, Executive Vice President; and Don Fink, Editorial Director, Aviation Week Group. **Officers of The McGraw-Hill Companies, Inc.:** Joseph Dionne,
Chairman and Chief Executive Officer; Harold W. McGraw, III, President and Chief Operating Officer; Robert Landes, Senior Executive Vice President, General Counsel and
Secretary; Kenneth Vittor, General Counsel and Senior Vice President; Frank D. Penglase, Senior Vice President, Treasury Operations; Norbert Schumacher, Executive Vice
President, Publication Services; COPYRIGHT © 1995 by The McGraw-Hill Companies, Inc. All rights reserved. None of the content of this publication may be reproduced, stored in
a retrieval system, or transmitted in any form or by any means (electronic, mechanical, photocopying, recording or otherwise) without the prior written permission of the publisher.

**DOT/FAA Lay Out Compliance Policy On Airlines' PFC Remittance**
18 July 1995
SECTION: Vol. 12, No. 29; Pg. 281
*Airports(R)*

DOT and FAA last week warned airlines that failure to remit to airports passenger facility charges they have collected may be viewed as an unfair and deceptive practice and, in certain circumstances, could lead to criminal prosecution. In a July 10 notice to U.S. and foreign carriers, officials from the FAA chief counsel and DOT general counsel offices said that some airlines may be collecting PFCs but failing to remit them to airports as required by regulation. PFCs must be collected, held in trust, reported, separately accounted for and remitted monthly to the appropriate airports, DOT and FAA said. An FAA official said that the notice stemmed from informal complaints by airports but that currently there are no enforcement actions under way.

Conversion of trust proceeds to unauthorized purposes may result in criminal prosecution, the agencies said, adding that they had recently referred to the DOT Inspector General for appropriate action two airlines that had failed to comply with the PFC regulations. "We note further that not only may individual officers and employees be prosecuted, but they may also bear personal liability for breach of fiduciary duties."

In addition, withholding PFCs could subject airlines to civil penalties of as much as $ 1,000 per violation and $ 1,000 per day for each continuing violation. "We believe that any air carrier that is collecting money from passengers ostensibly for PFCs, but is not remitting that money to airports as required by law, is involved in an unfair and deceptive practice and unfair method of competition in violation of 49 U.S.C. 41712." DOT and FAA also said that failure to properly collect, account for and remit PFCs "reflects negatively upon an air carrier's fitness to operate, raising serious questions regarding its financial viability, managerial expertise, and compliance disposition." The agencies further noted that FAA has authority to enforce PFC requirements by issuing orders of compliance and cease and desist orders and by seeking injunctions.

# PASSENGER FACILITY CHARGE
# AUDIT GUIDE FOR AIR CARRIERS

**Federal Aviation Administration**
**Passenger Facility Charge Branch**
**APP-530**

**Interim - July 1999**

# TABLE OF CONTENTS

Applicability and Purpose                                                      Page ii

I.      Introduction and Requirements                                          1

II.     PFC Program Requirements and Recommended
        Internal Controls Audit Procedures                                     3

        A.  Public Agency/FAA Notification to Collect
            PFCs and Collection Changes                                        3
        B.  Collection of PFCs on Tickets Issued in
            the United States                                                  5
        C.  Collection of PFCs on Tickets Issued Outside
            the United States                                                  8
        D.  Handling of PFCs                                                   10
        E.  Remittance of PFCs                                                 11
        F.  Collection Compensation                                           12
        G.  Reporting Requirements                                            13
        H.  Recordkeeping and Auditing Requirements                           13

III.    PFC Program - Agreed-upon Procedures                                  14

IV.     Reporting Criteria and Format                                         17

Appendices                                                                     18

        Appendix A
            Introduction-Passenger Facility Charges                           18
            Illustrative Reports on PFC Schedules                             18
            Illustrative Report on Internal Control
                Used in Administering PFCs                                    20

        Appendix B -  Illustrative Report - Agreed-Upon
            Procedures                                                         22

i

# APPLICABILITY AND PURPOSE

This guide provides auditors with a comprehensive set of procedures for examining air carrier's Passenger Facility Charges (PFC) collection, remittance, and reporting practices in accordance with 14 Code of Federal Regulations (CFR) Part 158, "Passenger Facility Charges" requirements.

The use of this guide by auditors on behalf of the air carriers provides the Federal Aviation Administration (FAA) and airports collecting PFCs with an acceptable level of assurance that the air carrier has followed regulatory procedures. The importance of this level of assurance is reflected in the FAA's approach to resolving alleged collection and remittance discrepancies raised by airports through their monitoring of PFC revenue on a local basis.

This guide is not intended to define the sole method of complying with the audit requirements of section 158.69. However, the FAA has determined that the use of the procedures in this audit guide by the auditors for an air carrier will provide sufficient assurance that the air carrier has met the requirements of 14 CFR 158 such that the FAA would not normally require additional reports, undertake an audit of the carrier, or request Department of Transportation, Office of the Inspector General (DOT OIG), intervention on the FAA's behalf. The FAA would not normally initiate further monitoring efforts unless an airport or other source subsequently substantiates a significant violation of the regulation.

The FAA will not have the same level of confidence with a carrier whose auditors have not used the procedures outlined in this guide. Accordingly, alleged collection and remittance discrepancies raised by airports through their monitoring of local PFC revenue against carriers whose auditors have not used this guidance are more likely to trigger additional FAA monitoring activities, including requiring additional reports, the undertaking of an audit, or a request for DOT OIG intervention. This guidance shall not, however, foreclose other FAA options for responding to allegations of improper collection and remittance practices and enforcing correct collection and remittance procedures. The FAA expects carriers to attain a reasonable level of accuracy with regard to PFC remittances.

This guide also recommends that auditors produce an additional report on applying the agreed upon procedures set forth in section III of this guide to the air carriers' PFC accounting records, in addition to the two reports required by section 158.69. These reports, and illustrative samples of each, are more fully explained in this guide and its appendices.

# PASSENGER FACILITY CHARGE AIR CARRIER AUDIT GUIDE

## I. INTRODUCTION AND REQUIREMENTS

Title 49, United States Code (U.S.C.), Section 40117, authorizes the Secretary of Transportation (further delegated to the Federal Aviation Administration (FAA) Administrator) to approve the local imposition of a PFC of $1, $2, or $3 per enplaned passenger for use on certain airport projects.  On May 29, 1991, the FAA issued 14 CFR Part 158 outlining policies and procedures for the PFC program.  Under Part 158, public agencies controlling commercial service airports can apply to the FAA for authority to impose a PFC for use on eligible projects. The proceeds from such PFCs are to be used to finance approved, eligible airport-related projects. Prior to submitting an application to the FAA, a public agency must provide for consultation with the air carriers serving the airport(s) it controls, including the receipt of air carrier comments and the public agency's response indicating reasons for proceeding with projects in the face of air carrier certifications of disagreement.

Once a public agency's application for the imposition of a PFC is approved, it must notify air carriers and foreign air carriers required to collect PFCs at its airport(s) of the approval.  Once notified, an air carrier is required to collect PFCs on tickets it issues showing an enplanement at that airport (with certain exceptions).  The air carrier is also required to notify its agents, including other issuing carriers, of the collection requirements.  Air carriers or their agents collect PFCs from passengers on behalf of the public agency at the time of air travel ticket (or its equivalent) issuance.  The air carriers are responsible for all PFC funds from the time of collection to remittance to the public agency and must provide quarterly reports to the public agency showing the total amounts of PFC revenue collected and refunded, as well as any amount withheld by the air carrier as collection compensation in accordance with section 158.53 of 14 CFR Part 158.  For the purposes of an audit under section 158.69, collection is defined as the point when agents or other intermediaries remit PFC revenue to the carrier.

An air carrier collecting PFCs from at least 50,000 passengers annually is required to provide for an annual audit of its PFC accounts by an accredited independent public accountant.  The audits shall be made available to the public agency, upon request.  Although not specifically required by the regulation, the audit should also be submitted to the FAA, upon request.  Auditors engaged to audit the air carrier's PFC accounts are required to report "on the fairness and reasonableness of the carrier's procedures for collecting, holding, and dispersing PFC revenues" (section 158.69(b)(1)).  In addition, auditors are required to report whether the quarterly reports of PFC accounts that the air carriers must provide to airports "fairly represent the net transactions in the PFC account" (section 158.69(b)(1)).  As a matter of policy, the FAA expects these

1

audits to be filed in a timely manner and should normally coincide with the carrier's fiscal year and annual corporate audit cycle.

These requirements are generally satisfied as follows:

1. An audit in accordance with generally accepted auditing standards (GAAS) of the schedule of PFCs collected, withheld, refunded/exchanged, and remitted by the carrier for the year and each quarter ended during the year; and

2. An internal control structure attestation examination engagement in accordance with American Institute of Certified Public Accountants (AICPA) Statements of Standards for Attestation Engagements.

The procedures contained in this guide for testing and reporting on PFCs collected, withheld, refunded/exchanged, and remitted during the year are intended to assist the auditor in accomplishing the audit and internal control structure attestation. This guide is not intended to supplant the auditor's judgment of procedures to be performed. The auditor should use professional judgment to tailor the procedures so that the audit objectives are achieved. However, the auditor must address all applicable internal control requirements. If the auditor desires technical assistance pertaining to the PFC program, its regulations or operations, or the use of the procedures outlined in this guide, the auditor should contact the FAA Office of Airport Planning and Programming, Airport Financial Assistance Division, Passenger Facility Charge Branch (APP-530), 800 Independence Avenue, SW, Room 619, Washington, DC, 20591, telephone (202) 267-3845, or the appropriate local FAA airports office.

This guidance also provides for the testing of nonstatistical samples of lifted tickets or equivalent records as an agreed-upon procedure for providing an airport-level assessment of air carrier compliance with Part 158 collection and remittance requirements. These procedures are outlined in section III of this guide. An air carrier utilizing these procedures should provide copies of the agreed upon procedures report to requesting public agencies. The carrier should also provide a copy of the reports to the FAA, if requested. In addition, the carrier should provide the name, address, and telephone number of a contact person within its organization who may be contacted concerning questions on PFC issues and the audit report.

## II. PFC PROGRAM REQUIREMENTS AND RECOMMENDED INTERNAL CONTROLS AUDIT PROCEDURES

### A. PUBLIC AGENCY/FAA NOTIFICATION TO COLLECT PFC'S AND COLLECTION CHANGES

#### Program Requirements

Program requirements are provided in section 158.43, "Public agency notification to collect PFCs." Public agencies are required to notify the air carriers and foreign air carriers required to collect PFCs upon approval of collection authority by the FAA. Correspondingly, each notified carrier is required to notify its agents, including other issuing carriers (other carriers that issue tickets on their own ticket stock for transportation provided by the air carrier), of the collection requirements.

In addition, air carriers are required by section 158.85(f) to terminate or modify PFC collection no later than 30 days after receiving notification from the FAA under termination procedures. In other cases, the public agency is responsible for notifying the air carriers of changes in collection requirements after receiving FAA approval. In all cases, the carrier should have a system for receiving and tracking all collection notices (either through its computer reservation system or by other alternative means), both from public agencies and the FAA.

The section 158.43 notification requirements, as a practical matter, have been facilitated through the establishment of a notification "clearinghouse" by the Air Transport Association of America (ATA). The ATA clearinghouse notifies all its member carriers, other air carrier associations, the Airline Reporting Corporation, and the major computer reservation systems. The FAA acknowledges that this process effectively meets the requirements of section 158.43 for air carriers. In turn, each individual carrier notified by the collecting public agency and/or the ATA is responsible for ensuring that all its ticket agents that issue tickets on its ticket stock are directly notified. This is generally accomplished through the carrier's computer reservation system. However, many carriers do not own or control computer reservation systems themselves and must provide an alternative method for notifying their ticket agents.

These notification requirements have not been further refined in section 158.43 for the carrier's notification of its agents. However, the following information constitutes the minimum required under section 158.43(b) to be provided to the air carrier by the public agency:

1. The level of PFC to be imposed;

2. The total revenue to be collected;

3

3. The charge effective date (which will be the first day of a month which is at least 60 days from the date the public agency notifies the carriers of approval to impose the PFC unless altered by unanimous consent of the carriers); and

4. The proposed charge expiration date.

At a minimum, the information in items 1, 3, and 4 above should be provided by the air carrier to its ticket agents, either through its computer reservation system or by alternative means. In addition, the air carrier should provide instructions for ticket agents enabling the responsible carrier to fulfill its regulatory collection and reporting requirements.

In the case where another carrier issues tickets on its own ticket stock for transportation provided by the air carrier, it is the other issuing carrier that is required to remit the PFC to the public agency. An air carrier should provide other issuing carriers with the information in 1, 3, and 4 above, as well as instructions for remittance of the collected PFCs to the public agency, including the remittance address given by the public agency.

Although section 158.43(b) requires that this notification be done in writing, equivalent electronic notification (including computer reservation system notification) is acceptable, but must be documented to the satisfaction of the FAA. The previously outlined notification process also applies in cases when the public agency makes changes to the PFC charge expiration date. The notified carriers are required to provide notification to their ticket agents of such changes.

## Objectives

The air carrier maintained an effective internal control structure for notifying its ticket agents in accordance with the requirements of section 158.43(a) and (b), relative to PFC imposition authority.

The air carrier maintained an effective internal control structure over the requirements in section 158.85(f) relative to notice of termination of authority to impose a PFC and other collection notices received from the public agency or the FAA.

## Recommended Internal Controls Procedures

Review the process for notification of collection requirements from the carrier to its agents. For those carriers utilizing the ATA clearinghouse, verify that the computer reservation system used by the carrier and its agents provides

sufficient information to fulfill PFC collection requirements as noted above. For those carriers not utilizing the ATA clearinghouse:

1. Verify that the carrier's method of notification meets the requirements of Part 158 and includes sufficient information for the carrier and its agents to fulfill their collection requirements as noted above; and,

2. Review the process for notifying agents (including computer reservation system notification) regarding changes in the PFC collection requirements.

Test a sample of computer reservation system notifications or review a sample of actual notifications to agents to determine that the carrier has an effective notification process in accordance with section 158.43. Alternatively, when the carrier relies heavily on computer reservation system notification, the auditor may test the computer reservation system.

Determine whether the carrier has received prompt notifications for modification or termination of PFC collections.

Test to determine that collections for those public agencies for which collection notices were received were implemented or effected no later than 60 days after notification (unless altered by unanimous consent of the carriers).

## B. COLLECTION OF PFC'S ON TICKETS ISSUED IN THE UNITED STATES

### Program Requirements

The requirements outlined in section 158.45 pertain to the collection of PFCs on tickets issued in the United States. Tickets (or equivalent records such as electronic ticketing documents) issued in the United States on or after the charge effective date shall include the required PFC except in the cases of multiple itinerary legs, essential air service compensation, frequent flier award travel (discussed further below), and other non-revenue travel. Issuing carriers are responsible for PFC revenue from the time of collection to remittance to the public agency. For the purposes of an audit under section 158.69, collection is defined as the point when agents or other intermediaries remit PFC revenue to the carrier. The amount collected is the PFC in effect at the time the ticket (or equivalent record) is issued and is based on the itinerary at the time of issuance. Itinerary changes initiated by the passenger that require a fare adjustment are subject to collection or refund of the PFC as appropriate.

A carrier may issue a flight interruption manifest or accept one issued by another carrier (or other routing change document issued by that carrier or another

carrier) for a routing change not initiated by the passenger.  In such a case, the manifest or routing would not require additional PFC collection(s).  PFC collection, in that case, would be as originally ticketed.

Each ticket (or equivalent record) issued by a carrier or its agents shall note the total amount of PFCs paid by the passenger and the airports for which the PFCs are collected.

The collection of PFCs by the air carriers is limited or not required in certain situations as noted above.  Carriers are limited to collecting PFCs from passengers only for the first two airports where PFCs are imposed on a one-way itinerary and only for the first two enplaning airports and the last two enplaning airports where PFCs are imposed on a round trip itinerary.  Carriers shall not collect PFCs from passengers on any flight to an eligible point on an air carrier that receives essential air service compensation on that route under Title 49 U.S.C. Chapter 417, Subchapter II, "Small Community Air Service."

Title 49 U.S.C. 40117(e)(2)(C), precludes collection of a PFC from a passenger enplaning at an airport if the passenger did not pay for the air transportation which resulted in such enplanement.  The FAA interprets this provision to prohibit the collection of PFCs from passengers considered to be non-revenue passengers under existing Department of Transportation Regulations and from passengers who obtained their ticket with an award coupon issued under a frequent flier or similar bonus award program ("frequent flier award coupon").  This prohibition does not apply to frequent flier upgrades, two-for-ones, contests, or other promotional plans.

For those passengers from whom a PFC is collected, air carriers are required to distribute the collected PFCs as noted on the ticket (or its equivalent record).

Issuing carriers and their agents are required to stop collecting PFCs at an airport on the charge expiration date stated in a notice from the public agency or as required by Part 158.43(c).

## Objective

The air carrier maintained an effective internal controls structure over PFC collection to ensure that the carrier met the requirements of section 158.45 for tickets issued in the United States.

## Recommended Internal Controls Procedure

Review the carrier's internal controls structure, policies, and procedures for recording PFC collections and refunds, including key controls to be tested, in

accordance with the requirements of section 158.45, and evaluate the design effectiveness of the policies and procedures.

Test and evaluate the operating effectiveness of the internal controls structure, policies, and procedures by selecting a nonstatistical sample of tickets issued by the air carrier (or equivalent sales records) in the United States. Also, test and evaluate the operating effectiveness of the internal controls structure, policies, and procedures for recording agency remittances made in the United States. The following items should be considered for tickets issued by the air carrier:

1. Determine that for each one-way trip, the carrier recorded PFCs only from the first two enplaning airports collecting PFCs;

2. Determine that for each round trip, the carrier recorded PFCs only from the first two enplaning airports collecting PFCs on the outbound flight and, conversely, from the last two enplaning airports collecting PFCs on the return;

3. Test whether the carrier recorded PFC charges appropriately, based on the charge in effect at the time the ticket (or equivalent record) was issued;

4. Test whether the system properly adjusted PFC records for passenger-initiated itinerary changes that resulted in additional PFC charges or PFC refunds;

5. Test whether tickets (or equivalent records) reflecting PFC charges also listed the total amount of PFCs paid and the airports for which each was collected;

6. Test whether PFC charges were not collected where exceptions applied, including essential air service passengers, non-revenue passengers, and frequent flier award coupon passengers;

7. Trace PFC records from tickets (or equivalent records) to accounting records, and test that PFCs were credited to the correct airport subaccounts; and

8. For tickets issued by an agency, test that agency remittances to the air carrier were credited to the correct airport subaccounts.

7

## C. COLLECTION OF PFC'S ON TICKETS ISSUED OUTSIDE THE UNITED STATES

### Program Requirements

The requirements outlined in section 158.47 pertain to the collection of PFCs on tickets issued outside the United States.  Carriers may follow either section 158.45 or section 158.47 for tickets issued outside the United States; however, they may not vary between these methods.  Moreover, a carrier that issues tickets outside of the United States solely for travel within the United States must follow section 158.45.  If the carrier opts for or is required to follow the method under section 158.45, it must follow the audit procedures described in section B above.

Under section 158.47, carriers are only required to collect PFCs on tickets for the public agency controlling the last airport at which the passenger is enplaned prior to departure from the United States.  Carriers issuing tickets outside the United States must collect the PFC either at the time of ticket (or equivalent record) issuance or at the time of enplanement, from the last airport at which the passenger enplaned prior to departure from the United States.  The section 158.47 collection option may be varied among the carrier's flights.  The carrier is responsible for providing the passenger with a record of the transaction in either case.  Additionally, if the carrier chooses to collect PFCs at the time of ticket issuance, the carrier is not required to collect PFCs at the time of enplanement for tickets sold by other carriers or their agents.  Issuing carriers are responsible for PFC revenue from the time of collection to remittance to the public agency.  For the purposes of an audit under section 158.69, collection is defined as the point when agents or other intermediaries remit PFC revenue to the carrier.  In the event the air carrier collects the PFC at the time of ticket issuance, the amount collected is the PFC in effect at the time the ticket (or its equivalent) is issued and is based on the itinerary at the time of issuance.  In the event the air carrier collects the PFC at the time of passenger enplanement, the amount collected is the PFC in effect at the time of enplanement.  Itinerary changes initiated by the passenger that require a fare adjustment are subject to collection or refund of the PFC as appropriate.

A carrier may issue a flight interrupt manifest or accept one issued by another carrier (or other routing change document issued by that carrier or another carrier) for a routing change not initiated by the passenger.  In such a case, the manifest or routing would not require additional PFC collection(s).  PFC collection, in that case, would be as originally ticketed.

Each ticket (or equivalent record) issued by a carrier or its agents (or in the case of a carrier collecting at the gate, the record of transaction) shall note the total amount of PFCs paid by the passenger and the airports for which PFCs are collected.

Although not as common as with domestically issued tickets, the collection of PFCs by the air carriers on tickets issued outside the United States still may be limited in certain situations. Title 49 U.S.C. 40117(e)(2)(C), precludes collection of a PFC from a passenger enplaning at an airport if the passenger did not pay for the air transportation which resulted in such enplanement. The FAA interprets this provision to prohibit the collection of PFCs from passengers considered to be non-revenue passengers under existing Department of Transportation Regulations and from passengers who obtained their ticket with an award coupon issued under a frequent flier or similar bonus award program ("frequent flier award coupon"). This prohibition does not apply to frequent flier upgrades, two-for-ones, contests, or other promotional plans.

For those passengers from whom a PFC is collected, air carriers are required to distribute the collected PFCs as noted on the ticket (or equivalent record).

Issuing carriers and their agents are required to stop collecting PFCs at an airport on the charge expiration date stated in a notice from the public agency or as required by the FAA.

## Objective

The air carrier maintained an effective internal controls structure over PFC collection to ensure that the carrier met the requirements in sections 158.45 and 158.47, as applicable, on tickets issued outside the United States.

## Recommended Internal Controls Procedures

Determine whether the carrier is using the ticketing method outlined in section 158.45 or section 158.47. If the carrier has used section 158.45 for collection of PFCs on tickets issued outside the United States, then perform the audit procedures outlined in section B above.

If the carrier has used the method in section 158.47, perform the procedures described below.

Review the internal controls structure, policies, and procedures for recording PFC collections and refunds, including key controls to be tested. Note compliance features stipulated under section 158.47, including whether the carrier has provided a written record of the PFC collection to the passenger as required by section 158.47(c)(3). Evaluate the design effectiveness of the internal controls structure, policies, and procedures.

Test the effectiveness of the collection at the gate process for the carrier, when applicable. Ensure that proper controls exist to collect, document, and provide receipts for passengers when the carrier collects PFCs at the gate.

Test and evaluate the operating effectiveness of the internal controls structure, policies, and procedures by selecting a nonstatistical sample of tickets (or equivalent sales records) if possible, issued outside the United States. The following items should be considered for tickets issued by the air carrier:

1. Test whether the carrier recorded PFC charges for the last airport at which the passenger enplaned prior to departure from the United States. NOTE: the carrier may collect the PFC either at the time of ticket issuance (or equivalent record) or at the time of enplanement and that the method may be varied among the carrier's flights;

2. Test whether the carrier recorded PFC charges appropriately based on the charge in effect at the time the ticket (or equivalent record) was issued or, for at the gate collection, when the passenger was enplaned;

3. Test whether the carrier properly adjusted PFC records for passenger itinerary changes which resulted in additional PFC charges or refunds (this procedure is not applicable for PFCs collected at the gate);

4. Test whether the carrier provided the passenger with a record of the PFC transaction;

5. Test whether PFC charges were not collected where exceptions applied for non-revenue passengers, frequent flier coupon passengers, and (if using the enplanement collection method) tickets issued by another carrier required to collect PFCs; and

6. Trace PFC records from tickets (or equivalent records) to accounting records, and test that PFCs were properly credited to the correct airport subaccounts.

## D. HANDLING OF PFC'S

### Program Requirements

Collecting carriers are required to establish and maintain a financial management system to account for PFCs in accordance with the Department of Transportation's Uniform System of Accounts and Reports (14 CFR Part 241, the Form 41 Reporting Process). For carriers not subject to Part 241, such carriers are required by section 158.49(a) to establish and maintain an accounts payable system to handle PFC revenue subaccounts for each public agency to which such carrier remits PFC collections.

PFC revenue must be accounted for separately by a collecting carrier, but the revenue may be commingled with the carrier's other funds. The collecting carrier holds PFC revenue collected as trust funds for the beneficial interest of the public agency imposing the PFC (49 USC §40117(g)(4)). All PFC revenue collected and held by the air carrier is property of public agencies in which the carrier holds neither a legal nor equitable interest except for as provided in 40117(g)(4). Collecting carriers shall disclose the existence and amount of PFC funds held in trust in their financial statements (Section 158.49 b and c). The FAA has determined that carriers may use the Form 41 reporting process to make this disclosure. Alternatively, a carrier may utilize its annual publicly-released financial statements.

## Objective

The air carrier maintained an effective internal controls structure to properly account for, handle, and disclose PFC revenue by the collecting carrier in compliance with 14 CFR Part 241.

## Recommended Internal Controls Procedure

Review the internal controls structure, policies, and procedures relative to accounting for PFCs for compliance with 14 CFR Part 241 standards. Verify that the accounting system properly separates PFC revenue collected into separate accounting records payable to each public agency to which the carrier must remit PFCs (NOTE: these funds may be commingled with the carrier's other funds until remitted, and the carrier is entitled to interest earned while the PFC revenue is in its possession, but only until remitted to the public agency as defined in section 158.51).

Verify that the carrier has identified PFC funds as held in trust in either Form 41 or annual publicly-released financial statements.

## E. REMITTANCE OF PFC'S

## Program Requirements

Air carriers collecting PFCs are required by section 158.51 to remit the revenue collected to the appropriate public agency on a monthly basis. PFC revenue collected by the carrier shall be remitted to the public agency no later than the last day of the calendar month following the month in which the PFC was collected (or if that date falls on a weekend or holiday, the first business day thereafter).

**Objective**

The air carrier maintained an effective internal controls structure over the remittance of PFC revenue with respect to the requirements in section 158.51.

**Recommended Internal Controls Procedure**

Review the air carrier's internal controls structure, policies, and procedures for remitting PFC revenue collected and evaluate the design effectiveness of the policies and procedures.

Evaluate the operating effectiveness of the policies and procedures by testing whether the carrier's remittance procedures ensure that PFC revenue collected is remitted to public agencies no later than the last day of the month following collection (or next business day).

Test by a substantive method that PFC revenue collected is remitted no later than the last day of the calendar month following collection (or if that date falls on a weekend or holiday, the first business day thereafter).

## F. COLLECTION COMPENSATION

**Program Requirements**

As compensation for collecting, handling, and remitting PFC revenue, air carriers are entitled to retain $0.08 of each PFC remitted.  Air carriers are also entitled to any interest or other investment return earned on PFC revenue between the time of collection and the date of required remittance to the public agency.

**Objective**

The air carrier maintained an effective internal controls structure over collection compensation with respect to the requirements in section 158.53.

**Recommended Internal Controls Procedure**

Review the air carrier's internal controls structure, policies, and procedures for withholding PFC collection compensation and evaluate the design effectiveness of the policies and procedures.

## G. REPORTING REQUIREMENTS

**Program Requirements**

Carriers collecting PFCs on behalf of public agencies are required by section 158.65 to file quarterly reports to those agencies, unless otherwise agreed upon by the carrier and public agency, providing an accounting of funds collected and funds remitted to the public agency.  These reports, unless otherwise agreed upon by the carrier and public agency, shall state the collecting carrier and public agency involved, the total PFC revenue collected, the total amount of PFC revenue refunded to passengers, and the amount of collected revenue withheld by the collecting carrier as collection compensation.  This report must contain the dates and amounts of each remittance for the quarter or other agreed upon timeframe.  Although Part 158 allows latitude concerning the timeframes and the presentation of the information on the quarterly reports, the reporting requirement cannot be waived.

**Objective**

The air carrier maintained an effective internal controls structure over financial reporting with respect to the requirements outlined in section 158.65 for quarterly reporting.

**Recommended Procedures**

Review the internal controls structure, policies, and procedures for collection and remittance reporting requirements and evaluate the design effectiveness of the policy and procedures.

On a test basis, reconcile items and amounts listed on the quarterly reports with accounting records to ensure that the reports accurately reflect PFC transactions.

## H.  RECORDKEEPING AND AUDITING REQUIREMENTS

**Program Requirements**

Each carrier that collects PFCs from at least 50,000 passengers annually is required to provide for an audit of its PFC account at least annually.  The carrier is required to provide a copy of this audit to each public agency upon request.

**Objective**

The air carrier provided a copy of its annual PFC audit to all requesting public agencies.

**Recommended Procedures**

Review the internal controls structure, policies, and procedures for recordkeeping and auditing requirements, and evaluate the design effectiveness of the policy and procedures.

## III.    PFC PROGRAM - AGREED-UPON PROCEDURES

The following agreed-upon procedures have been developed as an integral part of this audit guide in order for these audit guidelines to provide airport-level assurance that the air carrier utilizing the guidelines has complied with the PFC statute and regulation.  The FAA will use its discretion in evaluating whether results of the agreed-upon procedures conform to a reasonable level of compliance with the PFC statute and regulation.  Reasonable compliance does not preclude the presence of minor or occasional errors in PFC collections.

These procedures involve the examination of lifted ticket samples and other boarding records for a group of airports served by the carrier (to be defined further below) to provide further assurance that the carrier is in compliance with PFC statutory and regulatory requirements with regard to specific airports.

The auditor should be familiar with the sampling guidelines contained in the AICPA publication "Audit and Accounting Guide - Audit Sampling," sections 3.28 and 3.29 for a "haphazard sample."

For air carriers classified as "Majors" or "Nationals" under the Bureau of Transportation Statistics, U.S. Department of Transportation reporting criteria[1], the procedures include items 1 and 2 below:

1.  Select one flight during the year from each of the five PFC collecting airports based on prior year revenues with the greatest number of PFC payments for the carrier; and

2.  Select one flight during the year from each of five PFC collecting airports served by the carrier not selected in (1) above with at least $30,000 in annual PFC payments for the carrier.   This selection should be rotated until all other airports have been selected at least once.

_____

[1] Majors are identified as having $1 billion in annual operating revenue or higher.  Nationals are identified as having between $100 million to $1 billion in annual operating revenue.

14

For air carriers classified as "Large Regionals" or "Medium Regionals" under the Bureau of Transportation Statistics, U.S. Department of Transportation reporting criteria[2], the procedures include items 1 and 2 below:

1. Select one flight during the year from each of the two PFC collecting airports based on prior year revenues with the greatest number of PFC payments for the carrier; and

2. Select one flight during the year from each of two collecting airports served by the carrier not selected in (1) above with at least $15,000 in annual PFC payments for the carrier.   This selection should be rotated until all other airports have been selected at least once.

In the case where a wholly-owned subsidiary air carrier is not audited, from a PFC perspective, separately from its parent air carrier, at least one of the flights selected above for the parent must be provided by the subsidiary carrier.   This flight would typically be selected from the rotating sample of airports (see 2 above) unless the subsidiary provides the preponderance of PFC collections at the highest collection airports (see 1 above).

For all air carriers:

3. For each flight selected in 1 and 2 above (either case), obtain all of the lifted tickets, passes, or equivalent records for all of the passengers on that flight, including non-revenue passengers, and perform the following:

    (a) Organize passenger records for the flight into groups as follows:

        (1) Lifted tickets or equivalent records sold by other airlines and passengers traveling on documents issued by other airlines such as flight interruption manifests.  (Note:  In the case of an air carrier which is wholly- or partly-owned by another air carrier, and for which the owning air carrier issues, under the owning carrier's name, some or all of the tickets, passes, or equivalent records used by passengers for travel on the owned carrier, such records must be treated as issued by the owned carrier, and are categorized under (a)(4) below.  In such instances, the procedures under section (c) should be applied, either by or in coordination with, the owning air carrier);

        (2) Non-revenue passengers;

---

[2] Large Regionals are identified as having between $20 million and $100 million in annual operating revenue.  Medium Regionals are identified as having less than $20 million in annual operating revenue.

    (3)  Passengers using frequent flier or similar bonus award program coupons to obtain their ticket; and

    (4)  Lifted tickets or equivalent records sold by the carrier.

(b)  For lifted tickets or equivalent records in (a)(1), determine if the record contains information about PFC payment.  If so, determine if a PFC was or was not collected, but without determining if the collection or non-collection was appropriate by comparison to the code of Federal Regulations Part 158, "Passenger Facility Charges" requirements.

(c)  For lifted tickets or equivalent records in (a)(4), determine the following:

    (1)  If a PFC was collected, determine that the collection was appropriate by comparison to the code of Federal Regulations Part 158, "Passenger Facility Charges" requirements;

    (2)  If no PFC was collected, determine that the non-collection was appropriate by comparison to the code of Federal Regulations Part 158, "Passenger Facility Charges" requirements; and

    (3)  For lifted tickets and equivalent records where no PFC was collected, but deemed appropriate to be collected, provide commentary if considered relevant, such as the ticket was sold by a travel agent and no PFC was collected.

    (4)  The report on agreed-upon procedures should include by flight the composition of the lifted tickets, passes, or equivalent records as determined in (a)(1), (a)(2), (a)(3) and (a)(4) above.

Auditors are referred to AICPA Statement on Auditing Standards - 75, "Engagements to Apply Agreed-Upon Procedures to Specified Elements, Accounts, or Items of a Financial Statement" for guidance on reporting the results of the agreed-upon procedures.  An illustrative report is included as Appendix B to this publication.

## IV.  REPORTING CRITERIA AND FORMAT

The FAA requests that an auditor utilizing these guidelines issue reports in the prescribed format outlined in the appendices.  In addition to the appendices, auditors may refer to examples of representative reports contained in the "AICPA Industry Audit Guide - Audits of Airlines" most recent issue.  Two example reports, as well as a short narrative, are provided on pages 7 through 9 of that document and are reproduced herein as Appendix A.  The reproduced example reports have been modified to include language indicating that the audit was performed in accordance with GAAS and the FAA Passenger Facility Charge Audit Guide for Air Carriers.

In addition to the reports issued as above, auditors are to issue a report on the agreed upon procedures performed in accordance with section III of this guide.  An example of this report is attached as Appendix B.

# APPENDIX A

*The following illustrative reports and associated guidance were reproduced with permission from the AICPA Industry Audit Guide "Audits of Airlines." The FAA has modified these reports to reference the recodified PFC legislation and year date and the Federal Aviation Administration Passenger Facility Charge Audit Guide for Air Carriers. The FAA has also reworded the reports to reference the FAA and to note that the reports are a matter of public record.*

## Passenger Facility Charges

The FAA issued final rules establishing a PFC program in 1991. The PFC program authorizes local airport authorities to impose specified per-passenger charges at commercial service airports to finance airport improvements. Beginning in 1992, the rules require carriers (including non-U.S. airlines) that collect more than 50,000 passenger facility charges to provide for an annual audit of their PFC accounts. Auditors engaged to audit PFC accounts are required to report "on the fairness and reasonableness of the carrier's procedures for collecting, holding, and disbursing PFC revenue." In addition, auditors are required to report whether the quarterly reports that must be filed by the carriers "fairly represent the net transaction in the PFC account." The AICPA has worked with the FAA and industry representatives to develop the following illustrative reports that satisfy both existing professional literature and the FAA's requirements.

## Illustrative Report on PFC Schedules

### Report of Independent Accountants

*XYZ Inc.*

We have audited the accompanying Schedules of Passenger Facility Charges Collected, Withheld, Refunded/Exchanged, and Remitted by *XYZ Inc.* (the Company) for the year and each quarter during the year ended December 31, xxxx (the Schedules). The Schedules are the responsibility of the Company's management. Our responsibility is to express an opinion on the Schedules based on our audit.

We conducted our audit in accordance with generally accepted auditing standards and the Federal Aviation Administration Passenger Facility Charge Audit Guide for Air Carriers. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the Schedules are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the Schedules. An audit also includes assessing the accounting principles used and significant estimates

18

made by management, as well as evaluating the overall presentation of the Schedules. We believe that our audit provides a reasonable basis for our opinion.

The Schedules were prepared for the purpose of complying with the regulations issued by the Federal Aviation Administration of the U.S. Department of Transportation [14 CFR 158] to implement 49 U.S.C. 46110 and 40117, as amended.  Those regulations define collection as the point when agents or other intermediaries remit passenger facility charges to the airlines.  Accordingly, our audit did not encompass tests of the underlying documentation supporting the reports submitted by such agencies and intermediaries to the Company.

In our opinion, the Schedules referred to above present fairly, in all material respects, the passenger facility charges collected, withheld, refunded/exchanged, and remitted by *XYZ Inc.* for the year and each quarter during the year ended December 31, xxxx, as defined in regulations issued by the Department of Transportation.

This report is intended solely for the information and use of the Board of Directors and management of XYZ Airline, Inc., the appropriate airport authorities, and the Federal Aviation Administration and is not intended to be and should not be used by anyone other than these specified parties.  However, this restriction is not intended to limit the distribution of this report, which is a matter of public record.

[Signature]

[Date]

**Illustrative Report on Internal Control Used in
Administering PFCs (Attestation Standards)**

<u>Report of Independent Accountants</u>

*XYZ Inc.*

We have examined management's assertion included in its representation letter, dated January 18, xxxx, that *XYZ Inc.* (the Company) maintained effective internal control over administering passenger facility charges collected, withheld, refunded/exchanged, and remitted during the year ended December 31, xxxx, for the purpose of complying with the regulations issued by the Federal Aviation Administration of the U.S. Department of Transportation [14 CFR 158] to implement 49 U.S.C. 46110 and 40117, as amended, based on criteria established in *Internal Control - Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission. Management is responsible for maintaining effective internal control over administering passenger facility charges collected, withheld, refunded/exchanged, and remitted.  Our responsibility is to express an opinion on management's assertion based on our examination.

Our examination was conducted in accordance with standards established by the American Institute of Certified Public Accountants and the Federal Aviation Administration Passenger Facility Charge Audit Guide for Air Carriers, and, accordingly, included obtaining an understanding of internal control over administering passenger facility charges collected, withheld, refunded/exchanged, and remitted, testing, and evaluating the design and operating effectiveness of internal control, and performing such other procedures as we considered necessary in the circumstances.  We believe that our examination provides a reasonable basis for our opinion.

Because of limitations inherent in any internal control, misstatements due to error or fraud may occur and not be detected.  Also, projections of any evaluation of internal control over administering passenger facility charges collected, withheld, refunded/exchanged, and remitted to future periods are subject to the risk that internal control may become inadequate because of changes in conditions, or that the degree of compliance with the controls may deteriorate.

In our opinion, XYZ Airline, Inc. maintained, in all material respects, effective internal control over administering passenger facility charges collected, withheld, refunded/exchanged, and remitted during the year ended  December 31, xxxx, based on criteria established in *Internal Control - Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission.

This report is intended solely for the information and use of the Board of Directors and management of XYZ Airline, Inc., the appropriate airport authorities, and the Federal Aviation Administration and is not intended to be and should not be used by anyone other than these specified parties.  However, this restriction is not intended to limit the distribution of this report, which is a matter of public record.

[Signature]

[Date]

## APPENDIX B

*The following illustrative report was reproduced with permission from the AICPA Statement on Auditing Standards 75 "Engagements to Apply Agreed-Upon Procedures to Specific Elements, Accounts, or Items of a Financial Statement" and is included here for the convenience of auditors using this guide.  The FAA has reworded the report to reference the FAA's participation in the development of the procedures and to note that the report is a matter of public record.*

**Illustrative Report**

### Independent Accountant's Report on Applying Agreed-Upon Procedures

We have performed the procedures enumerated below, which were agreed to by the Federal Aviation Administration (FAA), [the carrier], and the applicable airport, solely to assist you with respect to your evaluation of [the carrier's] compliance with the requirements of 14 Code of Federal Regulations Part 158, "Passenger Facility Charges."  This engagement to apply agreed-upon procedures was performed in accordance with standards established by the American Institute of Certified Public Accountants.  The sufficiency of the procedures is solely the responsibility of the FAA, [the carrier], and the applicable airport of the report.  Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose.

[Include paragraphs to enumerate procedures and findings.]

We were not engaged to, and did not, perform an audit, the objective of which would be the expression of an opinion on the specified elements, accounts, or items. Accordingly, we do not express such an opinion.  Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

This report is intended solely for the information and use of the Board of Directors and management of XYZ Airline, Inc., the appropriate airport authorities, and the FAA and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes.  However, this restriction is not intended to limit the distribution of this report, which is a matter of public record.

[Signature]

[Date]